USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/10/2020

**Memorandum Endorsement**

Jackson National Life Insurance Company v. Ellen A. Ifshin and Gregory T. Bond,
20-cv-06930 (NSR)

On August 27, 2020, and then again on September 2, 2020, Plaintiff Jackson National Life
Insurance Company ("Jackson National") filed a motion with the Court requesting an order: (1)
directing the Clerk of the Court to permit Jackson National to deposit the annuity proceeds into
the Court Registry; (2) enjoining Defendants Ellen A. Ifshin and Gregory T. Bond, and all other
parties, from instituting or prosecuting any duplicative action; (3) discharging Jackson National
from further liability with respect to the Proceeds and Annuity; (4) dismissing Jackson National
from this action, and (5) awarding attorneys' fees and costs to Jackson National (the "Deposit
Motion").  (ECF Nos. 6 & 13.)  Jackson National initially failed to comply with this Court's
local rule requiring the submission of a pre-motion conference letter setting forth the basis for its
motion.  But, on September 18, 2020, filed a letter requesting a pre-motion conference, or, in the
alternative, to set a briefing schedule and hearing date for the Deposit Motion.  (ECF No. 18.)
Finally, Jackson National has informed the Court through electronic mail that, as of November
10, 2020, Defendant Gregory T. Bond has consented to the Deposit Motion, and that it has been
unable to reach Defendant Ellen A. Ifshin.

Despite Jackson National's initial failure to comply with this Court's local rules, the Court
waives its requirement for a pre-motion conference, and deems the Deposit Motion fully briefed.
Jackson National's unopposed Deposit Motion (ECF Nos. 6 & 13) is GRANTED in part: (1)
Jackson National is permitted to deposit the proceeds for the subject annuity into the Court
Registry; (2) Defendants are enjoined from instituting or prosecuting any duplicative action
affecting the subject annuity proceeds; (3) Jackson National is dismissed from this action; and
(4) Jackson National is discharged from further liability with respect to the subject annuity and
proceeds absent a showing of good cause by Defendants as to why they did not timely oppose
the Deposit Motion.

Further, Jackson National is granted leave to file a separate motion requesting attorneys' fees and
costs with the following briefing schedule: (1) Plaintiff's moving papers shall be served, not
filed, on December 10, 2020; (2) Defendants' opposition papers shall be served, not filed, on
January 11, 2021; and (3) Plaintiff's reply papers shall be served on January 26, 2021.  **Plaintiff
is directed to file all motion documents, including any opposition, on the reply date,
January 26, 2021**.

The parties shall provide two (2) copies of their respective motion documents to Chambers on
the date the documents are served upon their adversary.

Plaintiff is directed to serve copies of this Memorandum Endorsement on Defendants and show
proof of service on the docket.

Jackson National's motion requesting a pre-motion conference (ECF No. 18) is DENIED as
moot.

Accordingly, Jackson National is directed to deposit $15,297.56 with the Clerk of the Court. The Clerk of the Court is kindly directed to take in $15,297.56 to be placed in the Court Registry's interest-bearing account.  The Clerk of the Court is further directed to terminate the motions at ECF Nos. 6, 13, and 18.

Dated: November 10, 2020                SO ORDERED:
White Plains, New York

_____

HON. JUDGE NELSON S. ROMÁN
U.S. DISTRICT COURT JUDGE, S.D.N.Y.

POLSINELLI PC
Frank T. Spano
Darnell Stanislaus
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
fspano@polsinelli.com
dstanislaus@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY, <br><br>          Plaintiff <br><br> v. <br><br> ELLEN A. IFSHIN f/k/a ELLEN, A. BOND and GREGORY T. BOND, <br><br>          Defendant | Case No. <br><br> **NOTICE OF MOTION** |

**PLEASE TAKE NOTICE** that upon the Declaration of Theresa Thompson, the Interpleader Complaint and the exhibits attached thereto, and the accompanying Memorandum of Law, Plaintiff Jackson National Life Insurance Company ("Jackson National") will move this Court, at the United States Courthouse for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York, at a date and time to be designated by the Court, for an order granting Jackson National leave to deposit into the Court's registry the death benefit owed under an annuity issued to Focus 2000 for Annuitant Philip G. Bond, and: (a) discharging Jackson National from further liability under the annuity; (b) enjoining the competing claimants from initiating any separate action against Jackson National and/or its agents with respect to the Annuity; (c) awarding Jackson National its reasonable attorney's fees and costs; and (d) dismissing Jackson National from this action.

74477325.1

Dated:  New York, New York
        August 26, 2020

POLSINELLI PC


By: */s/*_____
        Frank T. Spano
        600 Third Avenue, 42nd Floor
        New York, New York 10016
        (212) 684-0199
        Fax No. (212) 684-0197
        fspano@polsinelli.com
        dstanislaus@polsinelli.com


ATTORNEYS FOR PLAINTIFF

POLSINELLI PC
Frank T. Spano
Darnell Stanislaus
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
fspano@polsinelli.com
dstanislaus@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>Plaintiff<br><br>v.<br><br>ELLEN A. IFSHIN f/k/a ELLEN, A. BOND and GREGORY T. BOND,<br><br>Defendant | Case No. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DEPOSIT POLICY BENEFIT INTO THE COURT'S REGISTRY AND FOR INTERPLEADER RELIEF**

       Plaintiff Jackson National Life Insurance Company ("Jackson National") respectfully submits this memorandum of law in support of its Motion to Deposit Policy Benefit into the Court's Registry and for Interpleader Relief.

**I.      FACTUAL BACKGROUND**

       1.      On January 3, 1989, Jackson National issued a Flexible Premium Deferred Annuity Policy, bearing Policy Number 0004865310 (the "Annuity") to Focus 2000 with Philip G. Bond, deceased being the annuitant ("Annuitant"). *See* Declaration of Theresa Thompson at ¶ 3.

       2.      The proceeds of the Annuity are subject to competing claims as the result of the death of Annuitant. *See id.* at ¶ 4.

3.       On or around February 21, 2020, Jackson National was provided, among other things, a certificate of death of Annuitant, who died on July 1, 2016, as a resident of San Diego, California.  *See id.* at ¶ 5.

4.       As of August 12, 2020, the value of the Annuity's death benefit proceeds is $15,297.56 (the "Proceeds"). *See id.* at ¶ 6.

5.       The Annuity identifies the primary beneficiary as Ellen A. Ifshin f/k/a Ellen A. Bond ("Ifshin"), Annuitant's ex-wife and the contingent beneficiary as Gregory T. Bond ("Bond"), Annuitant's son.  *See id.* at ¶ 7.

6.       On February 21, 2020, Bond provided to Jackson National an executed claim form, along with a Marital Settlement Agreement between Annuitant and Ifsin. *See id.* at ¶ 8.

7.       On March 14, 2020, Jackson National sent correspondence to Bond informing him that Ifshin was the designated beneficiary of the Annuity.  *See id.* at ¶ 9.

8.       On May 4, 2020, Jackson National sent correspondence to Ifshin advising her that she was the named beneficiary under the Annuity and asking her to return an executed claim form if she intended to claim the proceeds of the Annuity by June 1, 2020.  *See id.* at ¶ 10.

9.       On May 4, 2020, Jackson National notified Bond that Annuitant's divorce from Ifshin did not automatically revoke her designation as the beneficiary of the Annuity and asked Bond to notify Jackson National if he disagreed. *See id.* at ¶ 11.

10.      On May 16, 2020, Jackson National received Ifshin's Election Regarding Claim Proceeds in which she claimed she was the proper beneficiary of the Annuity and intended to file a claim for the Annuity's death benefit proceeds. *See id.* at ¶ 12.

11.      On May 12, 2020, Bond sent a letter to Jackson National, stating that if Ifshin attempted to claim the Proceeds he would contest her claim.  *See id.* at ¶ 13.

2

12.     On June 1, 2020, Jackson National received from Ifshin an Annuity Death Benefit Claim Form indicating that she elected to claim the Proceeds.  *See id*. at ¶ 14

13.     Jackson National is unable to determine the validity of the conflicting and competing claims to the Proceeds of the Annuity and fears that payment of the Proceeds to any one claimant will subject it to additional liability to the other claimants seeking payment of the Proceeds under the Annuity.

14.     Jackson National has no interest in the Proceeds except to the extent such payment discharges any and all obligations Jackson National may owe to any party arising out of the Annuitant's death and the benefit payable as a consequence thereof under the Annuity.

15.     On this same day, Jackson National filed this statutory interpleader action pursuant to 28 U.S.C. § 1335 as a disinterested stakeholder claiming no interest in the Proceeds of the Annuity.

## II.     LEGAL ARGUMENT

### A.     Jackson National is Entitled to an Order to Permit Deposit of the Proceeds into the Registry of this Court.

This Court has held that in order to exercise jurisdiction over a statutory interpleader action under 28 U.S.C. § 1335, the interpleader plaintiff must deposit the money or property at issue into the registry of this Court.  *See, e.g. Fed. Ins. Co. v. Tyco Int'l, Ltd.*, 422 F.Supp.2d 357 (S.D.N.Y. 2006).  Pursuant Fed.R.Civ.P. 67(a), Jackson National requires an order from this Court to direct the Clerk to permitting deposit on the Proceeds.  Accordingly, Jackson National respectfully requests and order from this Court allowing Jackson National to deposit the Proceeds into the Court's registry, and, thereafter, to be discharged from further liability with respect to the Proceeds and the Annuity and to be dismissed from this action.

### B.     Jackson National is Entitled to an Injunction Against Duplicitous Actions

28 U.S.C. § 2361 provides that

3

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.

This Court has determined that an "injunction against overlapping lawsuits is desirable to insure the effective of the interpleader remedy. It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations." *Sotheby's Inc. v. Garcia*, 802 F.Supp. 1058 (S.D.N.Y. 1992) Accordingly, Jackson National further requests that the Court enter an Order restraining Defendants, their heirs, legal representatives, successors and assigns, and all other persons claiming by, through, or under them, be permanently enjoined and restrained from instituting or prosecuting any action in any state or United States Court against Jackson National and its agents and representatives with respect to the Annuity or the Proceeds.

### C.     Jackson National is Entitled to an Order of Dismissal

Upon Jackson National's deposit of the Proceeds into the registry of the Court, Jackson National respectfully requests an order of discharge from further liability with respect to the Annuity and the Proceeds and an order of dismissal from this action.

### D.     Jackson National Requests its Attorneys' Fees

Finally, Jackson National requests an order awarding Jackson National its attorneys' fees and costs to be paid from the Proceeds. Jackson National is a disinterested party that was forced to bring the present suit after competing claims by the ex-wife and son of the Annuitant.

Dated:  New York, New York
          August 26, 2020

4

POLSINELLI PC


By:  _/s/_____
       Frank T. Spano
       600 Third Avenue, 42nd Floor
       New York, New York 10016
       (212) 684-0199
       Fax No. (212) 684-0197
       fspano@polsinelli.com
       dstanislaus@polsinelli.com


ATTORNEYS FOR PLAINTIFF

5

DocuSign Envelope ID: D067B457-175B-45E3-92AD-F358F985DACE

POLSINELLI PC
Frank T. Spano
Darnell Stanislaus
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
fspano@polsinelli.com
dstanislaus@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>                              Plaintiff<br><br>v.<br><br>ELLEN A. IFSHIN f/k/a ELLEN, A. BOND and GREGORY T. BOND,<br><br>                              Defendant | Case No. |

## <u>DECLARATION OF THERESA THOMPSON IN SUPPORT OF MOTION TO DEPOSIT</u>

Theresa Thompson, pursuant to 28 U.S.C. §1746, and under penalties of perjury, hereby affirms and states as follows:

1.      I am a Claims Examiner at Jackson National Life Insurance Company ("Jackson National"), the plaintiff in this action.  The information contained herein is either personally known to me or has been obtained from (1) people whom I believe to be reliable and capable of ascertaining the facts described herein or (2) records maintained by Jackson National.

2.      I submit this declaration in support of Jackson National's motion for an order permitting the deposit of the proceeds of Jackson National Flexible Premium Deferred Annuity Policy, bearing Policy Number 0004865310 (the "Annuity") into the Registry of this Court.

3.      The Annuity was issued on January 3, 1989 to Focus 2000 with Philip G. Bond, being the annuitant ("Annuitant").   *See* Annuity, attached as Exhibit 1.

DocuSign Envelope ID: D067B457-175B-45E3-92AD-F358F985DACE

4.     The proceeds of the Annuity are subject to competing claims as the result of the death of Annuitant.

5.     On or around February 21, 2020, Jackson National was provided, among other things, a certificate of death of Annuitant, who died on July 1, 2016, as a resident of San Diego, California.  *See* February 21, 2020 Fax to Jackson National, attached as Exhibit 2.

6.     As of August 12, 2020, the value of the Annuity's death benefit proceeds is $15,297.56 (the "Proceeds").

7.     The Annuity identifies the primary beneficiary as Ellen A. Ifshin f/k/a Ellen A. Bond ("Ifshin"), Annuitant's ex-wife and the contingent beneficiary as Gregory T. Bond ("Bond"), Annuitant's son.  *See* Annuity, attached as <u>Exhibit 1</u>.

8.     On February 21, 2020, Bond provided to Jackson National an executed claim form, along with a Marital Settlement Agreement between Annuitant and Ifsin.  *See* February 1, 2020 Fax from Bond to Jackson National, attached as <u>Exhibit 2</u>.

9.     On March 14, 2020, Jackson National sent correspondence to Bond informing him that Ifshin was the designated beneficiary of the Annuity.  *See* March 14, 2020 Letter to Bond, attached as <u>Exhibit 3</u>.

10.     On May 4, 2020, Jackson National sent correspondence to Ifshin advising her that she was the named beneficiary under the Annuity and asking her to return an executed claim form if she intended to claim the proceeds of the Annuity by June 1, 2020.  *See* May 4, 2020 Letter from Jackson National to Ifshin, attached as <u>Exhibit 4</u>.

11.     On May 4, 2020, Jackson National notified Bond that Annuitant's divorce from Ifshin did not automatically revoke her designation as the beneficiary of the Annuity and asked Bond to notify Jackson National if he disagreed. *See* May 4, 2020 Letter from Jackson National to Bond, attached as <u>Exhibit 5</u>.

74485817.2

DocuSign Envelope ID: D067B457-175B-45E3-92AD-F258F985DACE

12.     On May 16, 2020, Jackson National received Ifshin's Election Regarding Claim Proceeds in which she claimed she was the proper beneficiary of the Annuity and intended to file a claim for the Annuity's death benefit proceeds. *See* May 16, 2020 Election Regarding Claim for Proceeds, attached as Exhibit 6.

13.     On May 12, 2020, Bond sent a letter to Jackson National, stating that if Ifshin attempted to claim the Proceeds he would contest her claim.  *See* May 12, 2020 Letter from Bond to Jackson National, attached as Exhibit 7.

14.     On June 1, 2020, Jackson National received from Ifshin an Annuity Death Benefit Claim Form indicating that she elected to claim the Proceeds.  *See* Ifshin Annuity Death Benefit Form, attached as Exhibit 8.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 21, 2020

<div style="margin-left:40%">
DocuSigned by:

*Theresa Thompson*

66459ACED2E7445...

Theresa Thompson
</div>

74485817.2

# JACKSON NATIONAL LIFE INSURANCE COMPANY
### 1 Corporate Way
### Lansing, Michigan 48951
### A Stock Company

*Will pay the benefits provided in this policy,*
*subject to its terms and conditions*



POLICY NUMBER   0004865310     POLICY DATE   JANUARY 3, 1989

THE ANNUITANT   PHILIP G BOND     AGE   50   MALE

THE OWNER    FOCUS 2000

PLAN   FLEXIBLE PREMIUM DEFERRED     ISSUE DATE   JANUARY 3, 1989
ANNUITY

ANTICIPATED MATURITY DATE:     NOVEMBER 3, 2013
ANTICIPATED ANNUAL PREMIUM:     $12,000.00
INITIAL PREMIUM DEPOSIT:     $1,000.00

BENEFICIARY     ELLEN A BOND

PREMIUM
Schedule:   ANNUALLY     PREMIUM    Payable as follows ON THE DUE DATES PRIOR
TO MATURITY

Beginning:
| Month | Day | Year | | Total | PREMIUM: |
|---|---|---|---|---|---|
| JANUARY | 3 | 1989 | | | $12,000.00 |

---

INDIVIDUAL DEFERRED
ANNUITY CONTRACT WITH
FLEXIBLE PREMIUMS
DEATH BENEFIT PRIOR
TO MATURITY. MONTHLY
INCOME AT MATURITY.
NON-PARTICIPATING

**This contract is signed at the home office of**
**Jackson National Life, Lansing, Michigan**

**Secretary**                 **President**

A307

# CONTRACT PROVISIONS

| SECTION | PAGE |
|---|---|
| Basic Benefits | 3 |
| General Provisions | 3 |
| Accumulated Value Provisions | 4 |
| Annuity Provisions | 5 |
| Settlement Option Table | 6 |

## BASIC BENEFITS

**THE COMPANY WILL PAY** the Annuitant, if living on the Maturity Date, a monthly life income annuity with 120 months certain. The amount will be as shown on the Table of Guaranteed Values page of this Policy or such greater amount as determined by the terms of this Policy.

Upon receipt of due proof of the death of the Annuitant prior to the Maturity Date, the Company will pay to the Beneficiary, no later than two months after receipt of such proof, the Death Benefit Proceeds. The Death Benefit Proceeds will be equal to:

1) the total amount of premiums paid without interest and reduced by the sum of all Partial Withdrawal Amounts; or
2) the Accumulation Value, if greater.

## GENERAL PROVISIONS

**OWNER OF THE POLICY** While the Annuitant is living, all rights of this Policy belong to the Owner. The Owner may exercise these rights subject to the interest of any Assignee or irrevocable Beneficiary.

**CHANGE OF OWNERSHIP** The ownership of this Policy may be changed at any time during the Annuitant's lifetime. Such change must be made by written notice acceptable to the Company. A change will take effect on the date the notice is signed. However, the change will not apply to any payments made or actions taken by the Company before the notice was received at the Home Office. The Company reserves the right to require that this Policy be presented for endorsement of any change.

**HOW BENEFICIARY MAY BE CHANGED** While this Policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement. This may be done by filing at the Home Office of the Company an acceptable written request. Such change will be subject to any existing assignment of this Policy and will take effect only when recorded by the Company at its Home Office. When recorded, the change will take effect on the date the notice was signed. Any proceeds paid before a change of Beneficiary is recorded will not be subject to the change.

**DEATH OF BENEFICIARY** The interest of any Beneficiary who dies before the Annuitant will end at the death of the Beneficiary. The interest of any Beneficiary who dies at the time of or within ten days after the death of the Annuitant will also end if no proceeds have been paid to that Beneficiary. If the interest of all designated Beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the Annuitant.

**MISSTATEMENT OF AGE OR SEX** If the age or sex of the Annuitant has been misstated, the benefits available under this contract will be those which the premiums paid would have purchased at the correct age and sex.

Any underpayments will be made up immediately by the Company. Overpayments will be deducted from succeeding payments as necessary.

**CONSIDERATION: ENTIRE CONTRACT** The consideration for issuing this Policy is the Application and the payment of the first premium. This Policy and the Application, a copy of which is attached and made a part of the Policy, constitute the entire contract between the parties. All statements made in the Application will, in the absence of fraud, be deemed representations and not warranties; and no statement will void this Policy or be used as a defense to a claim unless it is contained in such written application.

**MODIFICATION OF POLICY** Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has power on behalf of the Company to change, modify, or waive the provisions of this Policy and then only in writing. No agent or persons other than the above named officers has the authority to change or modify this Policy or waive any of its provisions.

**ISSUE DATE** Unless otherwise stated on the face of this Policy, the issue date will be the date used to determine due dates, policy anniversaries and policy years.

**CHANGE OF ANTICIPATED MATURITY DATE** While this Policy is in force, the Owner may change the Anticipated Maturity Date to a date later than that shown on the face of this Policy by filing a written request at the Home Office of the Company.

**NONPARTICIPATING** This Policy will not participate in the profits or surplus of the Company.

## ACCUMULATED VALUE PROVISIONS

**ACCUMULATED VALUE** The Accumulated Value is equal to the Net Amount of each premium, less all Partial Withdrawal Amounts, accumulated at interest and reduced by the Annual Administrative Charges if applicable.

Interest will be credited from the date a premium is received by the Company and will cease to be credited on Partial Withdrawal Amounts on the date the Partial Withdrawal is granted by the Company.

**ADDITIONAL PREMIUM PROVISION** The Company will accept additional premium payments after the initial payment at any time prior to the election of an annuity payment option and in any amount not less than $50.

If premium payments are discontinued, the existing Accumulated Values will continue to accumulate as described in the "Accumulated Value" section.

**ANNUAL ADMINISTRATIVE CHARGE** At the end of each policy year, an administrative charge of $20 will be deducted from the Accumulated Value of each contract on which premiums had been paid in the policy year. Except that such charge will be waived in each year in which premium payments total at least $1,000.

**NET AMOUNT OF EACH PREMIUM** The Net Amount of each premium is equal to the total premium received by the Company reduced by the applicable premium tax rate in effect on the date the premium is received and reduced by a collection charge of $1.25. This collection charge will be waived and not deducted from any premium which equals or exceeds $1,000.

**CASH SURRENDER VALUE** The Cash Surrender Value is equal to the Accumulated Value, less the Surrender Charge.

**PARTIAL WITHDRAWAL AMOUNT** The Partial Withdrawal Amount means any amount less than the Cash Surrender Value, which is withdrawn from the Accumulated Value.

**NET WITHDRAWAL AMOUNT** The Net Withdrawal Amount is equal to the Partial Withdrawal Amount less the Surrender Charge.

**PARTIAL WITHDRAWAL** At any time prior to the Maturity Date, the Owner upon written application, may withdraw a Partial Withdrawal Amount, subject to the terms of this Policy. The Partial Withdrawal Amount must be such that the remaining Accumulated Value after withdrawal is not less than 15 percent of the Accumulated Value immediately prior to the Partial Withdrawal. In no case may the remaining Accumulated Value be less than $1,000.

When a Partial Withdrawal is made, the Partial Withdrawal Amount will be taken from the Accumulated Value arising from the first-year premium and interest thereon before any other premiums and interest.

**FULL WITHDRAWAL** At any time prior to the Maturity Date, the Company will, upon written application by the Owner and surrender of the policy, pay to the Owner the Cash Surrender Value of the policy.

**SURRENDER CHARGE** The Surrender Charge is a percentage of the Accumulated Value of the first-year premium and interest thereon for either a Full Withdrawal or Partial Withdrawal. The Surrender Charge percentage by policy year is shown on the Policy's Table of Guaranteed Values page.

The Company may defer payment of any withdrawal amount for a period not exceeding six months.

**ANNUAL STATEMENT OF VALUES** The Company shall provide to the Policyowner annually a statement showing premiums paid, partial or full withdrawals granted and the then current accumulation and cash surrender values.

**INTEREST OF THE OWNER** The interest of the Owner in the Accumulated Value prior to the Maturity Date will at all times be nonforfeitable.

**INTEREST** Interest will be credited to the Accumulated Value from the date premiums are received by the Company until withdrawals are granted by the Company. The rates of interest will be as the Board of Directors of the Company may declare, in advance. Such rate of interest will never be less than the rate shown on the Table of Guaranteed Values page. Such interest credited which exceeds these rates will be excess interest and will be added to and become part of the Accumulated Value. On contracts where less than $1,500 of premium has been paid during the most recent 24 months, the Board of Directors may declare lower or no excess interest.

**RESERVE BASIS** The reserve under this Policy prior to the commencement of any annuity payment will be equal to the Cash Surrender Value then current, or the greatest of the discounted future Cash Surrender Values discounted at the valuation interest rate permitted by law, whichever is greater. After that, the reserve will equal the present value of future annuity benefits provided.

The Cash and Annuity Values provided under this Policy meet or exceed the minimum levels required by the laws of the state in which this Policy is delivered. A detailed statement of the method of computing values has been filed with the supervisory official of the state where this Policy is delivered.

## ANNUITY PROVISIONS

**ANNUITY BENEFITS** At the Maturity Date selected by the Owner, the Accumulated Value will be applied to provide an annuity payable for 120 months certain and life as determined from this Policy, or other more favorable options as the Company may make available. The Owner may elect to receive an annuity in accordance with the other Options shown in the Policy or made available by the Company. At the death of an Annuitant before the Maturity Date, the Beneficiary may elect to receive an annuity by applying the death benefit proceeds under any of the following Options or other more favorable Options as the Company may make available. Election of an Option must be made in writing to the Company. The effective date of any election of an Option will be determined by the election.

**PAYMENT OPTIONS** The proceeds may be applied under any of the following Options:

**OPTION 1 - PROCEEDS AT INTEREST** The Cash Surrender Value or the Death Benefit Proceeds may be left on deposit during the lifetime of the Payee or for a specified period. Interest will then be paid annually. The rate of interest will be no less than 4% per year. All or part of the proceeds may be withdrawn at any time.

**OPTION 2 - PAYMENT FOR A FIXED PERIOD** The Accumulated Value or the Death Benefit Proceeds may be paid in monthly payments, until the proceeds plus interest at no less than 4% per year are paid in full. The period is shown in the table. If there are less than 120 monthly payments, the Cash Surrender Value will be applied instead of the Accumulated Value. The present value of any unpaid payments may be withdrawn at any time and will be if a Payee dies before the last payment is made.

**OPTION 3 - LIFE INCOME** The Accumulated Value or the Death Benefit Proceeds may be paid in monthly payments during the lifetime of the Payee. A minimum number of payments may be guaranteed if desired. The amounts of the monthly payments are shown in the table. They are based on the 1971 Individual Annuity Mortality Table with interest at 6%. Payment under this Option is subject to satisfactory proof of the age of the Payee. If the Payee dies before the guaranteed payments have been paid, the present value of the remaining guaranteed payments will be paid.

The present value of any unpaid payments under any option will be calculated using 4% interest.

**OPTION 4 - CURRENT ANNUITY OPTION** The Accumulated Value or the Death Benefit Proceeds may be used to purchase any single premium immediate annuity which is issued by the Company on the date of election. If there are less than 120 monthly payments, the Cash Surrender Value will be applied instead of the Accumulated Value. Payment under this Option is subject to satisfactory proof of the age of the Payee.

**MINIMUM PAYMENTS** The minimum payment under Option 1 is $100. The minimum payment under any of the other Options is $25.

**EFFECT OF TAXES ASSESSED AT MATURITY OR TIME OF ELECTION OF AN OPTION** In the event a premium tax or other tax is assessed at the time payments begin, the amount of such tax will reduce the proceeds which would otherwise be applied.

**EXCESS INTEREST** Excess Interest as declared by the Company may be used to increase payments or to increase the period of time for which payments are made.

**ELECTION OF SETTLEMENT OPTIONS BY OWNER** The Owner may elect or change any payment option during the lifetime of the Annuitant. The election or change can be made by written notice to the Company.

**ELECTION OF PAYMENT OPTIONS BY BENEFICIARY** If no payment Option is in effect at the death of the Annuitant, a payment Option may be elected by the Beneficiary. The election can be made by written notice to the Company.

**ADJUSTED AGE** The adjusted age is determined from the actual age and the calendar year of birth.

| Calendar Year of Birth | Adjusted Age |
|---|---|
| Before 1900 | Actual age Plus 2 |
| 1900-1919 | Actual age plus 1 |
| 1920-1939 | Actual age |
| 1940-1959 | Actual age minus 1 |
| 1960-1979 | Actual age minus 2 |
| 1980 and After | Actual age minus 3 |

**AVAILABILITY OF OPTIONS** These Options are not available if the Beneficiary is an Assignee, Corporation, Partnership, Association, Trustee, Executor, Administrator or any Fiduciary.

**FREQUENCY OF PAYMENTS** The payments shown in the table are monthly payments. Payments may be made one, two or four times per year if desired. These payments are obtained as follows:

| Number of Payments Per Year | Method of Calculation |
|---|---|
| One | Monthly Payment Multiplied by 11.787 |
| Two | Monthly Payment Multiplied by 5.951 |
| Four | Monthly Payment Multiplied by 2.990 |

## TABLE OF ANNUITY OPTIONS

The following table is for a contract whose net proceeds are $1,000, and will apply pro rata to the amount payable under this policy.

| UNDER OPTION 2 | | MONTHLY INSTALLMENT UNDER OPTION 3-CONTINUOUS INSTALLMENTS | | | | | | | | | | | | | |
| No of Monthly Installments | Monthly Installments | Adjusted Age of Payee | | No. of Mos. Certain | | | Adjusted Age of Payee | | No. of Mos. Certain | | | Adjusted Age of Payee | | No. of Mos. Certain | | |
| | | Male | Female | Life | 120 | 240 | Male | Female | Life | 120 | 240 | Male | Female | Life | 120 | 240 |
| 12 | $84.84 | | 26 | $4.93 | $4.92 | $4.91 | 41 | 47 | $5.53 | $5.49 | $5.39 | 62 | 68 | $7.46 | $7.08 | $6.33 |
| 24 | 43.25 | | 27 | 4.94 | 4.94 | 4.92 | 42 | 48 | 5.58 | 5.54 | 5.43 | 63 | 69 | 7.62 | 7.20 | 6.37 |
| 36 | 29.40 | | 28 | 4.96 | 4.95 | 4.94 | 43 | 49 | 5.63 | 5.59 | 5.46 | 64 | 70 | 7.80 | 7.33 | 6.42 |
| 48 | 22.47 | | 29 | 4.98 | 4.97 | 4.95 | 44 | 50 | 5.69 | 5.64 | 5.50 | 65 | 71 | 7.99 | 7.46 | 6.46 |
| 60 | 18.32 | | 30 | 5.00 | 4.99 | 4.97 | 45 | 51 | 5.75 | 5.70 | 5.54 | 66 | 72 | 8.19 | 7.60 | 6.51 |
| 72 | 15.56 | | 31 | 5.02 | 5.01 | 4.99 | 46 | 52 | 5.82 | 5.75 | 5.58 | 67 | 73 | 8.41 | 7.74 | 6.54 |
| 84 | 13.59 | 26 | 32 | 5.04 | 5.03 | 5.01 | 47 | 53 | 5.89 | 5.81 | 5.62 | 68 | 74 | 8.65 | 7.88 | 6.58 |
| 96 | 12.12 | 27 | 33 | 5.06 | 5.05 | 5.03 | 48 | 54 | 5.96 | 5.87 | 5.66 | 69 | 75 | 8.90 | 8.04 | 6.61 |
| 108 | 10.97 | 28 | 34 | 5.07 | 5.07 | 5.05 | 49 | 55 | 6.03 | 5.94 | 5.71 | 70 | 76 | 9.18 | 8.19 | 6.64 |
| 120 | 10.06 | 29 | 35 | 5.10 | 5.09 | 5.07 | 50 | 56 | 6.11 | 6.00 | 5.75 | 71 | 77 | 9.48 | 8.35 | 6.67 |
| 132 | 9.31 | 30 | 36 | 5.12 | 5.11 | 5.08 | 51 | 57 | 6.19 | 6.07 | 5.79 | 72 | 78 | 9.80 | 8.51 | 6.69 |
| 144 | 8.69 | 31 | 37 | 5.15 | 5.14 | 5.10 | 52 | 58 | 6.28 | 6.14 | 5.84 | 73 | 79 | 10.15 | 8.67 | 6.71 |
| 156 | 8.17 | 32 | 38 | 5.18 | 5.17 | 5.13 | 53 | 59 | 6.37 | 6.22 | 5.89 | 74 | 80 | 10.52 | 8.83 | 6.73 |
| 168 | 7.72 | 33 | 39 | 5.21 | 5.20 | 5.15 | 54 | 60 | 6.46 | 6.30 | 5.94 | 75 | | 10.93 | 9.00 | 6.74 |
| 180 | 7.34 | 35 | 40 | 5.24 | 5.23 | 5.18 | 55 | 61 | 6.56 | 6.38 | 5.98 | 76 | | 11.37 | 9.16 | 6.75 |
| 192 | 7.00 | 35 | 41 | 5.27 | 5.26 | 5.21 | 56 | 62 | 6.67 | 6.47 | 6.03 | 77 | | 11.85 | 9.31 | 6.76 |
| 204 | 6.71 | 36 | 42 | 5.31 | 5.29 | 5.24 | 57 | 63 | 6.78 | 6.56 | 6.08 | 78 | | 12.37 | 9.47 | 6.76 |
| 215 | 6.44 | 37 | 43 | 5.35 | 5.33 | 5.26 | 58 | 64 | 6.90 | 6.65 | 6.13 | 79 | | 12.93 | 9.62 | 6.77 |
| 228 | 6.21 | 38 | 44 | 5.39 | 5.37 | 5.29 | 59 | 65 | 7.03 | 6.75 | 6.18 | 80 | | 13.54 | 9.76 | 6.77 |
| 240 | 6.00 | 39 | 45 | 5.43 | 5.41 | 5.33 | 60 | 66 | 7.16 | 6.86 | 6.23 | | | | | |
| | | 40 | 46 | 5.48 | 5.45 | 5.36 | 61 | 67 | 7.30 | 6.97 | 6.28 | | | | | |

# JACKSON NATIONAL LIFE INSURANCE COMPANY

| 1 Corporate Way |  | Lansing, Michigan 48951 |

TABLE OF GUARANTEED VALUES

PLAN:   FLEXIBLE PREMIUM DEFERRED ANNUITY                    ISSUE AGE - 50 MALE

POLICY NO:   0004865310                              ANNUAL PREMIUM - $12,000.00

THE VALUES SHOWN BELOW ARE BASED ON THE PREMIUM SHOWN ABOVE, PAID ANNUALLY IN
ADVANCE ON EACH POLICY ANNIVERSARY, AND ON THE GUARANTEED ANNUAL INTEREST RATE. SINCE
INTEREST IS CREDITED ON THE ACTUAL NET AMOUNT OF EACH PREMIUM PAYMENT FROM THE DATE IT
IS RECEIVED, THE VALUES OF THIS POLICY WILL VARY ACCORDINGLY. THESE VALUES WILL BE
INCREASED BY ANY AMOUNTS OF EXCESS INTEREST DECLARED BY THE BOARD OF DIRECTORS AND
WILL BE REDUCED BY ANY PARTIAL WITHDRAWALS.

| END OF POLICY YEAR | ACCUMULATED VALUE | CASH SURRENDER VALUE | GUARANTEED MONTHLY INCOME LIFE ANNUITY WITH 10 YEARS CERTAIN AT AGE 70 |
|---|---|---|---|
| 1 | $12,360.00 | $8,034.00 | $117.50 |
| 2 | $25,090.80 | $20,635.02 | $349.84 |
| 3 | $38,203.52 | $33,614.07 | $517.15 |
| 4 | $51,709.63 | $46,982.49 | $679.60 |
| 5 | $65,620.92 | $60,751.97 | $837.31 |
| 6 | $79,949.55 | $75,364.39 | $990.42 |
| 7 | $94,708.04 | $90,428.08 | $1,139.08 |
| 8 | $109,909.28 | $105,956.96 | $1,283.41 |
| 9 | $125,566.56 | $121,965.39 | $1,423.53 |
| 10 | $141,693.56 | $138,468.16 | $1,559.57 |
| 11 | $158,304.37 | $155,646.64 | $1,691.66 |
| 12 | $175,413.50 | $173,360.49 | $1,819.89 |
| 13 | $193,035.91 | $191,626.12 | $1,944.39 |
| 14 | $211,186.99 | $210,460.95 | $2,065.26 |
| 15 | $229,882.60 | $229,882.60 | $2,182.61 |
| 16 | $249,139.08 | $249,139.08 | $2,296.54 |
| 17 | $268,973.25 | $268,973.25 | $2,407.16 |
| 18 | $289,402.45 | $289,402.45 | $2,514.55 |
| 19 | $310,444.52 | $310,444.52 | $2,618.82 |
| 20 | $332,117.86 | $332,117.86 | $2,720.05 |
| AGE 60 | $141,693.56 | $138,468.16 | $1,559.57 |
| AGE 70 | $332,117.86 | $332,117.86 | $2,720.05 |

THE SURRENDER CHARGE PERCENTAGE BY POLICY YEAR IS AS FOLLOWS: *

| FIRST 5 POLICY YEARS | 35% | 9TH POLICY YEAR | 23% | 13TH POLICY YEAR | 8% |
|---|---|---|---|---|---|
| 6TH POLICY YEAR | 32% | 10TH POLICY YEAR | 20% | 14TH POLICY YEAR | 4% |
| 7TH POLICY YEAR | 29% | 11TH POLICY YEAR | 16% | 15TH AND LATER | |
| 8TH POLICY YEAR | 26% | 12TH POLICY YEAR | 12% | POLICY YEARS | 0% |

* APPLIED TO ACCUMULATION OF PREMIUMS PAID IN FIRST POLICY YEAR ONLY

THE GUARANTEED INTEREST RATE IS 3.00% COMPOUNDED ANNUALLY.

A307

**APPLICATION TO**

**A** 082907

**JACKSON NATIONAL LIFE INSURANCE COMPANY / LANSING, MICHIGAN**
**FOR FLEXIBLE PAYMENT ANNUITY OR SINGLE PAYMENT ANNUITIES.**

1. Full name of Annuitant (First, Middle and Last Name)

**PLEASE PRINT**

| P | H | I | L | I | P | | G | | B | O | A | D | | | | | | | | | | | Sex __X__ Male |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Sex __X__ Male ____ Female

| 2. Address | Number and Street | City | State | Zip Code |
|---|---|---|---|---|
| 3205 | MIDWAY DRIVE | SAN DIEGO | CA | 92110 |

| 3. Date of Birth | Month | Day | Year | Age | Social Security Number (must be filled in) |
|---|---|---|---|---|---|
| | 2 | 15 | 38 | 50 | 2 1 1 0 8 |

4. Employer **FOCUS 2000**
Occupation **EXECUTIVE — REAL ESTATE DEVELOPER**
Date Employed **1987**

| 5. Beneficiary | Relationship | Contingent Beneficiary | Relationship |
|---|---|---|---|
| ELLEN A. BOND | SPOUSE | GREGORY T. BOND | SON |

6. It is understood that ownership and control of the Contract to be issued on the basis of this statement will be vested in
☐ The Annuitant  ☒ Other than the Annuitant
(SHOW NAME, ADDRESS, AND SOCIAL SECURITY OR BUSINESS IDENTIFICATION NUMBER IF OWNER IS OTHER THAN ANNUITANT)

**FOCUS 2000**
**ID# 33-0287117**

7. Payment Notice to: (if other than No. 2 above)

| Name | Number and Street | City | State | Zip Code |
|---|---|---|---|---|
| PHILIP BOND/TRUSTEE | FOCUS 2000 3205 MIDWAY DR. | SAN DIEGO | CA | 92110 |

| 8. THIS APPLICATION IS FOR A FLEX II ANNUITY | PLAN CODE 822 | 12 Owner Retains Right to change Beneficiary ☐ Yes ☒ No |
|---|---|---|

9. Is the annuity purchased on a tax-qualified basis? ☒ Yes ☐ No

13. Anticipated Retirement Age **70**
14. Is this contract to replace any existing life insurance policy or annuity policy? ☐ Yes ☒ No
If so, give complete details

10. If contract is purchased to fund a qualified plan, please indicate appropriate section of Internal Revenue Code

☐ IRA (Section 408)
☐ Self Employed (Section 401)
☒ Corporation (Section 401)
☐ 501 (c) (3) Organization (Section 403b)
☐ Public School System (Section 403b)
☐ Deferred Compensation (Plan Document Enclosed)
☐ Simplified Employee Pension (Section 408)

15. Special Requests.
**ANNUITANT RETAINS RIGHT TO CHANGE BENEFICIARY**
X plan w/ w/ retain c Levois app
16. Home Office Endorsement (For Company use only)

**486531**

11. Payment Information for Flexible Contract only:
a. Initial Payment $ __1,000__
b. Anticipated Annual Payment $ __12,000__
c. Mode of Payment (Circle One)  (A)  S  Q  PAC

8220P5    JAN 03 1989

**IMPORTANT: MAKE ALL CHECKS PAYABLE ONLY TO JACKSON NATIONAL LIFE INSURANCE CO.**

**GENERAL INFORMATION**

Note that:
1. The acceptance of the Contract issued on this application shall constitute a ratification of any change, correction or addition made by the Company and noted in the space headed "Home Office Endorsements"
2. There has been delivered to the agent with this application $ __1,000__ payable only to Jackson National Life Insurance Company which shall not be considered payment hereunder unless actually honored upon presentation by the Company in the due course of business

3. Upon acceptance of a Contract other than as applied for, this application (including any endorsements in 16 above) shall be for such modified Contract, except that where required by statute or Insurance Department regulation any change in plan, amount, classification or benefits shall be made only upon written agreement.
4. The undersigned hereby represents to the best of his (their) knowledge that each of the statements and answers contained above are full, complete and true.

Cash Received With Application $ __1,000__

Dated and Signed at **SAN DIEGO CA** on __12-22__ 19__88__

54098
Signature of Licensed Agent / Agent Number

Signature of Second Agent if Applicable / Agent Number

Signature of Owner if Other than Annuitant  TRUSTEE

Form No. 928B REV. 11/82

Case 7:20-cv-06930-NSR Document 19-4 Filed 11/30/2020 Page 21 of 152

To: Jackson National Life Insurance Company

From: Gregory Bond

Re: Policy #0004865310, Philip Bond

Date: February 21, 2020

Attached:

1) Copy Of Jackson Letter Dated February 6, 2020
   - 1 Page

2) Claim Form - 8 Pages

3) Certified Death Certificate - 1 Page

4) Certified Marriage Dissolution - 27 Pages

Total of 37 Pages + Cover Sheet

Fax to: (517) 706- 5513

2020-02-21 11:54
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE          P 2



JACKSON™

NATIONAL LIFE INSURANCE COMPANY

Claims Administration

February 6, 2020

Ellen A Bond
c/o Gregory T Bond
29506 Mammoth Ln
Canyon Country, CA 91387

**URGENT: IMMEDIATE REPLY REQUIRED**

Deceased:  Philip G Bond
Policy No.:  0004865310

Dear Ellen A Bond:

Our records indicate that you may have an interest in the unclaimed funds due to the beneficiary of the above listed policy with an approximate value of $8,050.64.

To date, we have not received the following documents necessary for consideration of this claim.

- Claim Form
- Final Certified Death Certificate

This property may be escheated to the state if the beneficiary does not come forward to claim the funds. YOUR RESPONSE MUST BE RECEIVED WITHIN 30 DAYS FROM THE DATE OF THIS LETTER to prevent these funds from being reported to the state of California as unclaimed property.

If you have additional questions or concerns, please contact our Service Center at 888/565-4995, Monday through Thursday, 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 6:00 p.m. (ET). You may also contact Jackson via email through "Contact Us" on our website at www.jackson.com.

Sincerely,

Laura Hanson

Laura Hanson
VP, Policy Owner Services

Jackson National Life Insurance Company
1 Corporate Way, Lansing, MI 48951
800/644-4565



2020-02-21 11:57    Costco W 130 sign 3236611475 >> FAXCORE    P 11/38
02/21/2020 15:07:06

CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO

ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

CERTIFICATE OF DEATH          3201637011714

| 1. NAME OF DECEDENT-FIRST (Given) | 2. MIDDLE | 3. LAST (Family) | |
|---|---|---|---|
| PHILIP | GREGORY | BOND | |

4. DATE OF BIRTH 02/15/1938  5. AGE 78  6. SEX M

| HS GRADUATE | WHITE | MARRIED | 07/01/2016 | 2115 |

SS# 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

17. USUAL OCCUPATION: MANAGER — ELECTRONICS MANUFACTURING — 20

19. RESIDENCE: 3780 VISTA CAMPANA S #48

CITY: OCEANSIDE   COUNTY: SAN DIEGO   ZIP: 92057   YEARS IN COUNTY: 25   CA

INFORMANT: RUTH BOND, WIFE — 3780 VISTA CAMPANA S #48, OCEANSIDE, CA 92057

| Father first: RUTH | middle: CLARA | last: SCHULTZ | birth state KS |
| Father: HARRY | EDWARD | BOND | KS |
| Mother: MARGARET | | O'CANE | KS |

DISPOSITION DATE: 07/14/2016

PLACE OF FINAL DISPOSITION: LOMA LINDA UNIV. BODIES FOR SCIENCE
24760 STEWART ST., LOMA LINDA, CA 92350

TYPE OF DISPOSITION: SU — NOT EMBALMED

FUNERAL ESTABLISHMENT: SAN JACINTO VALLEY MORTUARY   FD1765

LOCAL REGISTRAR: WILMA J WOOTEN, MD MPH   DATE: 07/13/2016

PLACE OF DEATH: VISTA KNOLL SPECIALIZED CARE FACILITY

COUNTY: SAN DIEGO   2000 WESTWOOD RD   CITY: VISTA

CAUSE OF DEATH: ALZHEIMER'S DEMENTIA — YEARS

OTHER SIGNIFICANT CONDITIONS: NONE

CERTIFYING: HOUSSAM BAROUDI, MD   A67327   07/13/2016
1926 VIA CENTRE, VISTA, CA 92081   HOUSSAM BAROUDI, MD

06/27/2016   06/29/2016

STATE REGISTRAR

'01009103328370'

004478428

This is a true and exact reproduction of the document officially registered and placed on file in the office of the
San Diego County Recorder/Clerk



Sep 21, 2017    Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border
displaying date, seal and signature of the Recorder/County Clerk



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

CASANDIEO2

2020-02-21 11:58          Costco W 130 sign 3236611475 >> FAXCORE          P 12/38
02/21/2020 15:07:06

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE: (619) 544-0880 | FOR COURT USE ONLY |
|---|---|---|

David M. Huffman
HUFFMAN & KOSTAS
1420 Kettner Blvd., Ste. 402
San Diego, CA 92101                    BAR #.69026
ATTORNEY FOR (Name): ELLEN BOND

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

[X] FAMILY COURT BUILDING, 1501-55 SIXTH, SAN DIEGO, CA 92101-1946
☐ NORTH COUNTY BRANCH, 325 S. MELROSE, VISTA, CA 92083-6627
☐ EAST COUNTY COURT, 250 E. MAIN, EL CAJON, CA 92020-3913
☐ SOUTH BAY COURT, 500 THIRD, CHULA VISTA, CA 91910-5694

**MARRIAGE OF**
PETITIONER: ELLEN A. BOND

RESPONDENT: PHILIP G. BOND

**F I L E D**
KENNETH E. MARTONE
Clerk of the Superior Court

SEP 24 1998

By: A. MEYER-JACQUES, Deputy
FAMILY COURT

### NOTICE OF ENTRY OF JUDGMENT

CASE NUMBER:
D 435556

You are notified that the following judgment was entered on (date): **SEP 18 1998**

1. [X] Dissolution of Marriage

2. ☐ Dissolution of Marriage - Status Only

3. ☐ Dissolution of Marriage - Reserving Jurisdiction over Termination of Marital Status

4. ☐ Legal Separation

5. ☐ Nullity

6. ☐ Other (specify):

Date: **SEP 24 1998**

Kenneth F. Martone
KENNETH E. MARTONE
CLERK OF THE SUPERIOR COURT

**- NOTICE TO ATTORNEY OF RECORD OR PARTY WITHOUT ATTORNEY -**

Pursuant to the provisions of Code of Civil Procedure section 1952, if no appeal is filed the court may order the exhibits destroyed or otherwise disposed of after 60 days from the expiration of the appeal time.

| Effective date of termination of marital status (specify): | **SEP 18 1998** |
|---|---|

WARNING: NEITHER PARTY MAY REMARRY UNTIL THE EFFECTIVE DATE OF THE TERMINATION OF MARITAL STATUS AS SHOWN IN THIS BOX.

### CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this cause and that a true copy of the Notice of Entry of Judgment was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below, and that the notice was mailed

at (place): SAN DIEGO , California,           KENNETH E. MARTONE,
on (date): SEP 24 1998           CLERK OF THE SUPERIOR COURT
Date: SEP 24 1998           by _____ Ryde _____ , Deputy
                                              A. RYDER

ELLEN A. BOND
c/o David M. Huffman
HUFFMAN & KOSTAS
1420 Kettner Blvd., Ste. 402
San Diego, CA 92101-2433

PHILIP G. BOND
3041 Industry St., Unit B
Oceanside, CA 92054

Form Adopted by Rule 1290
Judicial Council of California
1290 (Rev. July 1, 1985)
SUPCT D-21 (Rev. 7-85)

**NOTICE OF ENTRY OF JUDGMENT**
(Family Law)

2020-02-21 11:59 Costco W 130 sign 3236611475 >> FAXCORE P 13/38
02/21/2020 15:07:06

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address): | TELEPHONE NO (619) 544-0880 | FOR COURT USE ONLY |
|---|---|---|

David M. Huffman
HUFFMAN & KOSTAS
1420 Kettner Blvd., Ste. 402
San Diego, CA 92101
69026

ATTORNEY FOR (Name): **ELLEN BOND**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 1501-55 SIXTH AVENUE
MAILING ADDRESS: P.O. BOX 128
CITY AND ZIP CODE: SAN DIEGO, CA 92101
BRANCH NAME: FAMILY LAW DIVISION

**F I L E D**
KENNETH E. MARTONE
Clerk of the Superior Court

**SEP 18 1998**

0304 02 12 By D. COLLINS, Deputy 09/21/99 08:21
(2 040 1st Paper Fee $185.00

MARRIAGE OF
PETITIONER: ELLEN A. BOND
RESPONDENT: PHILIP G. BOND

**JUDGMENT**

[X] Dissolution ☐ Legal separation ☐ Nullity
☐ Status only
☐ Reserving jurisdiction over termination of marital status
Date marital status ends: SEP 18 1998

CASE NUMBER:
D 435556

1. This proceeding was heard as follows: ☐ default or uncontested [X] by declaration under Fam. Code, § 2336 ☐ contested
   a. Date: SEP 18 1998   Dept:   Rm:
   b. Judge (name): William S. Cannon, Judge   ☐ Temporary judge
   c. ☐ Petitioner present in court   ☐ Attorney present in court (name):
   d. ☐ Respondent present in court   ☐ Attorney present in court (name):
   e. ☐ Claimant present in court (name):   ☐ Attorney present in court (name):
2. The court acquired jurisdiction of the respondent on (date): 04/27/97
   [X] Respondent was served with process   ☐ Respondent appeared

3. THE COURT ORDERS, GOOD CAUSE APPEARING:
   a. [X] Judgment of dissolution be entered. Marital status is terminated and the parties are restored to the status of unmarried persons
      (1) [X] on the following date (specify): SEP 18 1998
      (2) ☐ on a date to be determined on noticed motion of either party or on stipulation.
   b. ☐ Judgment of legal separation be entered.
   c. ☐ Judgment of nullity be entered. The parties are declared to be unmarried persons on the ground of (specify):
   d. [X] Wife's former name be restored (specify): ELLEN A. IFSHIN
   e. ☐ This judgment shall be entered nunc pro tunc as of (date):
   f. ☐ Jurisdiction is reserved over all other issues and all present orders remain in effect except as provided below.
   g. [X] Other (specify): PLEASE SEE ATTACHMENT TO JUDGMENT OF DISSOLUTION WHICH IS ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

   h. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: XXXXXXXXXXXXXXXXXXXXXXXXX

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
JUDGE OF THE SUPERIOR COURT

4. Number of additional pages attached: 24   [X] Signature follows last attachment p. 25

**NOTICE**

Please review your will, insurance policies, retirement benefit plans, credit cards, other credit accounts and credit reports, and other matters you may want to change in view of the dissolution or annulment of your marriage, or your legal separation. A debt or obligation may be assigned to one party as part of the division of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.
An earnings assignment will automatically be issued if child support, family support, or spousal support is ordered.

Form Adopted by Rule 1207
Judicial Council of California
1207 (Rev. January 1, 1997)

**JUDGMENT**
(Family Law)

Family Code, §§ 2340, 2343, 2346

2020-02-21 11:59          Costco W 130 sign 3236611475 >> FAXCORE          P 14/38
02/21/2020 15:07:06

## MARITAL SETTLEMENT AGREEMENT

The parties to this Agreement, PHILIP G. BOND, hereinafter referred to as "Husband", and ELLEN A. BOND, hereinafter referred to as "Wife", agree as follows:

1.  **STATISTICAL INFORMATION:**

    a.  The parties were married on September 17, 1989.

    b.  There were no children of this marriage.

    c.  Irreconcilable differences have arisen between the parties and these differences have led to an irremediable breakdown of their marriage. Thus, the parties have separated and agreed to live free from any interference by the other.

    d.  The parties separated on April 18, 1997, which is eight (8) years, six (6) months from the date of their marriage. They have not resumed their marital relationship since the date of separation.

    e.  There is presently on file in the Superior Court of the State of California, County of San Diego, an action for the dissolution of the parties' marriage filed as Case Number D 435556. The Petition was filed by Wife on April 18, 1997. Husband executed a Notice and Acknowledgement of Receipt on April 27, 1997. The Notice and Acknowledgement of Receipt which was executed by Husband was filed with the Court on May 13, 1997.

2.  **PURPOSE OF THIS AGREEMENT:** The purpose of this Agreement is to make a final and complete settlement of the parties' rights and obligations pertaining to:

PGB          EAB

Page 1 of 24

a.   Identification and designation of their respective separate property and separate obligations;

b.   Identification and division of their community or co-owned property and community or co-owed obligations;

c.   Spousal support; and

d.   Attorney fees.

This Agreement also sets forth specific matters over which a Court of competent jurisdiction shall retain jurisdiction.

3.   **SEPARATE LIVES AND PROPERTY:**

a.   The parties shall live separate and apart and except for the duties and obligations imposed and assumed under this Agreement, each shall be free from interference, authority, and control of the other as fully as though he or she were single and unmarried. Each party may conduct, carry on, and engage in any employment, profession, business, or trade which to him or her may seem advisable for his or her own use or benefit without, and free from, any control, restraint, or interference, direct or indirect, by the other party and in all respects as if each were unmarried.

b.   Except as expressly provided to the contrary in this Agreement, any property acquired by either party from or after the date of separation shall be the sole and separate property of the one acquiring it. Each party waives any and all rights in or to such property and confirms it to be the sole and separate property of the party acquiring it from and after the date of separation. The earnings from personal services of either party after the date of separation shall be the sole and separate property of the one acquiring them.

PGB          EAB

Page 2 of 24

2020-02-21 12:00
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE                    P 16/38

c.   Except as expressly provided to the contrary in this Agreement, any obligation incurred by either party from or after the date of separation shall be the sole and separate obligation of the party incurring it, and the party shall assume, pay and hold the other party harmless from any obligation so incurred.

4.   **SPOUSAL SUPPORT:**

a.   Husband's obligation to provide spousal support to Wife is terminated effective forthwith.

b.   Wife's obligation to provide spousal support to Husband is terminated effective forthwith.

5.   **DISCLAIMER OF REPRESENTATION RE VALUE:** The parties hereto have acquired various personal and real properties of speculative value. It is understood by the parties that neither party makes any representations to the other as to the value of any property, community or separate, and each party relies on his or her own investigation and judgment with respect to all property and all matters covered by this Agreement.

6.   **HUSBAND'S SEPARATE PROPERTY:** The following assets and/or obligations are confirmed to Husband as his sole and separate property:

a.   Husband's clothing, jewelry and personal effects.

b.   Any bank accounts presently held in Husband's name.

c.   Husband's earnings after April 18, 1997, and accumulations thereon.

Wife acknowledges that she neither has nor claims any right, title or interest in any such property.



PGB          EAB

Case 7:20-cv-06930-NSR   Document 19-6   Filed 11/10/20   Page 29 of 152

7.    **WIFE'S SEPARATE PROPERTY:**   The following assets and/or obligations are confirmed to Wife as her sole and separate property:

    a.    Wife's clothing, jewelry and personal effects.

    b.    Any bank accounts presently held in Wife's name.

    c.    Wife's earnings after April 18, 1997, and accumulations thereon.

    Husband acknowledges that he neither has nor claims any right, title or interest in any such property.

8.    **DIVISION OF COMMUNITY PROPERTY AND CO-OWNED PROPERTY:**

    a.    Husband and Wife hereby divide their community and co-owned property so that the aggregate fair market value of the community and co-owned property received by each is approximately equal, considering the apportionment of any community or joint liabilities. This division is fair and approximately equal. The community or co-owned assets of the parties shall be divided as follows:

    (1)    **Assets awarded to Husband.**   Husband shall receive, as his sole and separate property, the following assets:

    (a)    The household furniture, furnishings and appliances in Husband's possession.

    (b)    One-half (1/2) of the net proceeds from the sale of the real property located at 1425 Glenwood Drive, San Diego, California, 92103. By execution of this Agreement, Husband authorizes Wife's counsel, David M. Huffman, to disburse the proceeds in his segregated trust account one-half (1/2) to Husband and one-half (1/2) to Wife.

PGB          EAB

(c)  The  1984  Cadillac  Coupe  de  Ville automobile.

(d)  The 1967 Mercury Cougar automobile.

(e)  All right, title and interest in Husband's business known as PME (Price, Manufacturing & Engineering).

(2)  **Assets awarded to Wife.**  Wife shall receive, as her sole and separate property, the following assets:

(a)  The household furniture, furnishings and appliances in Wife's possession.

(b)  One-half (1/2) of the net proceeds from the sale of the real property located at 1425 Glenwood Drive, San Diego, California, 92103.  By execution of this Agreement, Wife authorizes her counsel, David M. Huffman, to disburse the funds in his segregated trust account one-half (1/2) to Husband and one-half (1/2) to Wife.

(c)  The 1988 BMW 325i automobile.

(3)  Husband has an IRA account with Bank of America, no. ██████████, which had a balance of $14,940.92 as of March 31, 1997.  In order to equalize the division of community assets and debts, Husband shall forthwith transfer the sum of $10,000 from this IRA account into an IRA account in Wife's name which will be designated by Wife.  It is the parties' intent that the rollover of $10,000 from Husband's IRA account into an IRA account established by Wife shall constitute a nontaxable event. If the Internal Revenue Service or the Franchise Tax Board for some reason attempts to tax this transaction, the Court shall reserve jurisdiction over the allocation of any tax liability, including

PGB          BAB

Page 5 of 24

2020-02-21 12:00
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE          P 19/38

interest and penalties.  The remaining balance in Husband's IRA
account is awarded to Husband as his sole and separate property.
The $10,000 rolled over into Wife's new IRA account is awarded to
Wife as her sole and separate property.

      (4)  By execution of this Agreement, Husband and
Wife each represent to the other that they do not own any interest
in any pension plan, profit sharing plan, IRA accounts or any other
form of retirement benefits other than those specified in this
Marital Settlement Agreement.

9.    **NO OTHER PROPERTY:** Each party warrants to the other that
the warrantor does not own any property of any kind, other than the
property set forth in this Agreement. If it later appears that
either warrantor now owns any other property and that the warrantee
has an interest in that other property, the warrantor shall
transfer or pay to the warrantee, at the warrantee's election:

      a.    An amount equal to the warrantee's interest in such
other property, if it is reasonably susceptible to division;

      b.    The full market value of the warrantee's interest on
the effective date of this Agreement; or

      c.    The full market value of the warrantee's interest at
the time the warrantee discovers the warrantor's ownership in the
property.

This Agreement is not intended to impair the availability, in a
Court of competent jurisdiction, of any other remedy arising from
the undisclosed ownership of any property.

10.    **AFTER ACQUIRED PROPERTY:** Any property acquired by either
party from and after the date of this Agreement shall be the sole

PGB        EAB .

Page 6 of 24

and separate property of the one so acquiring it; and each of the parties waives any and all property rights in or to such future acquisitions of property as the sole and separate property of the one so acquiring the same from the effective date of this Agreement.

11. NO UNDISCLOSED GIFTS: Each party warrants to the other that the warrantor has not made, without the warrantee's knowledge and consent, any gift or disposition of community property other than a disposition in exchange for a valuable consideration to the community. If it later appears that the warrantor made a disposition of community property contrary to this warranty, the warrantor shall pay the warrantee one-half ($\frac{1}{2}$) of the fair market value of the community property measured, at the warrantee's election:

    a.   On the effective date of this Agreement; or

    b.   At the time the warrantee discovers the disposition, less any appreciation in value attributable solely to the acts of the donee(s) and his successor(s).

This Agreement shall not impair the availability, in a Court of competent jurisdiction, of any other remedy arising from the undisclosed disposition of any property.

12. OBLIGATIONS:

    a.   Wife shall assume the existing balance owed on the MBNA loan, no.                    in the approximate amount of $18,000. Wife shall use her best efforts to have the existing balance transferred into her name alone. If MBNA refuses to transfer the existing balance into an account in Wife's sole name,

Page 7 of 24

Wife shall make the payments on this loan in a timely fashion and shall hold Husband harmless from any liability thereon. The parties each warrant to the other that there are no other outstanding unsecured debts for which the other may be liable.

b.    Any liability or obligation incurred at any time by either party and not expressly identified in this Agreement as payable in whole or part by the other party, shall be paid solely by the one incurring the liability or obligation.

c.    Except as may be expressly provided to the contrary in this Agreement, the party to whom an item of property is entirely allocated under this Agreement shall be solely responsible for all obligations incurred at any time relative to such item, including, but not limited to, any encumbrances, taxes and insurance against such item, and, except where otherwise provided in this Agreement, the parties shall be responsible for payment of their proportionate share of all obligations incurred at any time relative to any asset in which the parties both retain interests.

d.    The party responsible for payment of obligations pursuant to this section shall indemnify and hold the other harmless from all liabilities, costs and expenses relative thereto, including, but not limited to, reasonable attorneys fees and court costs which may be incurred by reason of the necessity to defend any claim or suit brought against the other party to enforce any such obligation.

13.    **HOLD HARMLESS PROVISION**: In the event that a party to this Agreement is required to pay and hold the other party harmless from some debt, and the party fails to hold the other party free

PGB    EAB

Page 8 of 24

and harmless from that debt, then the other party may pay some or all of such debt and deduct said payment from any monies owed by the other party to the party who breached the hold harmless covenant; provided, however, a party shall not pay the debt without first advising the other party of his or her intention to do so and waiting seven (7) days from the date such notice is given; and provided, further, the set off provided shall not be allowed with regard to any claim or demand as to which within said seven (7) day period the other party represents that he or she has a legal defense, unless and until the asserted legal defense is decided or settled adversely to that party. This remedy shall be in addition to any other remedies available for the enforcement of payment of debts.

14.   **CREDIT HISTORY:** The parties agree that the credit history established by them during their marriage shall be deemed to have been the credit history of both parties, notwithstanding practices of creditors and credit reporting agencies which may have reported such credit history in the name of Husband only or Wife only. Husband agrees that he shall cooperate and execute all such documents as may be reasonably requested by Wife from time to time to enable Wife to provide her prospective creditors with the full credit history of the parties during their marriage. Nothing herein shall be deemed as creating a liability of Husband for debts created by Wife on the basis of credit information obtained as described above.

PGB        BAB

2020-02-21 12:02
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE          P 23/38

15.  **MUTUAL RELEASES**:

   a.    Except as otherwise expressly provided in this
Agreement, each party releases the other and the other's heirs and
assigns, from any and all liabilities, debts or obligations and
from any and all claims and demands, it being understood that by
this present Agreement, Husband and Wife intend to settle all
aspects of their respective property rights or claims arising out
of their marital relationship.

   b.    Husband warrants to Wife that he has not incurred,
and he covenants that he shall not incur, any liability or
obligation for which Wife is or may be liable, with the exception
of any obligations identified in this Agreement. Husband covenants,
except as may be expressly provided otherwise in this Agreement,
that if any claim, action or proceeding shall hereafter be brought
seeking to hold Wife liable on account of any of his debts,
liabilities, acts or omissions, he shall, at his sole expense,
defend her against any such claim or demand (whether or not well
founded) and that he shall indemnify and hold her free and harmless
from all costs, expenses and liabilities in connection therewith,
including but not limited to, Wife's reasonable attorney fees and
costs incurred by reason of the necessity to defend any such claim
or suit.

   c.    Wife warrants to Husband that she has not incurred,
and she covenants that she shall not incur, any liability or
obligation for which Husband is or may be liable, with the
exception of any obligations identified in this Agreement. Wife
covenants, except as may be expressly provided otherwise in this

PGB    BAB

Agreement, that if any claim, action or proceeding shall hereafter be brought seeking to hold Husband liable on account of any of her debts, liabilities, acts or omissions, she shall, at her sole expense, defend him against any such claim or demand (whether or not well founded) and that she shall indemnify and hold him free and harmless from all costs, expenses and liabilities in connection therewith, including but not limited to, Husband's reasonable attorney fees and costs incurred by reason of the necessity to defend any such claim or suit.

16.   **SOCIAL SECURITY BENEFITS**: The social security benefits of each party which are now or subsequently declared to be community property, if any, shall be declared to be the sole and separate property of the party who paid into the fund giving rise to such benefits. This waiver by each party is not intended to prohibit any rights that may be derivative in nature, such as those that arise by virtue of having been married ten (10) or more years.

17.   **WAIVER OF RIGHTS IN OTHER'S ESTATE**: Each of the parties waives and renounces any and all rights to inherit the estate of the other at the other's death, or to receive any property of the other under a Will executed before the effective date of this Agreement, or to claim any family allowance or probate homestead from the other's estate, or to act as executor or other personal representative under a Will of the other executed before the effective date of this Agreement, or to act as administrator, or as administrator with the Will annexed, of the other's estate.

18.   **ADVISEMENTS**: Each party acknowledges hereby being advised:

PGB       BAB

a.   To consider the immediate drafting and examination of a new Will; and

b.   To review all property rights and employment benefits which have a survivorship or inheritance factor (such as life insurance, pensions, inter vivos trusts, joint tenancy real and personal property, and bank accounts); and

c.   To ensure that said Will and said rights and benefits accurately reflect the current desires of such party to this Agreement.

19.   RESERVATION OF JURISDICTION: In the Judgment anticipated by this Agreement, there shall be reserved to the San Diego County Superior Court, in addition to the jurisdiction specifically mentioned elsewhere in this Agreement, the jurisdiction to:

a.   Supervise the payment of any obligation ordered paid or allocated in this Agreement.

b.   Supervise the division of assets as agreed to herein.

c.   Supervise the execution of any documents required or reasonably necessary to carry out the terms of this Agreement.

d.   Supervise the overall enforcement of this Agreement.

20.   INCORPORATION OF AGREEMENT: This Agreement in its entirety shall be incorporated into, made a part of, and merged into the Judgment entered in the pending dissolution of marriage proceeding. This Agreement is not conditional upon any such incorporation, merger or filing. Husband and Wife shall submit to an order requiring that they carry out and perform each and every provision of this Agreement on their part to be observed or

PGB    EAB

Page 12 of 24

performed. Provided that the Judgment incorporates this Agreement, the parties further agree that this proceeding may be heard on the default calendar without further notice to either party, on any date convenient to the Court and may be heard before a pro-tem Judge.

21. **WAIVERS AND JUDICIAL ACTION:** With regard to the Judgment that incorporates this Agreement, the parties waive statements of decision, the right to a new trial, the right to petition for a rehearing, the right to appeal, and any rights under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

22. **OTHER TERMS AND CONDITIONS:**

a. **Successors:** Except as otherwise expressly provided in this Agreement, each and every covenant and agreement contained herein shall inure to the benefit of, and shall be binding on the heirs, legatees, devisees, assignees, administrators, executors and successors-in-interest to the parties hereto, but no provision of this Agreement shall ever be deemed or construed to be made for the benefit of any person other than the two (2) parties who have executed this Agreement and their respective heirs, legatees, devisees, assignees, administrators, executors and successors-in-interest.

b. **Entire Agreement:** This Agreement and any other instrument(s) executed contemporaneously herewith contain the final, complete and exclusive agreement of the parties concerning the subject matters covered.

c. **Effect of Waiver:** No waiver of the breach of any terms or provisions of this Agreement shall be or shall be

PGB          EAB

Page 13 of 24

02/21/2020 15:07:06

construed to be a waiver of any preceding or succeeding breach of the same or any other provision hereof.

      d.   **Modification or Termination:** This Agreement shall not be altered, amended, modified or terminated except by an instrument in writing executed by both Husband and Wife. Any such agreed alteration, amendment, modification or termination shall be present to the Superior Court for the County of San Diego, California and shall be incorporated into the Judgment of Dissolution of the parties' marriage. The parties agree that the Court shall reserve jurisdiction to incorporate such agreed alterations, amendments, modifications or terminations into the Judgment.

      e.   **No Third Party Beneficiaries:** This Agreement is solely for the respective benefits of Husband and Wife.

      f.   **Unenforceability of Part of the Agreement:** Should any section, provision or portion of this Agreement be held to be invalid, illegal, void or unenforceable, then such section, provision or portion shall be deleted from this Agreement and it shall be read as though such invalid, illegal, void or unenforceable section, provision or portion was never included and the remainder of this Agreement, excluding such invalid, illegal, void or unenforceable section, provision or portion, shall nevertheless subsist and continue in full force and effect.

      g.   **Applicable Law:** This Agreement is entered into in the State of California and shall be construed and interpreted under and in accordance with the laws of the State of California


PGB    EAB

applicable to agreements made and to be wholly performed in the
State of California.

        h.   **Representations:** Neither of the parties hereto, nor
any of his or her representatives, has made any representation or
warranty to the other party upon which the other party is relying
in entering into this Agreement, except as herein expressly
provided.

        i.   **Documents and Cooperation:**

        (1)   Each of the parties agrees on the request of
the other, to execute and deliver any instrument, furnish any
information and to perform any other acts reasonably necessary to
carry out the provisions of this Agreement without undue delay or
expense. A party who fails to comply with this subsection shall
reimburse the other party for all costs and expenses, including
attorney fees and court costs that, as a result of such failure,
become reasonably necessary to carry out this Agreement. Upon a
party's failure to execute a document reasonably required to carry
out the provisions of this Agreement, the parties agree that the
Court may appoint the County Clerk, upon ex parte application with
appropriate notice, as an elisor to sign such documents on behalf
of the party who failed to do so voluntarily. This section shall
not constitute a waiver of any privilege afforded by law.

        (2)   The party to whom a particular asset is
allocated shall pay any recording fee or transfer cost required to
evidence the division of property set forth herein.



PGB     EAB

(3)  For any assets divided in kind, the parties shall share any such fees and costs in the same proportions as the parties hold their interests in such assets under this Agreement.

j.  **Captions and Interpretations:** The captions of this Agreement are employed solely for convenience and are not to be used as an aid in interpretation. No provision of this Agreement is to be interpreted for or against either party because that party or his or her legal representative drafted the provision.

k.  **Enforcement of Terms of Agreement – Fees and Costs:** Should it be necessary for either party to bring an action in this or any other Court for the enforcement of any of the provisions of this Agreement, the prevailing party in any such action shall be entitled to an award from the other party in any such action of their reasonable attorney fees and costs incurred in any such action.

23.  **REPRESENTATION BY COUNSEL AND KNOWLEDGE OF AGREEMENT:**

a.  The parties acknowledge that Wife has retained David M. Huffman of the law firm of Huffman & Kostas to advise Wife in connection with the pending dissolution of marriage proceeding and with the negotiations and preparation of this Agreement. By execution of this Agreement, Husband acknowledges that he been advised by David M. Huffman of his right to seek independent legal counsel and that David M. Huffman cannot and has not sought to represent Husband at the same time that he is representing Wife. Husband acknowledges by executing this Agreement that he has either obtained independent legal counsel or that he specifically has chosen not to seek the advice of independent legal counsel.

PGB        EMB

    b.   Each party acknowledges and declares that he or she respectively:

    (1)  Is fully and completely informed as to the facts relating to the subject matter of this Agreement, and as to the rights and liabilities of both parties;

    (2)  Enters into this Agreement voluntarily, free from fraud, undue influence, coercion or duress of any kind;

    (3)  Has given careful and mature thought to the making of this Agreement; and

    (4)  Fully and completely understands each provision of this Agreement.

    24.  **ATTORNEYS FEES**: Husband shall forthwith pay Wife the sum of $500 as and for reimbursement of Wife's attorney's fees and costs incurred in connection with the preparation of the pleadings associated with the pending dissolution proceeding.  By execution of this Agreement, Husband acknowledges that David M. Huffman does not represent Husband in connection with this matter even though Husband has contributed toward Wife's attorney's fees and costs.

    25.  **REIMBURSEMENT WAIVER**:

    a.   Except as may be specifically provided to the contrary in this Agreement, as part of the division of the community property, each party waives all rights to reimbursement for the following:

    (1)  Epstein credits (In re Marriage of Epstein (1979) 24 Cal. 3d 76) and all rights to reimbursement to which a party may be entitled as a result of the payment of community obligations since the date of separation;

PGB    EAB

2020-02-21 12:04
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE       P 31/38

(2)  Watts credits (In re Marriage of Watts (1985) 171 Cal. App. 3d 366) and all rights to reimbursement to which a party or the community may be entitled as a result of one party's use of community assets since the date of separation;

(3)  Frick credits [In Re Marriage of Frick (1986) 181 Cal.App. 3d 997] and all rights of reimbursement to which a party or the community may be entitled due to one party's use of community assets for the improvement of separate property during marriage.

(4)  All rights to reimbursement pursuant to Family Code §2640, or otherwise, for separate property contributed to the acquisition, maintenance or improvement of community property;

(5)  All rights to reimbursement pursuant to Family Code §2641 or otherwise due the community or a party for contributions made by the community or either of the parties to the education or training of a party; and,

(6)  All rights to reimbursement pursuant to Family Code §915, or otherwise, due the community for payment by the community of a child or spousal support obligation of either party arising from a prior marriage or relationship.

b.  The reimbursement rights and claims of the parties have been taken into consideration in determining any equalizing payment required by this Agreement. Therefore, these waivers constitute a part of the division of the community estate.

26.  TERMINATION OF JOINT TENANCIES: Effective as soon as both parties have signed this Agreement, any and all joint tenancy ownerships (with rights of direct survivorship) between the parties

PGB        EAB

are terminated. The parties shall own those assets as tenants-in-
common. This section applies to all ownerships including, but not
limited to, real property, vehicles or institutional accounts. Upon
execution of this Agreement and without regard to record title
status, each party waives all rights of direct survivorship from
the other party.

27. **REPORTING OF INCOME AND INDEMNITY:** It shall be the
responsibility of each party to report all income, losses or
deductions (or other taxable consequences) to the taxing
authorities in a manner consistent with the terms of this
Agreement. In the event either party reports or fails to report
income, losses or deductions (or treats the division of property)
in a manner inconsistent with the terms of this Agreement, that
party shall indemnify the other party for reasonable attorneys and
accountants fees, and costs of litigation in defending the
reporting required by this Agreement against the other party or
taxing authorities. In addition, each party shall indemnify the
other for taxes, interest, penalties and other assessments arising
as a result of the reporting of income (or the treating of the
division of property) in a manner inconsistent with the terms of
this Agreement. This Section shall apply to all forms of tax
returns required by any governmental agency.

28. **TAX DOCUMENTATION:**

a.    Each party shall forward to the other a copy of any
tax deficiency notice or other correspondence or documentation
received from any federal, state or local taxing authority relating
to any joint returns filed by Husband and Wife. Each party agrees

PGB   EAB

Page 19 of 24

to cooperate fully with the other and to execute any document reasonably requested by the other, and to furnish information and testimony with respect to any tax liability asserted by taxing authorities on any joint return.

b.    A party shall reimburse the other party for all damages and costs incurred as a result of a party's failure to abide by the terms of this Section, including reasonable attorney's fees and costs, and accountant's fees, whether incurred in defending an action by the taxing authorities or in enforcing the provisions of this Section.

29.  **LIABILITY ON PRIOR TAX RETURNS:**

a.    Each party shall pay fifty percent (50%) of all liabilities and expenses, including but not limited to, accounting and legal fees, relating to any tax liabilities asserted by any federal, state or local taxing authorities arising out of any review of the parties' personal income tax returns for any period when they filed joint returns. Each party shall, however, be solely responsible for any liabilities and expenses attributable to a party's intentional misstatement of taxable income or deductions if such intentional misstatement was not known to the other party.

b.    A party shall reimburse the other party for all damages and costs incurred as a result of a party's failure to abide by the terms of this Section, including reasonable attorney fees and costs and accountant fees, whether incurred in defending an action by the taxing authorities or enforcing the provisions of this Section.



PGB            EAB

02/21/2020 15:07:06

30.  **MUTUAL WAIVER OF EXCHANGE OF FINAL DECLARATION OF DISCLOSURE, SCHEDULE OF ASSETS AND DEBTS AND INCOME AND EXPENSE DECLARATION:** Husband and Wife have agreed to waive the preparation and service of final disclosure declarations including Income and Expense Declarations and Schedules of Assets and Debts. This waiver is made in accordance with the provisions of Family Code Section 2105(c). The parties specifically acknowledge as follows:

a.    Both parties have complied with Family Code Section 2104 and the Preliminary Declarations of Disclosure have been completed and exchanged.

b.    Both parties have completed and exchanged current Income and Expense Declarations.

c.    This waiver is knowingly, intelligently and voluntarily entered into by each of the parties.

d.    Each party understands that by signing this waiver, he or she may be affecting his or her ability to have the judgment set aside as provided by California law.

31.  **VEHICLES-HOLD HARMLESS:**

a.    Husband and Wife shall each hold the other free and harmless from the use and operation of any vehicle confirmed or awarded to the respective party.

b.    If any claim, action or proceeding is later brought seeking to hold Wife liable on account of the future use and operation of a vehicle confirmed or awarded to Husband, Husband shall defend, indemnify and hold Wife harmless from all liabilities, costs and expenses relative to that claim, including attorneys fees and costs incurred by Wife in defending or

PGB       EAB

Page 21 of 24

responding to any collection claim, action or proceeding and any amounts paid by Wife in satisfaction of any judgment or other award.

     c.   If any claim, action or proceeding is later brought seeking to hold Husband liable on account of the future use and operation of a vehicle confirmed or awarded to Wife, Wife shall defend, indemnify and hold Husband harmless from all liabilities, costs and expenses relative to that claim, including attorneys fees and costs incurred by Husband in defending or responding to any collection claim, action or proceeding and any amounts paid by Husband in satisfaction of any judgment to other award.

    Each of us has read this Agreement and is fully aware of its content and its legal effect.

    THE FOREGOING IS HEREBY AGREED TO BY:

DATED:   6-23-98

                       Husband, PHILIP G. BOND

DATED:   7-13-98

                       Wife, ELLEN A. BOND

PGB    EAB

2020-02-21 12:06          Costco W 130 sign 3236611475 >> FAXCORE          P 36/38
02/21/2020 15:07:06

STATE OF CALIFORNIA    )
                       )  ss
COUNTY OF SAN DIEGO    )

On ___June 23 1998___, before ___Karen Haywood___, notary public,
personally appeared PHILIP G. BOND, personally known to be (or proved to me on
the basis of satisfactory evidence) to be the person whose name is subscribed to
the within instrument and acknowledge to me that he executed the same in his
authorized capacity, and that by his signature on the instrument the person or
the entity upon behalf of which the person acted, executed the instrument.

WITNESS MY HAND AND OFFICIAL SEAL..

_____
        (signature)

                    KAREN HAYWOOD
                    Commission # 1040589
                    Notary Public — California      (seal)
                    San Diego County
                    My Comm. Expires Oct 2, 1998

STATE OF CALIFORNIA    )
                       )  ss
COUNTY OF SAN DIEGO    )

On ___4/13/98___ before ___MUMINDERS GULATI___, notary public,
personally appeared ELLEN A. BOND, personally known to be (or proved to me on the
basis of satisfactory evidence) to be the person whose name is subscribed to the
within instrument and acknowledge to me that she executed the same in her
authorized capacity, and that by her signature on the instrument the person or
the entity upon behalf of which the person acted, executed the instrument.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
        (signature)

                                                        (seal)

STATE OF NEW YORK
COUNTY OF NEW YORK
SWORN BEFORE ME

                    MOMINDER S. GULATI
                    Notary Public, State of New York
                    No. 31-4659357
                    Qualified in New York County
                    Commission Expires Nov. 30, 199

                                                    PGB      EAB

Page 23 of 24

## WIFE'S ATTORNEY'S CERTIFICATION

The undersigned hereby certifies that he is an attorney at law, duly licensed to practice in the State of California, and he has been engaged by ELLEN A. BOND (hereinafter referred to as "Wife"), one of the parties to the foregoing Marital Settlement Agreement; that he has advised and consulted with Wife with respect to her rights and those of Husband and has fully explained to her the legal significance of the Marital Settlement Agreement and the effect which it has upon her rights. Wife, after being fully advised by the undersigned, acknowledged to the undersigned that she fully understood the terms of the Marital Settlement Agreement and its legal effect, and she executed the Marital Settlement Agreement freely and voluntarily. The undersigned has no reason to believe that Wife did not understand the terms and effects of the Marital Settlement Agreement or that she did not freely and voluntarily execute the Agreement. No waiver of the attorney-client privilege of confidentiality is intended by this certification.

DATED: 7-1-98                    HUFFMAN & KOSTAS

By: _____
    DAVID M. HUFFMAN
    Attorneys for Wife

Page 24 of 24



CLERK'S CERTIFICATE

The foregoing document, consisting of _____ page(s), is a full, true, and correct copy of the ☒ original ☐ copy on file in this office.

Clerk of the Superior Court

2 0 FEB 2020   By _____
Date            Deputy

Pam Stidham

## Annuity Death Benefit Claim Form



**JACKSON®**
NATIONAL LIFE INSURANCE COMPANY
Home Office: Lansing, Michigan
www.jackson.com

### Important Instructions for Prompt Settlement

- Use dark ink only to complete this claim form. Print or type.
- Claimant must sign, print name and date the claim form on page 7.
- Include a certified copy of the finalized death certificate for the deceased with manner of passing.
- If the claimant is a Trustee, please provide a complete copy of the trust agreement, including all amendments and the Trust Tax Identification Number.
- If the claimant is an Executor, Administrator, Guardian or other legal representative, please provide a certified copy of the court appointment.
- If the claimant is an Attorney-in-Fact on behalf of the beneficiary, include the Power of Attorney instrument.
- If any of the beneficiaries named in the Contract are deceased, please provide a copy of their death certificate.
- If the claimant is an ex-spouse, please provide a copy of the divorce decree and property settlement agreement.
- If the claimant is a non-resident alien, please provide the W-8BEN form and Individual Taxpayer Identification Number.

### DECEASED INFORMATION (please print)

Deceased's Name (First) (Middle) (Last) — Other Name(s) by which Deceased was known

PHILIP GREGORY BOND

Date of Birth (mm/dd/yyyy): 02/15/1938   Date of Death (mm/dd/yyyy): 07/01/2016

Marital Status of the Deceased: ☒ Married ☐ Divorced ☐ Widowed ☐ Single

Social Security Number of Deceased (IMPORTANT): ____-__-2108

Contract Number(s) for which you are claiming benefits
1. 0004865310   2. _____

### CLAIMANT INFORMATION (please print)

Claimant's Name (First) (Middle) (Last)

GREGORY   T.   BOND

Claimant's Social Security Number: ____-__-2725

Name of Non-natural Entity Claimant (if applicable): _____

Tax Identification Number: _____

Claimant's Physical Address (No P.O. Boxes): 29506 MAMMOTH LANE   City: CANYON COUNTRY   State: CA   ZIP Code: 91387

Claimant's Mailing Address: 29506 MAMMOTH LANE   City: CANYON COUNTRY   State: CA   ZIP Code: 91387

Date of Birth (mm/dd/yyyy): 09/14/1964   Relationship to the Deceased: SON   Daytime Phone Number (including area code): _____

Claimant's E-Mail Address: _____

US Citizen? ☒ Yes ☐ No
Currently Residing in US? ☒ Yes ☐ No

**Do you wish to take the deceased's Required Minimum Distribution (RMD)?** ☐ Yes ☐ No

- If no dollar amount is indicated, the RMD will be calculated for you. $ _____
- Note: Please complete Notice of Withholding on page 3.
- This option may only be elected in conjunction with Options A, B, C, D or E.

Page 1 of 8

Z1142A 03/18

02/21/2020 15:07:06
**Please Select** One of the Following Options (A, B, C, D or E), Then Sign and Date the Form.

---

**A. Lump-Sum Distribution and 5 Year Deferral Options** — *If you select this option, you must also complete the "Notice of Withholding" section on page 3.*

---

#### Choose one of the Payment Options below:

Jackson National Life Insurance Company\* (Jackson\*) will make payment of annuity contract proceeds due you in a lump-sum, or in increments determined by you within 5 years.

#### 1. Lump-Sum

[X] Please send me a check for my proceeds.

[ ] Please wire my proceeds. I acknowledge there will be a $20.00 wire fee and have attached a copy of a voided check.

#### 2. 5-Year Deferral Option

[ ] I elect to withdraw the Death Benefit within five years. I would like to withdraw $[          ] immediately and understand that I must submit the Annuity Partial or Full Liquidation Request, form X3101, to withdraw the remainder of the benefit. **Please Note:** this option is not available for IRAs and other qualified plans if the deceased died after the RMD beginning date (generally April 1 after age 70½).

**Note:** In order for any withdrawal to be treated as a direct exchange, transfer or rollover, you must submit the transferring company's Letter of Acceptance and required paperwork. Do you wish to advise us that this withdrawal will be treated as a direct exchange, transfer or rollover? [ ] Yes

---

**B. Spousal Continuation Option** — *If you select this option, you must also complete Section F, "Beneficiary Designation."*

---

[ ] As the spouse of the deceased, I elect to continue the Contract in my name. **Note:** If you choose this option you do not need to return the Contract to Jackson.

If the contract has the IncomeAccelerator **Lifetime Income Benefit (LIB)**, it will terminate automatically upon election of the Spousal Continuation Option unless you are a covered life under the LIB with joint option. If you are a covered life under the LIB with joint option, the LIB with joint option will remain in effect upon continuation of the Contract and may be terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIB provision. If you are covered under the LIB with joint option, you may set or change the activation date by submitting a completed Activation Form (X4391). **Please see Important Information on page 8 for more information regarding the ability to set, change or cancel the Activation Date.**

If the contract has the LifePay **Lifetime Income Rider (LIR)**, you may elect to terminate the LIR benefit upon election of the Spousal Continuation Option. If you elect to terminate the LIR, a pro rata LIR Charge will be assessed for the period since the previous Indexed Option Anniversary, applicable charges will be stopped thereafter and no benefit will be available. If no election is made on the continuation date, the LIR will remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision. If you are a covered life under the joint benefit, the joint LIR remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision.

[ ] I elect to continue the LIR.

[ ] I elect to terminate LIR.

**Z1142A 03/18**

**C. Systematic Withdrawal Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 3 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5. If you select an Irrevocable Systematic Withdrawal (ISW) or Stretch IRA option, no indexed options will be available to you (if currently applicable), and interest will be credited at a rate based on the current and guaranteed interest rates Jackson credits on fixed annuity contracts it currently offers; that interest rate may be less than the rates Jackson credits to the Fixed or Fixed Indexed Annuity.*

I choose to take distributions over my life expectancy using the following option:

- [ ] **IRA:** I choose to take distributions over my life expectancy **(STRETCH IRA)**. While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you were to die prior to receiving all payments, your beneficiary(ies) may continue any such distributions or take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

- [ ] **Non-Qualified Annuity:** I choose to take distributions over my life expectancy (ISW). While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you die prior to receiving all payments, your beneficiary must take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

- [ ] **IRA Spousal Stretch Deferral:** I elect to defer stretch payments at this time. I understand in the future I must contact the Service Center for future distributions.

**Please select a Mode:** [ ] Monthly [ ] Quarterly [ ] Semi-Annually [ ] Annually

Process the first payment as of (mm/dd/yyyy) [＿＿＿＿]. (Calendar days 29, 30, and 31 are not allowed.) If an initial payment date is not indicated, the first payment will begin 30 days after this form is received by the Claims Service Center.

---

**Notice of Withholding** — *If you have selected option A or C, or if you have requested to take the deceased's RMD, you must complete this section.*

**Note:** Taxes will be withheld if no election is made.

**Federal Tax Withholding** The taxable portion of the distribution made to you will be subject to 10% (20% for eligible rollover distributions*) federal income tax withholding unless you elect not to have withholding apply.

1. [X] **Do not withhold federal income tax from my distribution.** (If this box is checked, do not check box 2 or 3 below.) This option is not available for an eligible rollover distribution from 403(b) contracts. If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.

2. [ ] **Withhold 10% (20% for eligible rollover distributions*) federal income tax from my distribution.**

3. [ ] In addition to the instructions in No. 2 above, please withhold the following additional percentage: [＿＿] %.

**State Tax Withholding** (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

4. [ ] "Yes," please withhold the following percentage for state income taxes: [＿＿] %.

5. [X] "No," do not withhold state income tax.

*An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the Owner. However, such eligible rollover distribution does not include: (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Owner or the joint lives (or joint life expectancies) of the Owner and the Owner's beneficiary, or for a specified period of ten (10) years or more; (2) any distribution required under Code Section 401(a)(9); (3) any hardship distribution; and (4) the portion of any distribution that is not included in gross income.



Z1142A 03/18

**D. Benefit Continuation Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

☐ I elect to continue the periodic benefit checks the Annuitant was receiving.

**E. Income Option Election** (Monthly Benefit Must Be $50 or More.) — *If you select one of these options, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

If an illustration is desired, please contact our office.

** ☐ **Income Option A – (Life Only)**
Equal payment will be made to the annuitant as long as he or she is living. Benefits cease at the death of the annuitant. There is no right to select lump-sum payments for the annuitant and/or owner.

** ☐ **Income Option B – (Life, ☐ - Year Certain)**
A term of ten (10) or 20 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant as long as he or she is living.

DEATH BENEFIT: If the annuitant were to die prior to receiving the period-certain payments, any such unpaid payments shall be continued to the designated beneficiary. There is no right to select lump-sum payments for the annuitant and/or owner.

☐ **Income Option C – ( ☐ - Year Term Certain)**
A period of five through 60 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant for the specified period of years.

DEATH BENEFIT: If the annuitant were to die prior to having received all payments due under this Contract, payments shall be continued for the balance of the period to the beneficiary designated. There is no right to select lump-sum payments for the annuitant and/or owner.

**Please send proof of age: either a copy of your birth certificate or a copy of your driver's license (or other identification provided by the state). Benefits will commence upon receipt of this paperwork in good order.

**Frequency of benefit payments:** ☐ Monthly ☐ Quarterly ☐ Semi-Annually ☐ Annually

**Z1142A 03/18**

**Direct Deposit** - *If you selected option C, D, or E, you may authorize direct deposit by completing this section.*

I hereby authorize Jackson to direct deposit into the checking or savings account identified below, until further notice, all contract payments due to the owner of the contract. If the contract is owned by a trust, I affirm that I am the current trustee of the trust and am authorized to make this request on behalf of the trust. This authorization will remain in effect until it is revoked in writing. I and/or the trust hereby release and agree to indemnify and hold Jackson harmless from any and all claims arising out of or in any way related to Jackson's actions in compliance with this authorization. I agree that Jackson will have no further liability with respect to any payments made in accordance with this authorization and may, at any time, discontinue my direct deposit and issue checks to me requiring my personal endorsement. I, for myself, my heirs, executors, administrators, and assigns, do hereby consent and agree that any sums of money deposited to my account after my death shall be refunded to Jackson for distribution to the person or persons, if any, entitled to those sums under the terms of the contract.

☐ Checking Account (tape pre-printed voided check below) *

☐ Savings Account (provide letter from bank on institution's letterhead; letter must be signed and dated by a bank representative) *

**\* Direct Deposit will not be established without receipt of a pre-printed voided check or letter from your bank.**
**Please note:** Contract payments will generate on the day they are due or the next business day and will be deposited into your account within 2-3 business days (receipt of funds may be delayed by a weekend or holiday). All payments from custodian owned contracts will be made payable to the Custodian for both direct deposits and checks.

**Do not staple. Do not attach a deposit slip or a starter check.**

| Account Holder's Name(s)<br>245 Main St.<br>Anywhere, USA 00000 | | |
|---|---|---|
| Pay To The Order Of | | $ |
| | | Dollars |
| **Your Financial Institution** | **-- VOID --** | |
| Name<br>**Street Address**<br>City, State, ZIP | | 1234 |
| **Your Transit Routing Number** | **Your Account Number** | **Your check number** |



     **Z1142A 03/18**

### Notice of Withholding — If you have selected option D or E, then you must complete this section.

Annuity payments from income options are treated as wages for the purpose of income tax withholding. An annuity payment is one that is included in your income for tax purposes and that you receive in installments at regular intervals over a period of more than one full year from the starting date of the particular investment. The intervals can be annually, semi-annually, quarterly, or monthly.

Unless you tell Jackson otherwise, tax must be withheld on annuity payments as if you are married and claiming three withholding allowances.

For annuity payments, your withholding certificate stays in effect until you change or revoke it. Jackson must notify you each year of your right to elect to have no tax withheld or to revoke your election.

*If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.*

#### Complete the following applicable lines:

*You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.*

☐ I elect **not** to have state and federal income tax withheld from my pension or annuity.

☐ I elect withholding from each periodic pension or annuity payment to be figured using the number of allowances and

marital status shown (you may also designate an amount in the box at the right). **Number of allowances:** [    ]

**Marital Status:** ☐ Single ☐ Married ☐ Married, but withholding at higher single rate,

☐ I elect the following additional amount withheld from each pension or annuity payment. *Note: For annuity payments,*

*you cannot enter an amount here without entering the number (including zero) of allowances above.* $ [    ]

If your state of residence has state income tax, you may elect to have taxes withheld using the same allowances and marital status as used for federal withholding.

☐ I elect to have state tax withheld. (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

### F. Beneficiary Designation — If you have selected option A, B, C, D or E, then you must complete this section.

*Please name your beneficiary(ies). For additional beneficiaries, please attach additional name(s) and requested information on a separate sheet, signed and dated.*

1. ☒ Primary                                                          /00 Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|
| MARY | C. | BOND | 01/16/1955 | 0546 |

| Non-Natural Entity Name | | | Tax Identification Number | Relationship to You |
|---|---|---|---|---|
| | | | | |

| Address (number, street) | City | State | ZIP Code | Phone Number (include area code) |
|---|---|---|---|---|
| 29506 MAMMOTH LANE | CANYON COUNTRY | CA | 91387 | ( |

**Z1142A 03/18**

2. ☐ Primary          ☐ Contingent          Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| | | | | | |

| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
|---|---|---|---|---|---|
| | | | | | |

| Address (number, street) | City | State | ZIP Code | Phone Number (include area code) |
|---|---|---|---|---|
| | | | | |

3. ☐ Primary          ☐ Contingent          Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| | | | | | |

| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
|---|---|---|---|---|---|
| | | | | | |

| Address (number, street) | City | State | ZIP Code | Phone Number (include area code) |
|---|---|---|---|---|
| | | | | |

**Note:** All Primary Beneficiary percentages must be in whole percentage numbers that total 100%. All Contingent Beneficiary percentages must also be in whole percentage numbers that total 100%. If no beneficiary is elected, your Estate will be recorded.

## Signature(s)

The undersigned hereby makes claim to the undersigned's share of the death benefit proceeds of the above annuity Contract as beneficiary and agrees that the furnishing of this form or any of the forms supplemental thereto by the Company shall not constitute or be considered an admission by the Company that there was an annuity in force, nor shall it constitute or be considered a waiver of any of the Company's rights or defenses.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING.

**Under penalties of perjury, I certify that:**
1. The number shown on this form is my correct Taxpayer Identification Number.
2. I am not subject to backup withholding.
3. I am a U.S. citizen or other U.S. person (including a U.S. resident alien).
4. I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.

By signing below I acknowledge I have read all options available to me. **Please note: ALL ELECTIONS ARE IRREVOCABLE, YOU MAY WISH TO CONTACT A TAX ADVISOR.**

New Jersey residents, please note: Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

| Claimant's Signature | Date Signed (mm/dd/yyyy) | Claimant's Name (First) | (Middle) | (Last) |
|---|---|---|---|---|
| | 02/18/2020 | GREGORY | T. | BOND |

| Signature of Witness | Date Signed (mm/dd/yyyy) | Witness's Name (First) | (Middle) | (Last) |
|---|---|---|---|---|
| | 02/18/2020 | MARY | C. | BOND |



Z1142A 03/18

## Important Information – Please Read Carefully

- The entire death benefit must be paid within five (5) years of the date of death unless you elect to have the death benefit payable under an Income Option or the Systematic Withdrawal Option. The death benefit payable under an Income Option or the Systematic Withdrawal Option must be paid over your lifetime or for a period not extending beyond your life expectancy.

- For non-qualified funds, the first IRS-required withdrawal under the ISW and Income Option must occur within twelve months of the owner's death. For Lump-Sum Distributions, non-qualified funds must be completely withdrawn by the fifth anniversary of the date of death.

- For qualified funds, the first IRS-required withdrawal for the Stretch IRA and Income Option must occur by December 31st of the year following the owner's death. For lump-sum distributions qualified funds must be completely withdrawn by December 31 following the fifth anniversary of the date of death.

- If you wish to elect an Income Option or the Systematic Withdrawal Option you must do so within the 60-day period beginning with the date Jackson receives proof of death. **Please note:** with these options your beneficiary will not receive any enhanced death benefit protections.

- If a Continuation Option is selected for a JNL Target Select ® contract, the original allocation period will remain in effect. The Beneficiary will have the option to select a new allocation period upon renewal.

- **Please note:** the following states do not have state income tax. We are not allowed to withhold state tax for these states: Alaska, Florida, Nevada, New Hampshire, South Dakota, Tennessee, Texas, Washington and Wyoming. The following states allow you to elect out of state withholding: California, Delaware, Oregon and Vermont. The state of Georgia allows you to elect out of state withholding on benefit payments only.

- **Please note:** if you are a Michigan resident, we may be required to withhold state tax at the prevailing fixed percentage.

- If you elect to have federal withholding, we are required to withhold for state purposes at the prevailing fixed percentage of the federal rate for the following states: Arkansas, California, Delaware, Georgia, Iowa, Maine, Massachusetts, Mississippi, Nebraska, North Carolina, Oklahoma, Oregon, Vermont and Virginia.

- The 10% premature distribution penalty does not apply to distributions made to the beneficiary on or after the death of the original holder of the Contract.

- Remember that there are penalties for not paying enough tax during the year, either through withholding or estimated tax payments. New retirees, especially, should see IRS Publication 505, Tax Withholding and Estimated Tax, which can be obtained by contacting the IRS. Publication 505 explains the estimated tax requirements and penalties in detail. You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.

- **Please note:** if you continue a Contract with a LIB, you may set or change the Activation Date by completing the Activation Request Form (X4391). If an Activation Date has been set, you may change or cancel that date by notifying the Company at least 30 days prior to the selected Activation Date. If you do not notify the Company at least 30 days prior to the Activation Date, it cannot be changed or canceled.

| Mailing Address and Contact Information | |
|---|---|
| Jackson Claims Administration | |
| **Regular Mail** | P.O. Box 30503, Lansing, MI 48909-8003 |
| **Overnight Mail** | 1 Corporate Way, Lansing, MI 48951 |
| **Customer Care** | 888-585-4995 (M-Th: 8:00 a.m. to 7:00 p.m. ET and Fri: 8:00 a.m. to 6:00 p.m. ET) |
| **Fax\*** | 517-706-5513 |
| **Email** | customercare@jackson.com |

\* A fax cover page is not needed. If you have additional instructions to submit please complete Letter of Instruction (form X4250) including owner and/or annuitant signature(s) as applicable.

**Z1142A 03/18**



Claims Administration

March 14, 2020

Gregory Bond
29506 N Mammoth Lane
Canyon Country, CA 91387

Deceased: Philip G Bond
Policy No.: 0004865310

Dear Gregory Bond:

We are sorry to hear about the death of Philip G Bond and wish to extend our condolences. Based on the information provided, we have established a claim for the following:

| Policy Number | Named Beneficiary | Preselected Benefit Option |
|---|---|---|
| 0004865310 | Ellen A Bond | |

Please be aware that it is very important that you provide us with the contact information for the beneficiary(ies) listed above. If this information is not received, it may delay our processing of the claim. In addition, unclaimed funds will be reported to the state as required by law.

Please be advised that any scheduled distributions will cease and any un-cashed payments, issued in the deceased's name, have been stopped.

In order to process the claim promptly, please return to us the following:

- Claim Form
- Final Certified Death Certificate

Once we receive this information, we will process the claim as quickly as possible. Please be advised, any documentation submitted to our office will not be returned.

The State of California Department of Insurance requires that our Company advise you that if you wish to take this matter up with the California Department of Insurance, the telephone numbers for the consumers hotline are 1/800-927-HELP or 213/897-8921. You may write to the California Department of Insurance, Claims Service Bureau at 300 South Spring Street, 11th Floor, Los Angeles, CA, 90013.

Jackson National Life Insurance Company
1 Corporate Way, Lansing, MI 48951
800/644-4565

OC7D88PH          AA          01          OC          CLM          010232126J                          03/14/2020          CP0CORR          INPU

**Policy Number:**     0004865310

**March 14, 2020**



If you have any questions or need additional information, please contact our Service Center toll free at 888/565-4995.

Sincerely,

*Laura Hanson*

Laura Hanson
VP, Policy Owner Services

Enclosure:        Claim Form



**JACKSON**
NATIONAL LIFE INSURANCE COMPANY

1 Corporate Way
Lansing, MI 48951

May 4, 2020

Ellen A. Ifshin
25 Parkview Ave Apt 3K
Bronxville NY 10708-2917

**Sent via Certified and First-Class Mail**

RE: Contract Number: 0004865310
Annuitant: Philip G. Bond (deceased)
Owner: Focus 2000

Dear Ellen A. Ifshin:

Please accept our sincerest condolences on the death of Philip Bond. We would like you to know that we are available for any questions you may have.

At his death, Philip Bond was the annuitant of an annuity issued by Jackson National Life Insurance Company ("Jackson"). A review of our records shows that you remain the recorded beneficiary of the annuity. As of May 4, 2020, the value of the annuity's death benefit proceeds is $15,174.16.

Jackson has received a claim from the annuity's contingent beneficiary. To proceed with our claim handling, we must know your intentions regarding the annuity.

Please tell us **by June 1, 2020**, whether you intend to claim the annuity's death benefit proceeds or whether you waive your claim to the annuity's death benefit proceeds. If you waive your claim to the annuity's death benefit proceeds, Jackson will pay the proceeds to the contingent beneficiary.

You may notify us of your intentions by either (1) calling our Service Center at 888/565-4995, or (2) responding to this letter by completing the below "ELECTION REGARDING CLAIM FOR PROCEEDS" and returning this letter to Jackson in the enclosed pre-addressed, postage-paid envelope **by May 29, 2020**. Please keep a copy of the letter with your election marked.

Note: if you do not respond to this letter or Jackson receives competing claims to the annuity's death benefit proceeds, Jackson may be unable to distribute the death benefit proceeds until that dispute is resolved. If you need extra time to make your election, promptly let us know by calling us at 888/565-4995.

If you have questions about your legal rights, or need legal advice, we recommend you immediately consult a licensed attorney.

Your service needs are very important to us. If you have additional questions or concerns, please contact our Service Center at 888/565-4995, Monday through Thursday, 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 6:00 p.m. (ET). You may also contact Jackson via email through "Contact Us" on our website at www.jackson.com.

Sincerely,

*Laura Hanson*

Laura Hanson, VP
Policy Owner Services

## ELECTION REGARDING CLAIM FOR PROCEEDS

Please mark the appropriate box, sign and date, and return this letter to Jackson in the enclosed pre-addressed, postage-paid envelope by June 1, 2020.

I, Ellen A. Ifshin:

☐ **CLAIM** that I am the proper beneficiary of Philip Bond's Jackson annuity and I intend to file a claim for the annuity's death benefit proceeds.

☐ **WAIVE** all claim to Philip Bond's Jackson annuity and consent to Jackson's payment of the annuity's death benefit proceeds to the annuity's contingent beneficiary.

_____
Signature

_____
Printed Name

_____
Date



May 4, 2020

ı|ıı||ı|ı••••|ı||ı|ı|ı|ıı|ıı|ı|ı•|ıı|ı||ı|||

GREGORY T. BOND
29506 MAMMOTH LANE
CANYON COUNTRY CA 91387

**RE:  Contract Number 0004865310**

    **Annuitant: Philip G. Bond, Deceased**

To Whom It May Concern:

Thank you for submitting Philip Bond's divorce documents for our review.

As you know, Ellen Bond was the annuity's primary beneficiary at the time of Philip Bond's passing.  Our Legal Department has reviewed the divorce documents you submitted, and it is our opinion that Philip Bond's divorce from the primary beneficiary did not automatically revoke her designation as beneficiary of the annuity.  We ask that you notify us if you disagree with our opinion.

We believe that we have located the primary beneficiary using her name supplied in the divorce documents and we are reaching out to her to determine whether she intends to make claim to the annuity's  death benefit proceeds.  As of May 4, 2020, the value of the annuity's death benefit proceeds is $15,174.16. We have asked her to provide us with confirmation of her intent by June 1, 2020, and we will notify you after we receive that confirmation.

If Jackson receives competing claims, we may not be able to distribute the death benefit until that dispute is resolved.

If you have any additional questions or concerns, visit our website at www.jackson.com to contact Jackson via email or for additional resources. You may also contact our Service Center at 888/565-4995.

Sincerely,

*Laura Hanson*

Laura Hanson, VP
Policy Owner Services

*Contact us:*

  Visit www.jackson.com

  1-800/644-4565 • 24-hour automated service; Service Associates available Monday thru Friday

   Jackson Service Center, 1 Corporate Way, Lansing, MI 48951

Thomptv/CG01

05/16/2020 09:05:23

Received 05/16/2020 09:05:23 Box DCC14044 057980 36

Your service needs are very important to us. If you have additional questions or concerns, please contact our Service Center at 888/565-4995, Monday through Thursday, 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 6:00 p.m. (ET). You may also contact Jackson via email through "Contact Us" on our website at www.jackson.com.

Sincerely,

*Laura Hanson*

Laura Hanson, VP
Policy Owner Services

## ELECTION REGARDING CLAIM FOR PROCEEDS

Please mark the appropriate box, sign and date, and return this letter to Jackson in the enclosed pre-addressed, postage-paid envelope by June 1, 2020.

I, Ellen A. Ifshin:

☒ **CLAIM** that I am the proper beneficiary of Philip Bond's Jackson annuity and I intend to file a claim for the annuity's death benefit proceeds.

☐ **WAIVE** all claim to Philip Bond's Jackson annuity and consent to Jackson's payment of the annuity's death benefit proceeds to the annuity's contingent beneficiary.

*Ellen A. Ifshin*
Signature

ELLEN A. IFSHIN
Printed Name

MAY 11, 2020
Date

Costco W 130 sign 3236611475 >> FAXCORE          P 1/2

To:     Jackson National Life Insurance (Via Fax and Return Mail)

Date:   May 12, 2020

Re:     Policy #0004865310, Philip G. Bond (Annuitant)

From: Gregory T. Bond
        29506 Mammoth Lane
        Canyon Country, CA 91387

My name is Gregory T Bond and I am writing to notify you that I disagree
with your letter of May 4, 2020 wherein you state that the divorce
documents do not automatically revoke Ellen Bond as the primary
beneficiary of the above listed annuity.

In the event Ellen Bond chooses to attempt to claim this annuity I am
specifically contesting that claim. Your letter states that you have given
Ellen Bond until June 1, 2020 to stipulate whether she is going to/not going
to make an effort to claim this annuity. I would appreciate being notified
if/when that happens and/or if/when that does not happen.

Thank you,

Gregory T. Bond

Attachment: Jackson National Letter of May 4, 2020

06/01/2020 07:55:19
Received 06/01/2020 07:55:19 Box DCC14062 058168 2

## Annuity Death Benefit Claim Form



JACKSON®

NATIONAL LIFE INSURANCE COMPANY
Home Office: Lansing, Michigan
www.jackson.com

## Important Instructions for Prompt Settlement

• Use dark ink only to complete this claim form. Print or type.

• Claimant must sign, print name and date the claim form on page 7.

• Include a certified copy of the finalized death certificate for the deceased with manner of passing.

• If the claimant is a Trustee, please provide a complete copy of the trust agreement, including all amendments and the Trust Tax Identification Number.

• If the claimant is an Executor, Administrator, Guardian or other legal representative, please provide a certified copy of the court appointment.

• If the claimant is an Attorney-in-Fact on behalf of the beneficiary, include the Power of Attorney instrument.

• If any of the beneficiaries named in the Contract are deceased, please provide a copy of their death certificate.

• If the claimant is an ex-spouse, please provide a copy of the divorce decree and property settlement agreement.

• If the claimant is a non-resident alien, please provide the W-8BEN form and Individual Taxpayer Identification Number.

## DECEASED INFORMATION (please print)

| Deceased's Name (First) | (Middle) | (Last) | Other Name(s) by which Deceased was known |
|---|---|---|---|
| PHILIP | GREGORY | BOND | |

| Date of Birth (mm/dd/yyyy) | Date of Death (mm/dd/yyyy) | Marital Status of the Deceased |
|---|---|---|
| 02/15/1938 | 07/01/2016 | ☒ Married ☐ Divorced ☐ Widowed ☐ Single |

Social Security Number of Deceased (IMPORTANT)

Contract Number(s) for which you are claiming benefits

1. 0004865310    2. 

## CLAIMANT INFORMATION (please print)

| Claimant's Name (First) | (Middle) | (Last) | Claimant's Social Security Number |
|---|---|---|---|
| ELLEN | ANN | LFSHIN | 5078 |

| Name of Non-natural Entity Claimant (if applicable) | Tax Identification Number |
|---|---|
| | |

| Claimant's Physical Address (No P.O. Boxes) | City | State | ZIP Code |
|---|---|---|---|
| 25 PARKVIEW AVE | BRONXVILLE | NY | 10708 |

| Claimant's Mailing Address | City | State | ZIP Code |
|---|---|---|---|
| APT 3K | | | |

| Date of Birth (mm/dd/yyyy) | Relationship to the Deceased | Daytime Phone Number (including area code) |
|---|---|---|
| 06/03/1942 | EX-WIFE | |

| Claimant's E-Mail Address | | |
|---|---|---|
| | US Citizen? ☒ Yes ☐ No | Currently Residing in US? ☒ Yes ☐ No |

**Do you wish to take the deceased's Required Minimum Distribution (RMD)?** ☒ Yes ☐ No

• If no dollar amount is indicated, the RMD will be calculated for you. $ 

• Note: Please complete Notice of Withholding on page 3.

• This option may only be elected in conjunction with Options A, B, C, D or E.

Z1142 03/18

06/01/2020 07:55:19

## Please Select One of the Following Options (A, B, C, D or E), Then Sign and Date the Form.

**A. Lump-Sum Distribution, Beneficiary Access Account and 5-Year Deferral Options** — *If you select this option, you must also complete the "Notice of Withholding" section on page 3.*

Choose one of the Payment Options Below: (If no settlement option is selected, Jackson National Life Insurance Company ® (Jackson®) will contact the beneficiary to seek an affirmative selection from the beneficiary.)

### 1. Lump-Sum

☒ Please send me a check for my proceeds.

☐ Please wire my proceeds. I acknowledge there will be a $20.00 wire fee and have attached a copy of a voided check.

### 2. Beneficiary Access Account (BAA)

☐ Please establish an interest bearing BAA in my name for my proceeds and send me a book of checks for access to my money.

### 3. 5-Year Deferral Option

☐ I elect to withdraw the Death Benefit within five years. I would like to withdraw $ [          ] immediately and understand that I must submit the Annuity Partial or Full Liquidation Request, form X3101, to withdraw the remainder of the benefit. **Please Note:** this option is not available for IRAs and other qualified plans if the deceased died after the RMD beginning date (generally April 1 after age 70½.)

Jackson will make payment of annuity contract proceeds due you in a lump-sum. Except when contract proceeds are due corporations, partnerships, trusts, estates, minors, and beneficiaries resident in the state of New York, if the proceeds due you are $5,000 or greater, you may request (above) that Jackson establish a BAA in your name that permits you to write checks to withdraw your money from the BAA. Money in a BAA remains in a Jackson general account until withdrawal. Jackson will pay you interest on money in your BAA. Your BAA will not be FDIC-insured.

**Note:** In order for any withdrawal to be treated as a direct exchange, transfer or rollover, you must submit the transferring company's Letter of Acceptance and required paperwork. Do you wish to advise us that this withdrawal will be treated as a direct exchange, transfer or rollover?   ☐ Yes

---

**B. Spousal Continuation Option** — *If you select this option, you must also complete Section F, "Beneficiary Designation.*

☐ As the spouse of the deceased, I elect to continue the Contract in my name. **Note:** If you choose this option you do not need to return the Contract to Jackson.

If the contract has the IncomeAccelerator **Lifetime Income Benefit (LIB)**, it will terminate automatically upon election of the Spousal Continuation Option unless you are a covered life under the LIB with joint option. If you are a covered life under the LIB with joint option, the LIB with joint option will remain in effect upon continuation of the Contract and may be terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIB provision. If you are a covered life under the LIB with joint option, you may set or change the activation date by submitting a completed Activation Form (X4391). **Please see Important Information on page 8 for more information regarding the ability to set, change or cancel the Activation Date.**

If the contract has the LifePay **Lifetime Income Rider (LIR)**, you may elect to terminate the LIR benefit upon election of the Spousal Continuation Option. If you elect to terminate the LIR, a pro rata LIR Charge will be assessed for the period since the previous Indexed Option Anniversary, applicable charges will be stopped thereafter and no benefit will be available. If no election is made on the continuation date, the LIR will remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision. If you are a covered life under the joint benefit, the joint LIR remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision.

☐ I elect to continue the LIR.

☐ I elect to terminate LIR.

**Z1142 03/18**

06/01/2020 07:55:19

Received 06/01/2020 07:55:19 for DCC14963-055168-3

**C. Systematic Withdrawal Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 3 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5. If you select an Irrevocable Systematic Withdrawal (ISW) or Stretch IRA option, no indexed options will be available to you (if currently applicable), and interest will be credited at a rate based on the current and guaranteed interest rates Jackson credits on fixed annuity contracts it currently offers; that interest rate may be less than the rates Jackson credits to the Fixed or Fixed Indexed Annuity.*

I choose to take distributions over my life expectancy using the following option:

☐ **IRA:** I choose to take distributions over my life expectancy using **(STRETCH IRA).** While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you were to die prior to receiving all payments, your beneficiary(ies) may continue any such distributions or take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

☐ **Non-Qualified Annuity:** I choose to take distributions over my life expectancy (ISW). While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you die prior to receiving all payments, your beneficiary must take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

☐ **IRA Spousal Stretch Deferral:** I elect to defer stretch payments at this time. I understand in the future I must contact the Service Center for future distributions.

**Please select a Mode:** ☐ Monthly ☐ Quarterly ☐ Semi-Annually ☐ Annually

Process the first payment as of (mm/dd/yyyy) [        ] . (Calendar days 29, 30, and 31 are not allowed.) If an

initial payment date is not indicated, the first payment will begin 30 days after this form is received by the Claims Service Center.

---

**Notice of Withholding** — *If you have selected option A or C, or if you have requested to take the deceased's RMD, you must complete this section.*

Note: Taxes will be withheld if no election is made.

**Federal Tax Withholding** The taxable portion of the distribution made to you will be subject to 10% (20% for eligible rollover distributions\*) federal income tax withholding unless you elect not to have withholding apply.

1. ☐ **Do not withhold federal income tax from my distribution.** (If this box is checked, do not check box 2 or 3 below.) This option is not available for an eligible rollover distribution from 403(b) contracts. If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.

2. ☒ **Withhold 10% (20% for eligible rollover distributions\*) federal income tax from my distribution.**

3. ☐ In addition to the instructions in No. 2 above, please withhold the following additional percentage: [        ] %.

**State Tax Withholding** (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

4. ☒ "Yes," please withhold the following percentage for state income taxes: **5** %.

5. ☐ "No," do not withhold state income tax.

\*An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the Owner. However, such eligible rollover distribution does not include: (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Owner or the joint lives (or joint life expectancies) of the Owner and the Owner's beneficiary, or for a specified period of ten (10) years or more; (2) any distribution required under Code Section 401(a)(9); (3) any hardship distribution; and (4) the portion of any distribution that is not included in gross income.



Page 3 of 8

Z1142 03/18

06/01/2020 07:55:19

**D. Benefit Continuation Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

☐ I elect to continue the periodic benefit checks the Annuitant was receiving.

**E. Income Option Election** (Monthly Benefit Must Be $50 or More.) — *If you select one of these options, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

If an illustration is desired, please contact our office.

** ☐ **Income Option A — (Life Only)**
Equal payment will be made to the annuitant as long as he or she is living. Benefits cease at the death of the annuitant. There is no right to select lump-sum payments for the annuitant and/or owner.

** ☐ **Income Option B — (Life, ⬚ - Year Certain)**
A term of ten (10) or 20 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant as long as he or she is living.

DEATH BENEFIT: If the annuitant were to die prior to receiving the period-certain payments, any such unpaid payments shall be continued to the designated beneficiary. There is no right to select lump-sum payments for the annuitant and/or owner.

☐ **Income Option C — ( ⬚ - Year Term Certain)**
A period of five through 60 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant for the specified period of years.

DEATH BENEFIT: If the annuitant were to die prior to having received all payments due under this Contract, payments shall be continued for the balance of the period to the beneficiary designated. There is no right to select lump-sum payments for the annuitant and/or owner.

**Please send proof of age: either a copy of your birth certificate or a copy of your driver's license (or other identification provided by the state). Benefits will commence upon receipt of this paperwork in good order.

**Frequency of benefit payments:** ☐ Monthly ☐ Quarterly ☐ Semi-Annually ☐ Annually

Z1142 03/18

06/01/2020 07:55:19
Received 06/01/2020 07:55:19 Box DCC14062 058168 4

## Notice of Withholding— *If you have selected option D or E, then you must complete this section.*

Annuity payments from income options are treated as wages for the purpose of income tax withholding. An annuity payment is one that is included in your income for tax purposes and that you receive in installments at regular intervals over a period of more than one full year from the starting date of the particular investment. The intervals can be annually, semi-annually, quarterly, or monthly.

Unless you tell Jackson otherwise, tax must be withheld on annuity payments as if you are married and claiming three withholding allowances.

For annuity payments, your withholding certificate stays in effect until you change or revoke it. Jackson must notify you each year of your right to elect to have no tax withheld or to revoke your election.

*If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.*

### Complete the following applicable lines:

*You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.*

[ ] I elect **not** to have state and federal income tax withheld from my pension or annuity.

[ ] I elect withholding from each periodic pension or annuity payment to be figured using the number of allowances and

marital status shown (you may also designate an amount in the box at the right). **Number of allowances:**

**Marital Status:** [ ] Single  [ ] Married  [ ] Married, but withholding at higher single rate.

[ ] I elect the following additional amount withheld from each pension or annuity payment. *Note: For annuity payments,*

*you cannot enter an amount here without entering the number (including zero) of allowances above.* $

If your state of residence has state income tax, you may elect to have taxes withheld using the same allowances and marital status as used for federal withholding.

[X] I elect to have state tax withheld. (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

## F. Beneficiary Designation — *If you have selected option A, B, C, D or E, then you must complete this section.*

*Please name your beneficiary(ies). For additional beneficiaries, please attach additional name(s) and requested information on a separate sheet, signed and dated.*

| 1. [ ] Primary | | | | | | 50 | 100 Percentage of Death Benefit |
|---|---|---|---|---|---|---|---|
| Beneficiary's Name (First) | (Middle) | (Last) | | | | Date of Birth (mm/dd/yyyy) | Social Security Number  2723 |
| ELLEN - DANIEL | ANN MARE | LESHIN TAUB | | | | 06/03/1992 | 5088 |
| Non-Natural Entity Name | | | | | | Tax Identification Number | Relationship to You  SON |
| Address (number, street) | | City | | State | | ZIP Code | Phone Number (include area code) |
| 9 BOXWOOD PL | | RYE BROOK | | NY | | 10573 | |

Z1142 03/18

06/01/2020 07:55:19

## Direct Deposit - *If you selected option C, D, or E, you may authorize direct deposit by completing this section.*

I hereby authorize Jackson to direct deposit into the checking or savings account identified below, until further notice, all contract payments due to the owner of the contract. If the contract is owned by a trust, I affirm that I am the current trustee of the trust and am authorized to make this request on behalf of the trust. This authorization will remain in effect until it is revoked in writing. I and/or the trust hereby release and agree to indemnify and hold Jackson harmless from any and all claims arising out of or in any way related to Jackson's actions in compliance with this authorization. I agree that Jackson will have no further liability with respect to any payments made in accordance with this authorization and may, at any time, discontinue my direct deposit and issue checks to me requiring my personal endorsement. I, for myself, my heirs, executors, administrators, and assigns, do hereby consent and agree that any sums of money deposited to my account after my death shall be refunded to Jackson for distribution to the person or persons, if any, entitled to those sums under the terms of the contract.

☐ Checking Account (tape pre-printed voided check below) *

☐ Savings Account (provide letter from bank on institution's letterhead; letter must be signed and dated by a bank representative) *

**\* Direct Deposit will not be established without receipt of a pre-printed voided check or letter from your bank.**
**Please note:** Contract payments will generate on the day they are due or the next business day and will be deposited into your account within 2-3 business days (receipt of funds may be delayed by a weekend or holiday). All payments from custodian owned contracts will be made payable to the Custodian for both direct deposits and checks.

**Do not staple. Do not attach a deposit slip or a starter check.**

Account Holder's Name(s)
245 Main St.
Anywhere, USA 00000

Pay To The Order Of _____ $ [          ]

_____ Dollars

Your Financial Institution          **-- VOID --**

Name
Street Address                                                   _____
City, State, ZIP                                                     1234

Your Transit Routing Number          Your Account Number          Your check number



06/01/2020 07:55:19

Received 06/01/2020 07:55:19 Box DCC14062 058158 | ☐ Primary | ☐ Contingent | | 50 | Percentage of Death Benefit |

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| JONATHAN | SETH | TAUB | | 09/24/1968 | |
| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
| | | | | | SON |
| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
| 559 BRAESIDE | | HIGHLAND PARK | IL | 60035 | |

| 3. ☐ Primary | | ☐ Contingent | | | Percentage of Death Benefit |
|---|---|---|---|---|---|
| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
| | | | | | |
| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
| | | | | | |
| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
| | | | | | |

**Note:** All Primary Beneficiary percentages must be in whole percentage numbers that total 100%. All Contingent Beneficiary percentages must also be in whole percentage numbers that total 100%. If no beneficiary is elected, your Estate will be recorded.

## Signature(s)

The undersigned hereby makes claim to the undersigned's share of the death benefit proceeds of the above annuity Contract as beneficiary and agrees that the furnishing of this form or any of the forms supplemental thereto by the Company shall not constitute or be considered an admission by the Company that there was an annuity in force, nor shall it constitute or be considered a waiver of any of the Company's rights or defenses.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING.
**Under penalties of perjury, I certify that:**
**1. The number shown on this form is my correct Taxpayer Identification Number.**
**2. I am not subject to backup withholding.**
**3. I am a U.S. citizen or other U.S. person (including a U.S. resident alien).**
**4. I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.**

By signing below I acknowledge I have read all options available to me. **Please note: ALL ELECTIONS ARE IRREVOCABLE, YOU MAY WISH TO CONTACT A TAX ADVISOR.**

| Claimant's Signature | Date Signed (mm/dd/yyyy) | Claimant's Name (First) | (Middle) | (Last) |
|---|---|---|---|---|
| *Ellena Ifshin* | 05/15/2020 | ELLEN | ANN | IFSHIN |
| Signature of Witness | Date Signed (mm/dd/yyyy) | Witness's Name (First) | (Middle) | (Last) |
| | 05/15/2020 | DANIEL | MARC | TAUB |



Page 7 of 8

Z1142 03/18

06/01/2020 07:55:19

## Important Information – Please Read Carefully

- The entire death benefit must be paid within five (5) years of the date of death unless you elect to have the death benefit payable under an Income Option or the Systematic Withdrawal Option. The death benefit payable under an Income Option or the Systematic Withdrawal Option must be paid over your lifetime or for a period not extending beyond your life expectancy.

- For non-qualified funds, the first IRS-required withdrawal under the ISW and Income Option must occur within twelve months of the owner's death. For Lump-Sum Distributions, non-qualified funds must be completely withdrawn by the fifth anniversary of the date of death.

- For qualified funds, the first IRS-required withdrawal for the Stretch IRA and Income Option must occur by December 31st of the year following the owner's death. For lump-sum distributions qualified funds must be completely withdrawn by December 31 following the fifth anniversary of the date of death.

- If you wish to elect an Income Option or the Systematic Withdrawal Option you must do so within the 60-day period beginning with the date Jackson receives proof of death. **Please note:** with these options your beneficiary will not receive any enhanced death benefit protections.

- If a Continuation Option is selected for a JNL Target Select® contract, the original allocation period will remain in effect. The Beneficiary will have the option to select a new allocation period upon renewal.

- **Please note:** the following states do not have state income tax. We are not allowed to withhold state tax for these states: Alaska, Florida, Nevada, New Hampshire, South Dakota, Tennessee, Texas, Washington and Wyoming. The following states allow you to elect out of state withholding: California, Delaware, Oregon and Vermont. The state of Georgia allows you to elect out of state withholding on benefit payments only.

- **Please note:** if you are a Michigan resident, we may be required to withhold state tax at the prevailing fixed percentage.

- If you elect to have federal withholding, we are required to withhold for state purposes at the prevailing fixed percentage of the federal rate for the following states: Arkansas, California, Delaware, Georgia, Iowa, Maine, Massachusetts, Mississippi, Nebraska, North Carolina, Oklahoma, Oregon, Vermont and Virginia.

- The 10% premature distribution penalty does not apply to distributions made to the beneficiary on or after the death of the original holder of the Contract.

- Remember that there are penalties for not paying enough tax during the year, either through withholding or estimated tax payments. New retirees, especially, should see IRS Publication 505, Tax Withholding and Estimated Tax, which can be obtained by contacting the IRS. Publication 505 explains the estimated tax requirements and penalties in detail. You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.

- **Please note:** if you continue a Contract with a LIB, you may set or change the Activation Date by completing the Activation Request Form (X4391). If an Activation Date has been set, you may change or cancel that date by notifying the Company at least 30 days prior to the selected Activation Date. If you do not notify the Company at least 30 days prior to the Activation Date, it cannot be changed or canceled.

| Mailing Address and Contact Information | |
|---|---|
| Jackson Claims Administration | |
| Regular Mail | P.O. Box 30503, Lansing, MI 48909-8003 |
| Overnight Mail | 1 Corporate Way, Lansing, MI 48951 |
| Customer Care | 888-565-4995 (M-Th: 8:00 a.m. to 7:00 p.m. ET and Fri: 8:00 a.m. to 6:00 p.m. ET) |
| Fax* | 517-706-5513 |
| Email | customercare@jackson.com |

* A fax cover page is not needed. If you have additional instructions to submit please complete Letter of Instruction (form X4250) including owner and/or annuitant signature(s) as applicable.

Z1142 03/18

06/01/2020 07:55:19

WESTCHESTER
NY 105
29 MAY '20
PM 11



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

## BUSINESS REPLY MAIL
FIRST-CLASS MAIL   PERMIT NO. 600   LANSING MI

POSTAGE WILL BE PAID BY ADDRESSEE

JACKSON NATIONAL LIFE INSURANCE COMPANY
PO BOX 30503
LANSING MI  48909-9777



POLSINELLI PC
Frank T. Spano
Darnell Stanislaus
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
fspano@polsinelli.com
dstanislaus@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>                              Plaintiff<br><br>v.<br><br>ELLEN A. IFSHIN f/k/a ELLEN, A. BOND and GREGORY T. BOND,<br><br>                              Defendant | Case No.<br><br>**NOTICE OF MOTION** |

      **PLEASE TAKE NOTICE** that upon the Declaration of Theresa Thompson, the Interpleader Complaint and the exhibits attached thereto, and the accompanying Memorandum of Law, Plaintiff Jackson National Life Insurance Company ("Jackson National") will move this Court, at the United States Courthouse for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York, at a date and time to be designated by the Court, for an order granting Jackson National leave to deposit into the Court's Disputed Ownership Fund in an interest bearing account the death benefit owed under an annuity issued to Focus 2000 for Annuitant Philip G. Bond, and: (a) discharging Jackson National from further liability under the annuity; (b) enjoining the competing claimants from initiating any separate action against Jackson National and/or its agents with respect to the Annuity; (c) awarding Jackson National its reasonable attorney's fees and costs; and (d) dismissing Jackson National from this action.

Dated:  New York, New York
     September 2, 2020

POLSINELLI PC


By:  */s/ Frank T. Spano*
      Frank T. Spano
      600 Third Avenue, 42nd Floor
      New York, New York 10016
      (212) 684-0199
      Fax No. (212) 684-0197
      fspano@polsinelli.com
      dstanislaus@polsinelli.com


ATTORNEYS FOR PLAINTIFF

74477325.1

POLSINELLI PC
Frank T. Spano
Darnell Stanislaus
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
fspano@polsinelli.com
dstanislaus@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>    Plaintiff<br><br>v.<br><br>ELLEN A. IFSHIN f/k/a ELLEN, A. BOND and GREGORY T. BOND,<br><br>    Defendant | Case No. |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DEPOSIT POLICY BENEFIT INTO THE COURT'S REGISTRY AND FOR INTERPLEADER RELIEF

Plaintiff Jackson National Life Insurance Company ("Jackson National") respectfully submits this memorandum of law in support of its Motion to Deposit Policy Benefit into the Court's Disputed Ownership Fund and for Interpleader Relief.

## I.    FACTUAL BACKGROUND

1.    On January 3, 1989, Jackson National issued a Flexible Premium Deferred Annuity Policy, bearing Policy Number 0004865310 (the "Annuity") to Focus 2000 with Philip G. Bond, deceased being the annuitant ("Annuitant"). *See* Declaration of Theresa Thompson at ¶ 3.

2.    The proceeds of the Annuity are subject to competing claims as the result of the death of Annuitant. *See id.* at ¶ 4.

3.      On or around February 21, 2020, Jackson National was provided, among other things, a certificate of death of Annuitant, who died on July 1, 2016, as a resident of San Diego, California.  *See id.* at ¶ 5.

4.      As of August 12, 2020, the value of the Annuity's death benefit proceeds is $15,297.56 (the "Proceeds"). *See id.* at ¶ 6.

5.      The Annuity identifies the primary beneficiary as Ellen A. Ifshin f/k/a Ellen A. Bond ("Ifshin"), Annuitant's ex-wife and the contingent beneficiary as Gregory T. Bond ("Bond"), Annuitant's son.  *See id.* at ¶ 7.

6.      On February 21, 2020, Bond provided to Jackson National an executed claim form, along with a Marital Settlement Agreement between Annuitant and Ifsin. *See id.* at ¶ 8.

7.      On March 14, 2020, Jackson National sent correspondence to Bond informing him that Ifshin was the designated beneficiary of the Annuity.  *See id.* at ¶ 9.

8.      On May 4, 2020, Jackson National sent correspondence to Ifshin advising her that she was the named beneficiary under the Annuity and asking her to return an executed claim form if she intended to claim the proceeds of the Annuity by June 1, 2020.  *See id.* at ¶ 10.

9.      On May 4, 2020, Jackson National notified Bond that Annuitant's divorce from Ifshin did not automatically revoke her designation as the beneficiary of the Annuity and asked Bond to notify Jackson National if he disagreed. *See id.* at ¶ 11.

10.     On May 16, 2020, Jackson National received Ifshin's Election Regarding Claim Proceeds in which she claimed she was the proper beneficiary of the Annuity and intended to file a claim for the Annuity's death benefit proceeds. *See id.* at ¶ 12.

11.     On May 12, 2020, Bond sent a letter to Jackson National, stating that if Ifshin attempted to claim the Proceeds he would contest her claim.  *See id.* at ¶ 13.

74479214.2

12. On June 1, 2020, Jackson National received from Ifshin an Annuity Death Benefit Claim Form indicating that she elected to claim the Proceeds. *See id.* at ¶ 14

13. Jackson National is unable to determine the validity of the conflicting and competing claims to the Proceeds of the Annuity and fears that payment of the Proceeds to any one claimant will subject it to additional liability to the other claimants seeking payment of the Proceeds under the Annuity.

14. Jackson National has no interest in the Proceeds except to the extent such payment discharges any and all obligations Jackson National may owe to any party arising out of the Annuitant's death and the benefit payable as a consequence thereof under the Annuity.

15. On this same day, Jackson National filed this statutory interpleader action pursuant to 28 U.S.C. § 1335 as a disinterested stakeholder claiming no interest in the Proceeds of the Annuity.

## II. LEGAL ARGUMENT

### A. Jackson National is Entitled to an Order to Permit Deposit of the Proceeds into the Disputed Ownership Fund of this Court.

This Court has held that in order to exercise jurisdiction over a statutory interpleader action under 28 U.S.C. § 1335, the interpleader plaintiff must deposit the money or property at issue into the registry of this Court. *See, e.g. Fed. Ins. Co. v. Tyco Int'l, Ltd.*, 422 F.Supp.2d 357 (S.D.N.Y. 2006). Pursuant Fed.R.Civ.P. 67(a), Jackson National requires an order from this Court to direct the Clerk to permitting deposit on the Proceeds. Accordingly, Jackson National respectfully requests and order from this Court allowing Jackson National to deposit the Proceeds into the Court's Disputed Ownership Fund, and, thereafter, to be discharged from further liability with respect to the Proceeds and the Annuity and to be dismissed from this action.

### B. Jackson National is Entitled to an Injunction Against Duplicitous Actions

3

28 U.S.C. § 2361 provides that

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.

This Court has determined that an "injunction against overlapping lawsuits is desirable to insure the effective of the interpleader remedy.  It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations."  *Sotheby's Inc. v. Garcia*, 802 F.Supp. 1058 (S.D.N.Y. 1992)  Accordingly, Jackson National further requests that the Court enter an Order restraining Defendants, their heirs, legal representatives, successors and assigns, and all other persons claiming by, through, or under them, be permanently enjoined and restrained from instituting or prosecuting any action in any state or United States Court against Jackson National and its agents and representatives with respect to the Annuity or the Proceeds.

## C.  Jackson National is Entitled to an Order of Dismissal

Upon Jackson National's deposit of the Proceeds into the registry of the Court, Jackson National respectfully requests an order of discharge from further liability with respect to the Annuity and the Proceeds and an order of dismissal from this action.

## D.  Jackson National Requests its Attorneys' Fees

Finally, Jackson National requests an order awarding Jackson National its attorneys' fees and costs to be paid from the Proceeds.   Jackson National is a disinterested party that was forced to bring the present suit after competing claims by the ex-wife and son of the Annuitant.

Dated:  New York, New York
          September 2, 2020

4

POLSINELLI PC


By:  */s/ Frank T. Spano*
         Frank T. Spano
         600 Third Avenue, 42nd Floor
         New York, New York 10016
         (212) 684-0199
         Fax No. (212) 684-0197
         fspano@polsinelli.com
         dstanislaus@polsinelli.com


ATTORNEYS FOR PLAINTIFF

DocuSign Envelope ID: D067B457-175B-45E3-9BAD-F258F9B5DAC5

POLSINELLI PC
Frank T. Spano
Darnell Stanislaus
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
fspano@polsinelli.com
dstanislaus@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON NATIONAL LIFE INSURANCE COMPANY, <br><br>                          Plaintiff <br><br> v. <br><br> ELLEN A. IFSHIN f/k/a ELLEN, A. BOND and GREGORY T. BOND, <br><br>                          Defendant | Case No. |

## DECLARATION OF THERESA THOMPSON IN SUPPORT OF MOTION TO DEPOSIT

Theresa Thompson, pursuant to 28 U.S.C. §1746, and under penalties of perjury, hereby affirms and states as follows:

1. I am a Claims Examiner at Jackson National Life Insurance Company ("Jackson National"), the plaintiff in this action. The information contained herein is either personally known to me or has been obtained from (1) people whom I believe to be reliable and capable of ascertaining the facts described herein or (2) records maintained by Jackson National.

2. I submit this declaration in support of Jackson National's motion for an order permitting the deposit of the proceeds of Jackson National Flexible Premium Deferred Annuity Policy, bearing Policy Number 0004865310 (the "Annuity") into the Registry of this Court.

3. The Annuity was issued on January 3, 1989 to Focus 2000 with Philip G. Bond, being the annuitant ("Annuitant"). *See* Annuity, attached as Exhibit 1.

74485817.2

4.      The proceeds of the Annuity are subject to competing claims as the result of the death of Annuitant.

5.      On or around February 21, 2020, Jackson National was provided, among other things, a certificate of death of Annuitant, who died on July 1, 2016, as a resident of San Diego, California.  *See* February 21, 2020 Fax to Jackson National, attached as Exhibit 2.

6.      As of August 12, 2020, the value of the Annuity's death benefit proceeds is $15,297.56 (the "Proceeds").

7.      The Annuity identifies the primary beneficiary as Ellen A. Ifshin f/k/a Ellen A. Bond ("Ifshin"), Annuitant's ex-wife and the contingent beneficiary as Gregory T. Bond ("Bond"), Annuitant's son.  *See* Annuity, attached as Exhibit 1.

8.      On February 21, 2020, Bond provided to Jackson National an executed claim form, along with a Marital Settlement Agreement between Annuitant and Ifsin.  *See* February 1, 2020 Fax from Bond to Jackson National, attached as Exhibit 2.

9.      On March 14, 2020, Jackson National sent correspondence to Bond informing him that Ifshin was the designated beneficiary of the Annuity.  *See* March 14, 2020 Letter to Bond, attached as Exhibit 3.

10.     On May 4, 2020, Jackson National sent correspondence to Ifshin advising her that she was the named beneficiary under the Annuity and asking her to return an executed claim form if she intended to claim the proceeds of the Annuity by June 1, 2020.  *See* May 4, 2020 Letter from Jackson National to Ifshin, attached as Exhibit 4.

11.     On May 4, 2020, Jackson National notified Bond that Annuitant's divorce from Ifshin did not automatically revoke her designation as the beneficiary of the Annuity and asked Bond to notify Jackson National if he disagreed. *See* May 4, 2020 Letter from Jackson National to Bond, attached as Exhibit 5.

12. On May 16, 2020, Jackson National received Ifshin's Election Regarding Claim Proceeds in which she claimed she was the proper beneficiary of the Annuity and intended to file a claim for the Annuity's death benefit proceeds. *See* May 16, 2020 Election Regarding Claim for Proceeds, attached as Exhibit 6.

13. On May 12, 2020, Bond sent a letter to Jackson National, stating that if Ifshin attempted to claim the Proceeds he would contest her claim. *See* May 12, 2020 Letter from Bond to Jackson National, attached as Exhibit 7.

14. On June 1, 2020, Jackson National received from Ifshin an Annuity Death Benefit Claim Form indicating that she elected to claim the Proceeds. *See* Ifshin Annuity Death Benefit Form, attached as Exhibit 8.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 21, 2020

Theresa Thompson

74485817.2

# JACKSON NATIONAL LIFE INSURANCE COMPANY
### 1 Corporate Way
### Lansing, Michigan 48951
### A Stock Company

*Will pay the benefits provided in this policy,*
*subject to its terms and conditions*



---

| POLICY NUMBER | 0004865310 | POLICY DATE | JANUARY 3, 1989 |
|---|---|---|---|

THE ANNUITANT     PHILIP G BOND         AGE   50   MALE

THE OWNER         FOCUS 2000

PLAN   FLEXIBLE PREMIUM DEFERRED     ISSUE DATE    JANUARY 3, 1989
       ANNUITY

| ANTICIPATED MATURITY DATE: | NOVEMBER 3, 2013 |
|---|---|
| ANTICIPATED ANNUAL PREMIUM: | $12,000.00 |
| INITIAL PREMIUM DEPOSIT: | $1,000.00 |

BENEFICIARY       ELLEN A BOND

PREMIUM
Schedule:    ANNUALLY       PREMIUM    Payable as follows ON THE DUE DATES PRIOR
                                                 TO MATURITY

Beginning:
| Month | Day | Year | | Total | PREMIUM: |
|---|---|---|---|---|---|
| JANUARY | 3 | 1989 | | | $12,000.00 |

---

INDIVIDUAL DEFERRED
ANNUITY CONTRACT WITH
FLEXIBLE PREMIUMS
DEATH BENEFIT PRIOR
TO MATURITY. MONTHLY
INCOME AT MATURITY.
NON-PARTICIPATING

**This contract is signed at the home office of**
**Jackson National Life, Lansing, Michigan**

**Secretary**                                   **President**

A307

## CONTRACT PROVISIONS

**SECTION**                                                    **PAGE**

Basic Benefits ................................................................... 3

General Provisions ........................................................... 3

Accumulated Value Provisions........................................ 4

Annuity Provisions........................................................... 5

Settlement Option Table................................................. 6

## BASIC BENEFITS

**THE COMPANY WILL PAY** the Annuitant, if living on the Maturity Date, a monthly life income annuity with 120 months certain. The amount will be as shown on the Table of Guaranteed Values page of this Policy or such greater amount as determined by the terms of this Policy.

Upon receipt of due proof of the death of the Annuitant prior to the Maturity Date, the Company will pay to the Beneficiary, no later than two months after receipt of such proof, the Death Benefit Proceeds. The Death Benefit Proceeds will be equal to:

1) the total amount of premiums paid without interest and reduced by the sum of all Partial Withdrawal Amounts; or
2) the Accumulation Value, if greater.

## GENERAL PROVISIONS

**OWNER OF THE POLICY** While the Annuitant is living, all rights of this Policy belong to the Owner. The Owner may exercise these rights subject to the interest of any Assignee or irrevocable Beneficiary.

**CHANGE OF OWNERSHIP** The ownership of this Policy may be changed at any time during the Annuitant's lifetime. Such change must be made by written notice acceptable to the Company. A change will take effect on the date the notice is signed. However, the change will not apply to any payments made or actions taken by the Company before the notice was received at the Home Office. The Company reserves the right to require that this Policy be presented for endorsement of any change.

**HOW BENEFICIARY MAY BE CHANGED** While this Policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement. This may be done by filing at the Home Office of the Company an acceptable written request. Such change will be subject to any existing assignment of this Policy and will take effect only when recorded by the Company at its Home Office. When recorded, the change will take effect on the date the notice was signed. Any proceeds paid before a change of Beneficiary is recorded will not be subject to the change.

**DEATH OF BENEFICIARY** The interest of any Beneficiary who dies before the Annuitant will end at the death of the Beneficiary. The interest of any Beneficiary who dies at the time of or within ten days after the death of the Annuitant will also end if no proceeds have been paid to that Beneficiary. If the interest of all designated Beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the Annuitant.

**MISSTATEMENT OF AGE OR SEX** If the age or sex of the Annuitant has been misstated, the benefits available under this contract will be those which the premiums paid would have purchased at the correct age and sex.

Any underpayments will be made up immediately by the Company. Overpayments will be deducted from succeeding payments as necessary.

**CONSIDERATION: ENTIRE CONTRACT** The consideration for issuing this Policy is the Application and the payment of the first premium. This Policy and the Application, a copy of which is attached and made a part of the Policy, constitute the entire contract between the parties. All statements made in the Application will, in the absence of fraud, be deemed representations and not warranties; and no statement will void this Policy or be used as a defense to a claim unless it is contained in such written application.

**MODIFICATION OF POLICY** Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has power on behalf of the Company to change, modify, or waive the provisions of this Policy and then only in writing. No agent or persons other than the above named officers has the authority to change or modify this Policy or waive any of its provisions.

**ISSUE DATE** Unless otherwise stated on the face of this Policy, the issue date will be the date used to determine due dates, policy anniversaries and policy years.

**CHANGE OF ANTICIPATED MATURITY DATE** While this Policy is in force, the Owner may change the Anticipated Maturity Date to a date later than that shown on the face of this Policy by filing a written request at the Home Office of the Company.

**NONPARTICIPATING** This Policy will not participate in the profits or surplus of the Company.

## ACCUMULATED VALUE PROVISIONS

**ACCUMULATED VALUE** The Accumulated Value is equal to the Net Amount of each premium, less all Partial Withdrawal Amounts, accumulated at interest and reduced by the Annual Administrative Charges if applicable.

Interest will be credited from the date a premium is received by the Company and will cease to be credited on Partial Withdrawal Amounts on the date the Partial Withdrawal is granted by the Company.

**ADDITIONAL PREMIUM PROVISION** The Company will accept additional premium payments after the initial payment at any time prior to the election of an annuity payment option and in any amount not less than $50.

If premium payments are discontinued, the existing Accumulated Values will continue to accumulate as described in the "Accumulated Value" section.

**ANNUAL ADMINISTRATIVE CHARGE** At the end of each policy year, an administrative charge of $20 will be deducted from the Accumulated Value of each contract on which premiums had been paid in the policy year. Except that such charge will be waived in each year in which premium payments total at least $1,000.

**NET AMOUNT OF EACH PREMIUM** The Net Amount of each premium is equal to the total premium received by the Company reduced by the applicable premium tax rate in effect on the date the premium is received and reduced by a collection charge of $1.25. This collection charge will be waived and not deducted from any premium which equals or exceeds $1,000.

**CASH SURRENDER VALUE** The Cash Surrender Value is equal to the Accumulated Value, less the Surrender Charge.

**PARTIAL WITHDRAWAL AMOUNT** The Partial Withdrawal Amount means any amount less than the Cash Surrender Value, which is withdrawn from the Accumulated Value.

**NET WITHDRAWAL AMOUNT** The Net Withdrawal Amount is equal to the Partial Withdrawal Amount less the Surrender Charge.

**PARTIAL WITHDRAWAL** At any time prior to the Maturity Date, the Owner upon written application, may withdraw a Partial Withdrawal Amount, subject to the terms of this Policy. The Partial Withdrawal Amount must be such that the remaining Accumulated Value after withdrawal is not less than 15 percent of the Accumulated Value immediately prior to the Partial Withdrawal. In no case may the remaining Accumulated Value be less than $1,000.

When a Partial Withdrawal is made, the Partial Withdrawal Amount will be taken from the Accumulated Value arising from the first-year premium and interest thereon before any other premiums and interest.

**FULL WITHDRAWAL** At any time prior to the Maturity Date, the Company will, upon written application by the Owner and surrender of the policy, pay to the Owner the Cash Surrender Value of the policy.

**SURRENDER CHARGE** The Surrender Charge is a percentage of the Accumulated Value of the first-year premium and interest thereon for either a Full Withdrawal or Partial Withdrawal. The Surrender Charge percentage by policy year is shown on the Policy's Table of Guaranteed Values page.

The Company may defer payment of any withdrawal amount for a period not exceeding six months.

**ANNUAL STATEMENT OF VALUES** The Company shall provide to the Policyowner annually a statement showing premiums paid, partial or full withdrawals granted and the then current accumulation and cash surrender values.

**INTEREST OF THE OWNER** The interest of the Owner in the Accumulated Value prior to the Maturity Date will at all times be nonforfeitable.

**INTEREST** Interest will be credited to the Accumulated Value from the date premiums are received by the Company until withdrawals are granted by the Company. The rates of interest will be as the Board of Directors of the Company may declare, in advance. Such rate of interest will never be less than the rate shown on the Table of Guaranteed Values page. Such interest credited which exceeds these rates will be excess interest and will be added to and become part of the Accumulated Value. On contracts where less than $1,500 of premium has been paid during the most recent 24 months, the Board of Directors may declare lower or no excess interest.

**RESERVE BASIS** The reserve under this Policy prior to the commencement of any annuity payment will be equal to the Cash Surrender Value then current, or the greatest of the discounted future Cash Surrender Values discounted at the valuation interest rate permitted by law, whichever is greater. After that, the reserve will equal the present value of future annuity benefits provided.

The Cash and Annuity Values provided under this Policy meet or exceed the minimum levels required by the laws of the state in which this Policy is delivered. A detailed statement of the method of computing values has been filed with the supervisory official of the state where this Policy is delivered.

## ANNUITY PROVISIONS

**ANNUITY BENEFITS** At the Maturity Date selected by the Owner, the Accumulated Value will be applied to provide an annuity payable for 120 months certain and life as determined from this Policy, or other more favorable options as the Company may make available. The Owner may elect to receive an annuity in accordance with the other Options shown in the Policy or made available by the Company. At the death of an Annuitant before the Maturity Date, the Beneficiary may elect to receive an annuity by applying the death benefit proceeds under any of the following Options or other more favorable Options as the Company may make available. Election of an Option must be made in writing to the Company. The effective date of any election of an Option will be determined by the election.

**PAYMENT OPTIONS** The proceeds may be applied under any of the following Options:

**OPTION 1 - PROCEEDS AT INTEREST** The Cash Surrender Value or the Death Benefit Proceeds may be left on deposit during the lifetime of the Payee or for a specified period. Interest will then be paid annually. The rate of interest will be no less than 4% per year. All or part of the proceeds may be withdrawn at any time.

**OPTION 2 - PAYMENT FOR A FIXED PERIOD** The Accumulated Value or the Death Benefit Proceeds may be paid in monthly payments, until the proceeds plus interest at no less than 4% per year are paid in full. The period is shown in the table. If there are less than 120 monthly payments, the Cash Surrender Value will be applied instead of the Accumulated Value. The present value of any unpaid payments may be withdrawn at any time and will be if a Payee dies before the last payment is made.

**OPTION 3 - LIFE INCOME** The Accumulated Value or the Death Benefit Proceeds may be paid in monthly payments during the lifetime of the Payee. A minimum number of payments may be guaranteed if desired. The amounts of the monthly payments are shown in the table. They are based on the 1971 Individual Annuity Mortality Table with interest at 6%. Payment under this Option is subject to satisfactory proof of the age of the Payee. If the Payee dies before the guaranteed payments have been paid, the present value of the remaining guaranteed payments will be paid.

The present value of any unpaid payments under any option will be calculated using 4% interest.

**OPTION 4 - CURRENT ANNUITY OPTION** The Accumulated Value or the Death Benefit Proceeds may be used to purchase any single premium immediate annuity which is issued by the Company on the date of election. If there are less than 120 monthly payments, the Cash Surrender Value will be applied instead of the Accumulated Value. Payment under this Option is subject to satisfactory proof of the age of the Payee.

**MINIMUM PAYMENTS** The minimum payment under Option 1 is $100. The minimum payment under any of the other Options is $25.

**EFFECT OF TAXES ASSESSED AT MATURITY OR TIME OF ELECTION OF AN OPTION** In the event a premium tax or other tax is assessed at the time payments begin, the amount of such tax will reduce the proceeds which would otherwise be applied.

**EXCESS INTEREST** Excess Interest as declared by the Company may be used to increase payments or to increase the period of time for which payments are made.

**ELECTION OF SETTLEMENT OPTIONS BY OWNER** The Owner may elect or change any payment option during the lifetime of the Annuitant. The election or change can be made by written notice to the Company.

**ELECTION OF PAYMENT OPTIONS BY BENEFICIARY** If no payment Option is in effect at the death of the Annuitant, a payment Option may be elected by the Beneficiary. The election can be made by written notice to the Company.

**ADJUSTED AGE** The adjusted age is determined from the actual age and the calendar year of birth.

| Calendar Year of Birth | Adjusted Age |
|---|---|
| Before 1900 | Actual age Plus 2 |
| 1900-1919 | Actual age plus 1 |
| 1920-1939 | Actual age |
| 1940-1959 | Actual age minus 1 |
| 1960-1979 | Actual age minus 2 |
| 1980 and After | Actual age minus 3 |

**AVAILABILITY OF OPTIONS** These Options are not available if the Beneficiary is an Assignee, Corporation, Partnership, Association, Trustee, Executor, Administrator or any Fiduciary.

**FREQUENCY OF PAYMENTS** The payments shown in the table are monthly payments. Payments may be made one, two or four times per year if desired. These payments are obtained as follows:

| Number of Payments Per Year | Method of Calculation |
|---|---|
| One | Monthly Payment Multiplied by 11.787 |
| Two | Monthly Payment Multiplied by 5.951 |
| Four | Monthly Payment Multiplied by 2.990 |

## TABLE OF ANNUITY OPTIONS

The following table is for a contract whose net proceeds are $1,000, and will apply pro rata to the amount payable under this policy.

| No of Monthly Install-ments | Monthly Install-ments | Adjusted Age of Payee | | No. of Mos. Certain | | | Adjusted Age of Payee | | No. of Mos. Certain | | | Adjusted Age of Payee | | No. of Mos. Certain | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Male | Female | Life | 120 | 240 | Male | Female | Life | 120 | 240 | Male | Female | Life | 120 | 240 |
| 12 | $84.84 | | 26 | $4.93 | $4.92 | $4.91 | 41 | 47 | $5.53 | $5.49 | $5.39 | 62 | 68 | $7.46 | $7.08 | $6.33 |
| 24 | 43.25 | | 27 | 4.94 | 4.94 | 4.92 | 42 | 48 | 5.58 | 5.54 | 5.43 | 63 | 69 | 7.62 | 7.20 | 6.37 |
| 36 | 29.40 | | 28 | 4.96 | 4.95 | 4.94 | 43 | 49 | 5.63 | 5.59 | 5.46 | 64 | 70 | 7.80 | 7.33 | 6.42 |
| 48 | 22.47 | | 29 | 4.98 | 4.97 | 4.95 | 44 | 50 | 5.69 | 5.64 | 5.50 | 65 | 71 | 7.99 | 7.46 | 6.46 |
| 60 | 18.32 | | 30 | 5.00 | 4.99 | 4.97 | 45 | 51 | 5.75 | 5.70 | 5.54 | 66 | 72 | 8.19 | 7.60 | 6.51 |
| 72 | 15.56 | | 31 | 5.02 | 5.01 | 4.99 | 46 | 52 | 5.82 | 5.75 | 5.58 | 67 | 73 | 8.41 | 7.74 | 6.54 |
| 84 | 13.59 | 26 | 32 | 5.04 | 5.03 | 5.01 | 47 | 53 | 5.89 | 5.81 | 5.62 | 68 | 74 | 8.65 | 7.88 | 6.58 |
| 96 | 12.12 | 27 | 33 | 5.06 | 5.05 | 5.03 | 48 | 54 | 5.96 | 5.87 | 5.66 | 69 | 75 | 8.90 | 8.04 | 6.61 |
| 108 | 10.97 | 28 | 34 | 5.07 | 5.07 | 5.05 | 49 | 55 | 6.03 | 5.94 | 5.71 | 70 | 76 | 9.18 | 8.19 | 6.64 |
| 120 | 10.06 | 29 | 35 | 5.10 | 5.09 | 5.07 | 50 | 56 | 6.11 | 6.00 | 5.75 | 71 | 77 | 9.48 | 8.35 | 6.67 |
| 132 | 9.31 | 30 | 36 | 5.12 | 5.11 | 5.08 | 51 | 57 | 6.19 | 6.07 | 5.79 | 72 | 78 | 9.80 | 8.51 | 6.69 |
| 144 | 8.69 | 31 | 37 | 5.15 | 5.14 | 5.10 | 52 | 58 | 6.28 | 6.14 | 5.84 | 73 | 79 | 10.15 | 8.67 | 6.71 |
| 156 | 8.17 | 32 | 38 | 5.18 | 5.17 | 5.13 | 53 | 59 | 6.37 | 6.22 | 5.89 | 74 | 80 | 10.52 | 8.83 | 6.73 |
| 168 | 7.72 | 33 | 39 | 5.21 | 5.20 | 5.15 | 54 | 60 | 6.46 | 6.30 | 5.94 | 75 | | 10.93 | 9.00 | 6.74 |
| 180 | 7.34 | 35 | 40 | 5.24 | 5.23 | 5.18 | 55 | 61 | 6.56 | 6.38 | 5.98 | 76 | | 11.37 | 9.16 | 6.75 |
| 192 | 7.00 | 35 | 41 | 5.27 | 5.26 | 5.21 | 56 | 62 | 6.67 | 6.47 | 6.03 | 77 | | 11.85 | 9.31 | 6.76 |
| 204 | 6.71 | 36 | 42 | 5.31 | 5.29 | 5.24 | 57 | 63 | 6.78 | 6.56 | 6.08 | 78 | | 12.37 | 9.47 | 6.76 |
| 215 | 6.44 | 37 | 43 | 5.35 | 5.33 | 5.26 | 58 | 64 | 6.90 | 6.65 | 6.13 | 79 | | 12.93 | 9.62 | 6.77 |
| 228 | 6.21 | 38 | 44 | 5.39 | 5.37 | 5.29 | 59 | 65 | 7.03 | 6.75 | 6.18 | 80 | | 13.54 | 9.76 | 6.77 |
| 240 | 6.00 | 39 | 45 | 5.43 | 5.41 | 5.33 | 60 | 66 | 7.16 | 6.86 | 6.23 | | | | | |
| | | 40 | 46 | 5.48 | 5.45 | 5.36 | 61 | 67 | 7.30 | 6.97 | 6.28 | | | | | |

Under column header: UNDER OPTION 2 | MONTHLY INSTALLMENT UNDER OPTION 3-CONTINUOUS INSTALLMENTS

# JACKSON NATIONAL LIFE INSURANCE COMPANY



1 Corporate Way

Lansing, Michigan 48951

TABLE OF GUARANTEED VALUES

PLAN:   FLEXIBLE PREMIUM DEFERRED ANNUITY

ISSUE AGE - 50 MALE

POLICY NO:   0004865310

ANNUAL PREMIUM - $12,000.00

THE VALUES SHOWN BELOW ARE BASED ON THE PREMIUM SHOWN ABOVE, PAID ANNUALLY IN ADVANCE ON EACH POLICY ANNIVERSARY, AND ON THE GUARANTEED ANNUAL INTEREST RATE. SINCE INTEREST IS CREDITED ON THE ACTUAL NET AMOUNT OF EACH PREMIUM PAYMENT FROM THE DATE IT IS RECEIVED, THE VALUES OF THIS POLICY WILL VARY ACCORDINGLY. THESE VALUES WILL BE INCREASED BY ANY AMOUNTS OF EXCESS INTEREST DECLARED BY THE BOARD OF DIRECTORS AND WILL BE REDUCED BY ANY PARTIAL WITHDRAWALS.

| END OF POLICY YEAR | ACCUMULATED VALUE | CASH SURRENDER VALUE | GUARANTEED MONTHLY INCOME LIFE ANNUITY WITH 10 YEARS CERTAIN AT AGE 70 |
|---|---|---|---|
| 1 | $12,360.00 | $8,034.00 | $117.50 |
| 2 | $25,090.80 | $20,635.02 | $349.84 |
| 3 | $38,203.52 | $33,614.07 | $517.15 |
| 4 | $51,709.63 | $46,982.49 | $679.60 |
| 5 | $65,620.92 | $60,751.97 | $837.31 |
| 6 | $79,949.55 | $75,364.39 | $990.42 |
| 7 | $94,708.04 | $90,428.08 | $1,139.08 |
| 8 | $109,909.28 | $105,956.96 | $1,283.41 |
| 9 | $125,566.56 | $121,965.39 | $1,423.53 |
| 10 | $141,693.56 | $138,468.16 | $1,559.57 |
| 11 | $158,304.37 | $155,646.64 | $1,691.66 |
| 12 | $175,413.50 | $173,360.49 | $1,819.89 |
| 13 | $193,035.91 | $191,626.12 | $1,944.39 |
| 14 | $211,186.99 | $210,460.95 | $2,065.26 |
| 15 | $229,882.60 | $229,882.60 | $2,182.61 |
| 16 | $249,139.08 | $249,139.08 | $2,296.54 |
| 17 | $268,973.25 | $268,973.25 | $2,407.16 |
| 18 | $289,402.45 | $289,402.45 | $2,514.55 |
| 19 | $310,444.52 | $310,444.52 | $2,618.82 |
| 20 | $332,117.86 | $332,117.86 | $2,720.05 |
| AGE 60 | $141,693.56 | $138,468.16 | $1,559.57 |
| AGE 70 | $332,117.86 | $332,117.86 | $2,720.05 |

THE SURRENDER CHARGE PERCENTAGE BY POLICY YEAR IS AS FOLLOWS: *

| | | | | | |
|---|---|---|---|---|---|
| FIRST 5 POLICY YEARS | 35% | 9TH POLICY YEAR | 23% | 13TH POLICY YEAR | 8% |
| 6TH POLICY YEAR | 32% | 10TH POLICY YEAR | 20% | 14TH POLICY YEAR | 4% |
| 7TH POLICY YEAR | 29% | 11TH POLICY YEAR | 16% | 15TH AND LATER | |
| 8TH POLICY YEAR | 26% | 12TH POLICY YEAR | 12% | POLICY YEARS | 0% |

* APPLIED TO ACCUMULATION OF PREMIUMS PAID IN FIRST POLICY YEAR ONLY

THE GUARANTEED INTEREST RATE IS 3.00% COMPOUNDED ANNUALLY.

A307

**APPLICATION TO**  A 082907
**JACKSON NATIONAL LIFE INSURANCE COMPANY / LANSING, MICHIGAN**
**FOR FLEXIBLE PAYMENT ANNUITY OR SINGLE PAYMENT ANNUITIES.**

**PLEASE PRINT**

1. Full name of Annuitant (First, Middle and Last Name)
PHILIP G BOAD

Sex __X__ Male
____ Female

2. Address   Number and Street
3205  MIDWAY DRIVE

City SAN DIEGO   State CA   Zip Code 92110

3. Date of Birth   Month 2 - Day 15 - Year 38   Age 50

Social Security Number (must be filled in) 2 1 1 0 8

4. Employer  FOCUS 2000

Occupation CREATIVE REAL ESTATE DEVELOPER

Date Employed 1987

5. Beneficiary  ELLEN A. BOND   Relationship SPOUSE

Contingent Beneficiary GREGORY T. BOND   Relationship SON

6. It is understood that ownership and control of the Contract to be issued on the basis of this statement will be vested in
☐ The Annuitant   ☒ Other than the Annuitant
(SHOW NAME, ADDRESS, AND SOCIAL SECURITY OR BUSINESS IDENTIFICATION NUMBER IF OWNER IS OTHER THAN ANNUITANT)
FOCUS 2000
IDX 33-0287117

7. Payment Notice to: (if other than No. 2 above)
Name PHILIP BOND/TRUSTEE   Number and Street FOCUS 2000 3205 MIDWAY DR.   City SAN DIEGO   State CA   Zip Code 92110

8. THIS APPLICATION IS FOR A FLEX II ANNUITY   PLAN CODE 822

12 Owner Retains Right to Change Beneficiary   ☐ Yes ☒ No

9. Is the annuity purchased on a tax-qualified basis?  ☒ Yes ☐ No

13 Anticipated Retirement Age 70
14 Is this contract to replace any existing life insurance policy or annuity policy?  ☐ Yes ☒ No
If so, give complete details

10. If contract is purchased to fund a qualified plan, please indicate appropriate section of Internal Revenue Code

☐ IRA (Section 408)
☐ Self Employed (Section 401)
☒ Corporation (Section 401)
☐ 501 (c) (3) Organization (Section 403b)
☐ Public School System (Section 403b)
☐ Deferred Compensation (Plan Document Enclosed)
☐ Simplified Employee Pension (Section 408)

15. Special Requests.
ANNUITANT RETAINS RIGHT TO CHANGE BENEFICIALLY
X plan Doc w/ Kennth c Lavoie app

15 Home Office Endorsement (For Company use only)
486531

11. Payment Information for Flexible Contract only:
a. Initial Payment $ 1,000
b. Anticipated Annual Payment $ 12,000
c. Mode of Payment (Circle One) (A)   S   Q   PAC

8200P5   JAN 03 1989

**IMPORTANT: MAKE ALL CHECKS PAYABLE ONLY TO JACKSON NATIONAL LIFE INSURANCE CO.**

**GENERAL INFORMATION**

Note that:
1. The acceptance of the Contract issued on this application shall constitute a ratification of any change, correction or addition made by the Company and noted in the space headed "Home Office Endorsements"
2. There has been delivered to the agent with this application $ 1,000 — payable only to Jackson National Life Insurance Company which shall not be considered payment hereunder unless actually honored upon presentation by the Company in the due course of business

3. Upon acceptance of a Contract other than as applied for, this application (including any endorsements in 16 above) shall be for such modified Contract, except that where required by statute or Insurance Department regulation any change in plan, amount, classification or benefits shall be made only upon written agreement.
4. The undersigned hereby represents to the best of his (their) knowledge that each of the statements and answers contained above are full, complete and true.

Cash Received With Application   $ 1,000 —

Dated and Signed at SAN DIEGO CA   on 12 - 22   19 88

54098
Agent Number

Signature of Licensed Agent

Signature of Owner if other than Annuitant   TRUSTEE

Signature of Second Agent if Applicable   Agent Number

Form No. 928B REV. 11/82

To: Jackson National Life Insurance Company

From: Gregory Bond

Re: Policy #0004865310, Philip Bond

Date: February 21, 2020

Attached:

1) Copy Of Jackson Letter Dated February 6, 2020
   - 1 Page

2) Claim Form - 8 Pages

3) Certified Death Certificate - 1 Page

4) Certified Marriage Dissolution - 27 Pages

Total of 37 Pages + Cover Sheet

Fax to: (517) 706- 5513

2020-02-21 11:54         Costco W 130 sign 3236611475 >> FAXCORE         P 2
02/21/2020 15:07:06



Claims Administration

February 6, 2020

Ellen A Bond
c/o Gregory T Bond
29506 Mammoth Ln
Canyon Country, CA 91387

**URGENT: IMMEDIATE REPLY REQUIRED**

Deceased:   Philip G Bond
Policy No.:  0004865310

Dear Ellen A Bond:

Our records indicate that you may have an interest in the unclaimed funds due to the beneficiary of the
above listed policy with an approximate value of $8,050.64.

To date, we have not received the following documents necessary for consideration of this claim.

- Claim Form
- Final Certified Death Certificate

This property may be escheated to the state if the beneficiary does not come forward to claim the funds.
YOUR RESPONSE MUST BE RECEIVED WITHIN 30 DAYS FROM THE DATE OF THIS
LETTER to prevent these funds from being reported to the state of California as unclaimed property.

If you have additional questions or concerns, please contact our Service Center at 888/565-4995,
Monday through Thursday, 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 6:00 p.m. (ET). You may
also contact Jackson via email through "Contact Us" on our website at www.jackson.com.

Sincerely,

Laura Hanson

Laura Hanson
VP, Policy Owner Services

Jackson National Life Insurance Company
1 Corporate Way, Lansing, MI 48951
800/644-4565



2020-02-21 11:57
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE

P 11/38

CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO

ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

**CERTIFICATE OF DEATH** 3201637011714

| | |
|---|---|
| 1. NAME OF DECEDENT-FIRST (Given) PHILIP | 2. MIDDLE GREGORY | 3. LAST (Family) BOND |

| 0189 | 4. DATE OF BIRTH mm/dd/ccyy 02/15/1938 | 5. AGE Yrs 78 | 6. SEX M |

7. HS GRADUATE — YES — WHITE

17. USUAL OCCUPATION MANAGER — ELECTRONICS MANUFACTURING

3780 VISTA CAMPANA S #48

OCEANSIDE — SAN DIEGO — 92057 — 25 — CA

RUTH BOND, WIFE — 3780 VISTA CAMPANA S #48, OCEANSIDE, CA 92057

RUTH — CLARA — SCHULTZ

HARRY — EDWARD — BOND — KS

MARGARET — O'CANE — KS

07/14/2016 — 24780 STEWART ST., LOMA LINDA, CA 92350 — LOMA LINDA UNIV. BODIES FOR SCIENCE

SU — NOT EMBALMED

SAN JACINTO VALLEY MORTUARY — FD1765 — WILMA J WOOTEN, MD MPH — 07/13/2016

VISTA KNOLL SPECIALIZED CARE FACILITY

SAN DIEGO — 2000 WESTWOOD RD — VISTA

G309 — ALZHEIMER'S DEMENTIA — YEARS

NONE

HOUSSAM BAROUDI, MD — A67327 — 07/13/2016

06/27/2016 — 06/29/2016 — 1926 VIA CENTRE, VISTA, CA 92081 — HOUSSAM BAROUDI, MD

'01000103326377()'

004478428

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk

Sep 21, 2017

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE




2020-02-21 11:58    Costco W 130 sign 3236611475 >> FAXCORE    P 12/38
02/21/2020 15:07:06

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE: (619) 544-0880 | FOR COURT USE ONLY |
|---|---|---|

David M. Huffman
HUFFMAN & KOSTAS
1420 Kettner Blvd., Ste. 402
San Diego, CA 92101
ATTORNEY FOR (Name): ELLEN BOND    BAR #: 69026

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
[X] FAMILY COURT BUILDING, 1501-55 SIXTH, SAN DIEGO, CA 92101-1946
[ ] NORTH COUNTY BRANCH, 325 S. MELROSE, VISTA, CA 92083-6627
[ ] EAST COUNTY COURT, 250 E. MAIN, EL CAJON, CA 92020-3913
[ ] SOUTH BAY COURT, 500 THIRD, CHULA VISTA, CA 91910-5694

**MARRIAGE OF**
PETITIONER: ELLEN A. BOND

RESPONDENT: PHILIP G. BOND

**F I L E D**
KENNETH E. MARTONE
Clerk of the Superior Court

SEP 24 1998

By: A. MEYER-JACQUES, Deputy
**FAMILY COURT**

**NOTICE OF ENTRY OF JUDGMENT**

CASE NUMBER:
D 435556

You are notified that the following judgment was entered on (date): **SEP 18 1998**

1. [X]  Dissolution of Marriage

2. [ ]  Dissolution of Marriage – Status Only

3. [ ]  Dissolution of Marriage – Reserving Jurisdiction over Termination of Marital Status

4. [ ]  Legal Separation

5. [ ]  Nullity

6. [ ]  Other (specify):

Date: **SEP 24 1998**

*Kenneth F. Martone*
KENNETH E. MARTONE
CLERK OF THE SUPERIOR COURT

**– NOTICE TO ATTORNEY OF RECORD OR PARTY WITHOUT ATTORNEY –**

Pursuant to the provisions of Code of Civil Procedure section 1952, if no appeal is filed the court may order the exhibits destroyed or otherwise disposed of after 60 days from the expiration of the appeal time.

Effective date of termination of marital status (specify): **SEP 18 1998**
WARNING: NEITHER PARTY MAY REMARRY UNTIL THE EFFECTIVE DATE OF THE TERMINATION OF MARITAL STATUS AS SHOWN IN THIS BOX.

**CLERK'S CERTIFICATE OF MAILING**

I certify that I am not a party to this cause and that a true copy of the Notice of Entry of Judgment was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below, and that the notice was mailed

at (place): SAN DIEGO , California,     KENNETH E. MARTONE ,
on (date): SEP 24 1998           CLERK OF THE SUPERIOR COURT
Date: SEP 24 1998        by _____ Ryde _____ , Deputy
                                    A. RYDAH

ELLEN A. BOND
c/o David M. Huffman
HUFFMAN & KOSTAS
1420 Kettner Blvd., Ste. 402
San Diego, CA 92101-2433

PHILIP G. BOND
3041 Industry St., Unit B
Oceanside, CA 92054

Form Adopted by Rule 1290
Judicial Council of California
1290 (Rev. July 1, 1985)
SUPCT D-21 (Rev. 7-85)

**NOTICE OF ENTRY OF JUDGMENT**
(Family Law)

2020-02-21 11:59          Costco W 130 sign 3236611475 >> FAXCORE                P 13/38
02/21/2020 15:07:06

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address):                    TELEPHONE NO:         FOR COURT USE ONLY
David M. Huffman                                          (619) 544-0880
HUFFMAN & KOSTAS
1420 Kettner Blvd., Ste. 402
San Diego, CA 92101
69026
ATTORNEY FOR (Name):     ELLEN BOND

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:  1501-55 SIXTH AVENUE                          F I L E D
MAILING ADDRESS:  P.O. BOX 128                                KENNETH E. MARTONE
CITY AND ZIP CODE:  SAN DIEGO, CA 92101                       Clerk of the Superior Court
BRANCH NAME:  FAMILY LAW DIVISION                               SEP 18 1998

MARRIAGE OF                                              0304 02 12 BY D. COLLINS, Deputy
PETITIONER:     ELLEN A. BOND                            (2 040 1st Paper Fee           $185.00

RESPONDENT:    PHILIP G. BOND

                        JUDGMENT                            CASE NUMBER:
[X] Dissolution          [ ] Legal separation    [ ] Nullity    D 435556
    [ ] Status only
    [ ] Reserving jurisdiction over termination of marital status
Date marital status ends:  SEP 18 1998

1. This proceeding was heard as follows: [ ] default or uncontested  [X] by declaration under Fam. Code, § 2336  [ ] contested
   a. Date: SEP 18 1998          Dept:          Rm:
   b. Judge (name): William S. Cannon, Judge    [ ] Temporary judge
   c. [ ] Petitioner present in court             [ ] Attorney present in court (name):
   d. [ ] Respondent present in court            [ ] Attorney present in court (name):
   e. [ ] Claimant present in court (name):                          [ ] Attorney present in court (name):
2. The court acquired jurisdiction of the respondent on (date):  04/27/97
   [X] Respondent was served with process      [ ] Respondent appeared

3. THE COURT ORDERS, GOOD CAUSE APPEARING:
   a. [X] Judgment of dissolution be entered. Marital status is terminated and the parties are restored to the status of unmarried persons
      (1) [X] on the following date (specify):  SEP 18 1998
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation be entered.
   c. [ ] Judgment of nullity be entered. The parties are declared to be unmarried persons on the ground of (specify):
   d. [X] Wife's former name be restored (specify): ELLEN A. IFSHIN
   e. [ ] This judgment shall be entered nunc pro tunc as of (date):
   f. [ ] Jurisdiction is reserved over all other issues and all present orders remain in effect except as provided below.
   g. [X] Other (specify): PLEASE SEE ATTACHMENT TO JUDGMENT OF DISSOLUTION WHICH IS
          ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

   h. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: XXXXXXXXXXXXXXXXXXXXXXXXXXXX        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
                                                      JUDGE OF THE SUPERIOR COURT

4. Number of additional pages attached: 24        [X] Signature follows last attachment  p. 25

                                      NOTICE
Please review your will, insurance policies, retirement benefit plans, credit cards, other credit accounts and credit reports,
and other matters you may want to change in view of the dissolution or annulment of your marriage, or your legal separation.
A debt or obligation may be assigned to one party as part of the division of property and debts, but if that party does not pay
the debt or obligation, the creditor may be able to collect from the other party.
An earnings assignment will automatically be issued if child support, family support, or spousal support is ordered.

Form Adopted by Rule 1207          JUDGMENT              Family Code, §§ 2340, 2343, 2346
Judicial Council of California
1207 (Rev. January 1, 1997)         (Family Law)

## MARITAL SETTLEMENT AGREEMENT

The parties to this Agreement, PHILIP G. BOND, hereinafter referred to as "Husband", and ELLEN A. BOND, hereinafter referred to as "Wife", agree as follows:

1.   **STATISTICAL INFORMATION:**

    a.   The parties were married on September 17, 1989.

    b.   There were no children of this marriage.

    c.   Irreconcilable differences have arisen between the parties and these differences have led to an irremediable breakdown of their marriage. Thus, the parties have separated and agreed to live free from any interference by the other.

    d.   The parties separated on April 18, 1997, which is eight (8) years, six (6) months from the date of their marriage. They have not resumed their marital relationship since the date of separation.

    e.   There is presently on file in the Superior Court of the State of California, County of San Diego, an action for the dissolution of the parties' marriage filed as Case Number D 435556. The Petition was filed by Wife on April 18, 1997. Husband executed a Notice and Acknowledgement of Receipt on April 27, 1997. The Notice and Acknowledgement of Receipt which was executed by Husband was filed with the Court on May 13, 1997.

2.   **PURPOSE OF THIS AGREEMENT:** The purpose of this Agreement is to make a final and complete settlement of the parties' rights and obligations pertaining to:

PGB          EAB

Page 1 of 24

    a.   Identification and designation of their respective separate property and separate obligations;

    b.   Identification and division of their community or co-owned property and community or co-owed obligations;

    c.   Spousal support; and

    d.   Attorney fees.

This Agreement also sets forth specific matters over which a Court of competent jurisdiction shall retain jurisdiction.

    3.    **SEPARATE LIVES AND PROPERTY:**

    a.   The parties shall live separate and apart and except for the duties and obligations imposed and assumed under this Agreement, each shall be free from interference, authority, and control of the other as fully as though he or she were single and unmarried. Each party may conduct, carry on, and engage in any employment, profession, business, or trade which to him or her may seem advisable for his or her own use or benefit without, and free from, any control, restraint, or interference, direct or indirect, by the other party and in all respects as if each were unmarried.

    b.   Except as expressly provided to the contrary in this Agreement, any property acquired by either party from or after the date of separation shall be the sole and separate property of the one acquiring it. Each party waives any and all rights in or to such property and confirms it to be the sole and separate property of the party acquiring it from and after the date of separation. The earnings from personal services of either party after the date of separation shall be the sole and separate property of the one acquiring them.

PGB     EAB

2020-02-21 12:00
02/21/2020 15:07:06

Costco W 130 sign 3236611475 >> FAXCORE                    P 16/38

c.    Except as expressly provided to the contrary in this Agreement, any obligation incurred by either party from or after the date of separation shall be the sole and separate obligation of the party incurring it, and the party shall assume, pay and hold the other party harmless from any obligation so incurred.

4.    **SPOUSAL SUPPORT:**

a.    Husband's obligation to provide spousal support to Wife is terminated effective forthwith.

b.    Wife's obligation to provide spousal support to Husband is terminated effective forthwith.

5.    **DISCLAIMER OF REPRESENTATION RE VALUE:** The parties hereto have acquired various personal and real properties of speculative value. It is understood by the parties that neither party makes any representations to the other as to the value of any property, community or separate, and each party relies on his or her own investigation and judgment with respect to all property and all matters covered by this Agreement.

6.    **HUSBAND'S SEPARATE PROPERTY:** The following assets and/or obligations are confirmed to Husband as his sole and separate property:

a.    Husband's clothing, jewelry and personal effects.

b.    Any bank accounts presently held in Husband's name.

c.    Husband's earnings after April 18, 1997, and accumulations thereon.

Wife acknowledges that she neither has nor claims any right, title or interest in any such property.



PGB    EAB

Page 3 of 24

7.  **WIFE'S SEPARATE PROPERTY:**  The following assets and/or obligations are confirmed to Wife as her sole and separate property:

  a.  Wife's clothing, jewelry and personal effects.

  b.  Any bank accounts presently held in Wife's name.

  c.  Wife's earnings after April 18, 1997, and accumulations thereon.

  Husband acknowledges that he neither has nor claims any right, title or interest in any such property.

8.  **DIVISION OF COMMUNITY PROPERTY AND CO-OWNED PROPERTY:**

  a.  Husband and Wife hereby divide their community and co-owned property so that the aggregate fair market value of the community and co-owned property received by each is approximately equal, considering the apportionment of any community or joint liabilities. This division is fair and approximately equal. The community or co-owned assets of the parties shall be divided as follows:

    (1)  **Assets awarded to Husband.**  Husband shall receive, as his sole and separate property, the following assets:

      (a)  The household furniture, furnishings and appliances in Husband's possession.

      (b)  One-half (1/2) of the net proceeds from the sale of the real property located at 1425 Glenwood Drive, San Diego, California, 92103. By execution of this Agreement, Husband authorizes Wife's counsel, David M. Huffman, to disburse the proceeds in his segregated trust account one-half (1/2) to Husband and one-half (1/2) to Wife.

(c) The 1984 Cadillac Coupe de Ville automobile.

(d) The 1967 Mercury Cougar automobile.

(e) All right, title and interest in Husband's business known as PME (Price, Manufacturing & Engineering).

(2) **Assets awarded to Wife.** Wife shall receive, as her sole and separate property, the following assets:

(a) The household furniture, furnishings and appliances in Wife's possession.

(b) One-half (1/2) of the net proceeds from the sale of the real property located at 1425 Glenwood Drive, San Diego, California, 92103. By execution of this Agreement, Wife authorizes her counsel, David M. Huffman, to disburse the funds in his segregated trust account one-half (1/2) to Husband and one-half (1/2) to Wife.

(c) The 1988 BMW 325i automobile.

(3) Husband has an IRA account with Bank of America, no. ▮▮▮▮▮▮▮, which had a balance of $14,940.92 as of March 31, 1997. In order to equalize the division of community assets and debts, Husband shall forthwith transfer the sum of $10,000 from this IRA account into an IRA account in Wife's name which will be designated by Wife. It is the parties' intent that the rollover of $10,000 from Husband's IRA account into an IRA account established by Wife shall constitute a nontaxable event. If the Internal Revenue Service or the Franchise Tax Board for some reason attempts to tax this transaction, the Court shall reserve jurisdiction over the allocation of any tax liability, including

PGB    BAB

Page 5 of 24

interest and penalties. The remaining balance in Husband's IRA account is awarded to Husband as his sole and separate property. The $10,000 rolled over into Wife's new IRA account is awarded to Wife as her sole and separate property.

(4) By execution of this Agreement, Husband and Wife each represent to the other that they do not own any interest in any pension plan, profit sharing plan, IRA accounts or any other form of retirement benefits other than those specified in this Marital Settlement Agreement.

9. **NO OTHER PROPERTY:** Each party warrants to the other that the warrantor does not own any property of any kind, other than the property set forth in this Agreement. If it later appears that either warrantor now owns any other property and that the warrantee has an interest in that other property, the warrantor shall transfer or pay to the warrantee, at the warrantee's election:

a. An amount equal to the warrantee's interest in such other property, if it is reasonably susceptible to division;

b. The full market value of the warrantee's interest on the effective date of this Agreement; or

c. The full market value of the warrantee's interest at the time the warrantee discovers the warrantor's ownership in the property.

This Agreement is not intended to impair the availability, in a Court of competent jurisdiction, of any other remedy arising from the undisclosed ownership of any property.

10. **AFTER ACQUIRED PROPERTY:** Any property acquired by either party from and after the date of this Agreement shall be the sole

PGB    EAB .

and separate property of the one so acquiring it; and each of the
parties waives any and all property rights in or to such future
acquisitions of property as the sole and separate property of the
one so acquiring the same from the effective date of this
Agreement.

11.    NO UNDISCLOSED GIFTS: Each party warrants to the other
that the warrantor has not made, without the warrantee's knowledge
and consent, any gift or disposition of community property other
than a disposition in exchange for a valuable consideration to the
community. If it later appears that the warrantor made a
disposition of community property contrary to this warranty, the
warrantor shall pay the warrantee one-half ($\frac{1}{2}$) of the fair market
value of the community property measured, at the warrantee's
election:

a.    On the effective date of this Agreement; or

b.    At the time the warrantee discovers the disposition,
less any appreciation in value attributable solely to the acts of
the donee(s) and his successor(s).

This Agreement shall not impair the availability, in a Court of
competent jurisdiction, of any other remedy arising from the
undisclosed disposition of any property.

12.    OBLIGATIONS:

a.    Wife shall assume the existing balance owed on the
MBNA loan, no. _____ in the approximate amount of
$18,000.   Wife shall use her best efforts to have the existing
balance transferred into her name alone.   If MBNA refuses to
transfer the existing balance into an account in Wife's sole name,

Page 7 of 24

Wife shall make the payments on this loan in a timely fashion and shall hold Husband harmless from any liability thereon.    The parties each warrant to the other that there are no other outstanding unsecured debts for which the other may be liable.

b.    Any liability or obligation incurred at any time by either party and not expressly identified in this Agreement as payable in whole or part by the other party, shall be paid solely by the one incurring the liability or obligation.

c.    Except as may be expressly provided to the contrary in this Agreement, the party to whom an item of property is entirely allocated under this Agreement shall be solely responsible for all obligations incurred at any time relative to such item, including, but not limited to, any encumbrances, taxes and insurance against such item, and, except where otherwise provided in this Agreement, the parties shall be responsible for payment of their proportionate share of all obligations incurred at any time relative to any asset in which the parties both retain interests.

d.    The party responsible for payment of obligations pursuant to this section shall indemnify and hold the other harmless from all liabilities, costs and expenses relative thereto, including, but not limited to, reasonable attorneys fees and court costs which may be incurred by reason of the necessity to defend any claim or suit brought against the other party to enforce any such obligation.

13.    **HOLD HARMLESS PROVISION**: In the event that a party to this Agreement is required to pay and hold the other party harmless from some debt, and the party fails to hold the other party free

PGB    EAB

Page 8 of 24

and harmless from that debt, then the other party may pay some or
all of such debt and deduct said payment from any monies owed by
the other party to the party who breached the hold harmless
covenant; provided, however, a party shall not pay the debt without
first advising the other party of his or her intention to do so and
waiting seven (7) days from the date such notice is given; and
provided, further, the set off provided shall not be allowed with
regard to any claim or demand as to which within said seven (7) day
period the other party represents that he or she has a legal
defense, unless and until the asserted legal defense is decided or
settled adversely to that party. This remedy shall be in addition
to any other remedies available for the enforcement of payment of
debts.

14.   **CREDIT HISTORY:** The parties agree that the credit history
established by them during their marriage shall be deemed to have
been the credit history of both parties, notwithstanding practices
of creditors and credit reporting agencies which may have reported
such credit history in the name of Husband only or Wife only.
Husband agrees that he shall cooperate and execute all such
documents as may be reasonably requested by Wife from time to time
to enable Wife to provide her prospective creditors with the full
credit history of the parties during their marriage. Nothing herein
shall be deemed as creating a liability of Husband for debts
created by Wife on the basis of credit information obtained as
described above.

PGB        BAB

Page 9 of 24

15.   **MUTUAL RELEASES:**

   a.   Except as otherwise expressly provided in this Agreement, each party releases the other and the other's heirs and assigns, from any and all liabilities, debts or obligations and from any and all claims and demands, it being understood that by this present Agreement, Husband and Wife intend to settle all aspects of their respective property rights or claims arising out of their marital relationship.

   b.   Husband warrants to Wife that he has not incurred, and he covenants that he shall not incur, any liability or obligation for which Wife is or may be liable, with the exception of any obligations identified in this Agreement. Husband covenants, except as may be expressly provided otherwise in this Agreement, that if any claim, action or proceeding shall hereafter be brought seeking to hold Wife liable on account of any of his debts, liabilities, acts or omissions, he shall, at his sole expense, defend her against any such claim or demand (whether or not well founded) and that he shall indemnify and hold her free and harmless from all costs, expenses and liabilities in connection therewith, including but not limited to, Wife's reasonable attorney fees and costs incurred by reason of the necessity to defend any such claim or suit.

   c.   Wife warrants to Husband that she has not incurred, and she covenants that she shall not incur, any liability or obligation for which Husband is or may be liable, with the exception of any obligations identified in this Agreement. Wife covenants, except as may be expressly provided otherwise in this

PGB   HAB

Page 10 of 24

Agreement, that if any claim, action or proceeding shall hereafter be brought seeking to hold Husband liable on account of any of her debts, liabilities, acts or omissions, she shall, at her sole expense, defend him against any such claim or demand (whether or not well founded) and that she shall indemnify and hold him free and harmless from all costs, expenses and liabilities in connection therewith, including but not limited to, Husband's reasonable attorney fees and costs incurred by reason of the necessity to defend any such claim or suit.

16.  **SOCIAL SECURITY BENEFITS**: The social security benefits of each party which are now or subsequently declared to be community property, if any, shall be declared to be the sole and separate property of the party who paid into the fund giving rise to such benefits. This waiver by each party is not intended to prohibit any rights that may be derivative in nature, such as those that arise by virtue of having been married ten (10) or more years.

17.  **WAIVER OF RIGHTS IN OTHER'S ESTATE**: Each of the parties waives and renounces any and all rights to inherit the estate of the other at the other's death, or to receive any property of the other under a Will executed before the effective date of this Agreement, or to claim any family allowance or probate homestead from the other's estate, or to act as executor or other personal representative under a Will of the other executed before the effective date of this Agreement, or to act as administrator, or as administrator with the Will annexed, of the other's estate.

18.  **ADVISEMENTS**: Each party acknowledges hereby being advised:

PGB          BAB

Page 11 of 24

a.   To consider the immediate drafting and examination of a new Will; and

b.   To review all property rights and employment benefits which have a survivorship or inheritance factor (such as life insurance, pensions, inter vivos trusts, joint tenancy real and personal property, and bank accounts); and

c.   To ensure that said Will and said rights and benefits accurately reflect the current desires of such party to this Agreement.

19.   RESERVATION OF JURISDICTION: In the Judgment anticipated by this Agreement, there shall be reserved to the San Diego County Superior Court, in addition to the jurisdiction specifically mentioned elsewhere in this Agreement, the jurisdiction to:

a.   Supervise the payment of any obligation ordered paid or allocated in this Agreement.

b.   Supervise the division of assets as agreed to herein.

c.   Supervise the execution of any documents required or reasonably necessary to carry out the terms of this Agreement.

d.   Supervise the overall enforcement of this Agreement.

20.   INCORPORATION OF AGREEMENT: This Agreement in its entirety shall be incorporated into, made a part of, and merged into the Judgment entered in the pending dissolution of marriage proceeding. This Agreement is not conditional upon any such incorporation, merger or filing. Husband and Wife shall submit to an order requiring that they carry out and perform each and every provision of this Agreement on their part to be observed or

PGB   EAB

Page 12 of 24

performed. Provided that the Judgment incorporates this Agreement,
the parties further agree that this proceeding may be heard on the
default calendar without further notice to either party, on any
date convenient to the Court and may be heard before a pro-tem
Judge.

21.   **WAIVERS AND JUDICIAL ACTION:** With regard to the Judgment
that incorporates this Agreement, the parties waive statements of
decision, the right to a new trial, the right to petition for a
rehearing, the right to appeal, and any rights under the Soldiers
and Sailors Civil Relief Act of 1940, as amended.

22.   **OTHER TERMS AND CONDITIONS:**

a.   **Successors:** Except as otherwise expressly provided
in this Agreement, each and every covenant and agreement contained
herein shall inure to the benefit of, and shall be binding on the
heirs, legatees, devisees, assignees, administrators, executors and
successors-in-interest to the parties hereto, but no provision of
this Agreement shall ever be deemed or construed to be made for the
benefit of any person other than the two (2) parties who have
executed this Agreement and their respective heirs, legatees,
devisees, assignees, administrators, executors and successors-in-
interest.

b.   **Entire Agreement:** This Agreement and any other
instrument(s) executed contemporaneously herewith contain the
final, complete and exclusive agreement of the parties concerning
the subject matters covered.

c.   **Effect of Waiver:** No waiver of the breach of any
terms or provisions of this Agreement shall be or shall be

PGB          EAB

Page 13 of 24

2020-02-21 12:03          Costco W 130 sign 3236611475 >> FAXCORE          P 27/38
02/21/2020 15:07:06

construed to be a waiver of any preceding or succeeding breach of the same or any other provision hereof.

     d.  **Modification or Termination:** This Agreement shall not be altered, amended, modified or terminated except by an instrument in writing executed by both Husband and Wife. Any such agreed alteration, amendment, modification or termination shall be present to the Superior Court for the County of San Diego, California and shall be incorporated into the Judgment of Dissolution of the parties' marriage. The parties agree that the Court shall reserve jurisdiction to incorporate such agreed alterations, amendments, modifications or terminations into the Judgment.

     e.  **No Third Party Beneficiaries:** This Agreement is solely for the respective benefits of Husband and Wife.

     f.  **Unenforceability of Part of the Agreement:** Should any section, provision or portion of this Agreement be held to be invalid, illegal, void or unenforceable, then such section, provision or portion shall be deleted from this Agreement and it shall be read as though such invalid, illegal, void or unenforceable section, provision or portion was never included and the remainder of this Agreement, excluding such invalid, illegal, void or unenforceable section, provision or portion, shall nevertheless subsist and continue in full force and effect.

     g.  **Applicable Law:** This Agreement is entered into in the State of California and shall be construed and interpreted under and in accordance with the laws of the State of California



PGB    EAB

2020-02-21 12:03          Costco W 130 sign 3236611475 >> FAXCORE          P 28/38
02/21/2020 15:07:06

applicable to agreements made and to be wholly performed in the State of California.

      h.   **Representations:** Neither of the parties hereto, nor any of his or her representatives, has made any representation or warranty to the other party upon which the other party is relying in entering into this Agreement, except as herein expressly provided.

      i.   **Documents and Cooperation:**

      (1)  Each of the parties agrees on the request of the other, to execute and deliver any instrument, furnish any information and to perform any other acts reasonably necessary to carry out the provisions of this Agreement without undue delay or expense. A party who fails to comply with this subsection shall reimburse the other party for all costs and expenses, including attorney fees and court costs that, as a result of such failure, become reasonably necessary to carry out this Agreement. Upon a party's failure to execute a document reasonably required to carry out the provisions of this Agreement, the parties agree that the Court may appoint the County Clerk, upon ex parte application with appropriate notice, as an elisor to sign such documents on behalf of the party who failed to do so voluntarily. This section shall not constitute a waiver of any privilege afforded by law.

      (2)  The party to whom a particular asset is allocated shall pay any recording fee or transfer cost required to evidence the division of property set forth herein.



PGB     EAB

Page 15 of 24

(3)   For any assets divided in kind, the parties shall share any such fees and costs in the same proportions as the parties hold their interests in such assets under this Agreement.

j.   **Captions and Interpretations:** The captions of this Agreement are employed solely for convenience and are not to be used as an aid in interpretation. No provision of this Agreement is to be interpreted for or against either party because that party or his or her legal representative drafted the provision.

k.   **Enforcement of Terms of Agreement - Fees and Costs:** Should it be necessary for either party to bring an action in this or any other Court for the enforcement of any of the provisions of this Agreement, the prevailing party in any such action shall be entitled to an award from the other party in any such action of their reasonable attorney fees and costs incurred in any such action.

23.   **REPRESENTATION BY COUNSEL AND KNOWLEDGE OF AGREEMENT:**

a.   The parties acknowledge that Wife has retained David M. Huffman of the law firm of Huffman & Kostas to advise Wife in connection with the pending dissolution of marriage proceeding and with the negotiations and preparation of this Agreement. By execution of this Agreement, Husband acknowledges that he been advised by David M. Huffman of his right to seek independent legal counsel and that David M. Huffman cannot and has not sought to represent Husband at the same time that he is representing Wife. Husband acknowledges by executing this Agreement that he has either obtained independent legal counsel or that he specifically has chosen not to seek the advice of independent legal counsel.

PGB   EMB

Page 16 of 24

    b.    Each party acknowledges and declares that he or she respectively:

    (1)   Is fully and completely informed as. to the facts relating to the subject matter of this Agreement, and as to the rights and liabilities of both parties;

    (2)   Enters into this Agreement voluntarily, free from fraud, undue influence, coercion or duress of any kind;

    (3)   Has given careful and mature thought to the making of this Agreement; and

    (4)   Fully and completely understands each provision of this Agreement.

    24.   **ATTORNEYS FEES**: Husband shall forthwith pay Wife the sum of $500 as and for reimbursement of Wife's attorney's fees and costs incurred in connection with the preparation of the pleadings associated with the pending dissolution proceeding.  By execution of this Agreement, Husband acknowledges that David M. Huffman does not represent Husband in connection with this matter even though Husband has contributed toward Wife's attorney's fees and costs.

    25.   **REIMBURSEMENT WAIVER**:

    a.    Except as may be specifically provided to the contrary in this Agreement, as part of the division of the community property, each party waives all rights to reimbursement for the following:

    (1)   Epstein credits (In re Marriage of Epstein (1979) 24 Cal. 3d 76) and all rights to reimbursement to which a party may be entitled as a result of the payment of community obligations since the date of separation;

PGB    EAB

(2) <u>Watts</u> credits (<u>In re Marriage of Watts</u> (1985) 171 Cal. App. 3d 366) and all rights to reimbursement to which a party or the community may be entitled as a result of one party's use of community assets since the date of separation;

(3) <u>Frick</u> credits [<u>In Re Marriage of Frick</u> (1986) 181 Cal.App. 3d 997] and all rights of reimbursement to which a party or the community may be entitled due to one party's use of community assets for the improvement of separate property during marriage.

(4) All rights to reimbursement pursuant to Family Code §2640, or otherwise, for separate property contributed to the acquisition, maintenance or improvement of community property;

(5) All rights to reimbursement pursuant to Family Code §2641 or otherwise due the community or a party for contributions made by the community or either of the parties to the education or training of a party; and,

(6) All rights to reimbursement pursuant to Family Code §915, or otherwise, due the community for payment by the community of a child or spousal support obligation of either party arising from a prior marriage or relationship.

b. The reimbursement rights and claims of the parties have been taken into consideration in determining any equalizing payment required by this Agreement. Therefore, these waivers constitute a part of the division of the community estate.

26. <u>TERMINATION OF JOINT TENANCIES</u>: Effective as soon as both parties have signed this Agreement, any and all joint tenancy ownerships (with rights of direct survivorship) between the parties

PGB    EAB

are terminated. The parties shall own those assets as tenants-in-common. This section applies to all ownerships including, but not limited to, real property, vehicles or institutional accounts. Upon execution of this Agreement and without regard to record title status, each party waives all rights of direct survivorship from the other party.

27.   **REPORTING OF INCOME AND INDEMNITY:** It shall be the responsibility of each party to report all income, losses or deductions (or other taxable consequences) to the taxing authorities in a manner consistent with the terms of this Agreement. In the event either party reports or fails to report income, losses or deductions (or treats the division of property) in a manner inconsistent with the terms of this Agreement, that party shall indemnify the other party for reasonable attorneys and accountants fees, and costs of litigation in defending the reporting required by this Agreement against the other party or taxing authorities. In addition, each party shall indemnify the other for taxes, interest, penalties and other assessments arising as a result of the reporting of income (or the treating of the division of property) in a manner inconsistent with the terms of this Agreement. This Section shall apply to all forms of tax returns required by any governmental agency.

28.   **TAX DOCUMENTATION:**

a.   Each party shall forward to the other a copy of any tax deficiency notice or other correspondence or documentation received from any federal, state or local taxing authority relating to any joint returns filed by Husband and Wife. Each party agrees

PGB      EAB

Page 19 of 24

2020-02-21 12:05          Costco W 130 sign 3236611475 >> FAXCORE          P 33/38
02/21/2020 15:07:06

to cooperate fully with the other and to execute any document reasonably requested by the other, and to furnish information and testimony with respect to any tax liability asserted by taxing authorities on any joint return.

        b.   A party shall reimburse the other party for all damages and costs incurred as a result of a party's failure to abide by the terms of this Section, including reasonable attorney's fees and costs, and accountant's fees, whether incurred in defending an action by the taxing authorities or in enforcing the provisions of this Section.

    29.  **LIABILITY ON PRIOR TAX RETURNS:**

        a.   Each party shall pay fifty percent (50%) of all liabilities and expenses, including but not limited to, accounting and legal fees, relating to any tax liabilities asserted by any federal, state or local taxing authorities arising out of any review of the parties' personal income tax returns for any period when they filed joint returns. Each party shall, however, be solely responsible for any liabilities and expenses attributable to a party's intentional misstatement of taxable income or deductions if such intentional misstatement was not known to the other party.

        b.   A party shall reimburse the other party for all damages and costs incurred as a result of a party's failure to abide by the terms of this Section, including reasonable attorney fees and costs and accountant fees, whether incurred in defending an action by the taxing authorities or enforcing the provisions of this Section.



PGB          EAB

30.  **MUTUAL WAIVER OF EXCHANGE OF FINAL DECLARATION OF
DISCLOSURE, SCHEDULE OF ASSETS AND DEBTS AND INCOME AND EXPENSE
DECLARATION:** Husband and Wife have agreed to waive the preparation
and service of final disclosure declarations including Income and
Expense Declarations and Schedules of Assets and Debts. This waiver
is made in accordance with the provisions of Family Code Section
2105(c). The parties specifically acknowledge as follows:

a.    Both parties have complied with Family Code Section
2104 and the Preliminary Declarations of Disclosure have been
completed and exchanged.

b.    Both parties have completed and exchanged current
Income and Expense Declarations.

c.    This waiver is knowingly, intelligently and
voluntarily entered into by each of the parties.

d.    Each party understands that by signing this waiver,
he or she may be affecting his or her ability to have the judgment
set aside as provided by California law.

31.  **VEHICLES-HOLD HARMLESS:**

a.    Husband and Wife shall each hold the other free and
harmless from the use and operation of any vehicle confirmed or
awarded to the respective party.

b.    If any claim, action or proceeding is later brought
seeking to hold Wife liable on account of the future use and
operation of a vehicle confirmed or awarded to Husband, Husband
shall defend, indemnify and hold Wife harmless from all
liabilities, costs and expenses relative to that claim, including
attorneys fees and costs incurred by Wife in defending or

PGB   EAB

responding to any collection claim, action or proceeding and any amounts paid by Wife in satisfaction of any judgment or other award.

     c.    If any claim, action or proceeding is later brought seeking to hold Husband liable on account of the future use and operation of a vehicle confirmed or awarded to Wife, Wife shall defend, indemnify and hold Husband harmless from all liabilities, costs and expenses relative to that claim, including attorneys fees and costs incurred by Husband in defending or responding to any collection claim, action or proceeding and any amounts paid by Husband in satisfaction of any judgment to other award.

    Each of us has read this Agreement and is fully aware of its content and its legal effect.

    THE FOREGOING IS HEREBY AGREED TO BY:

DATED:   6-23-98

                         Husband, PHILIP G. BOND

DATED:   7-13-98

                         Wife, ELLEN A. BOND

PGB    EAB

2020-02-21 12:06          Costco W 130 sign 3236611475 >> FAXCORE          P 36/38

02/21/2020 15:07:06

STATE OF CALIFORNIA    )
                       )  ss
COUNTY OF SAN DIEGO    )

On ___June 23 1998___, before ___Karen Haywood___, notary public, personally appeared PHILIP G. BOND, personally known to be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS MY HAND AND OFFICIAL SEAL..

_____(signature)_____          KAREN HAYWOOD
                                        Commission # 1040589
                                        Notary Public — California    (seal)
                                        San Diego County
                                        My Comm. Expires Oct 2, 1998

STATE OF CALIFORNIA    )
                       )  ss
COUNTY OF SAN DIEGO    )

On ___4/13/98___ before ___MOHINDER S. GULATI___, notary public, personally appeared ELLEN A. BOND, personally known to be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledge to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS MY HAND AND OFFICIAL SEAL.

_____(signature)_____                              (seal)

STATE OF NEW YORK
COUNTY OF NEW YORK
SWORN BEFORE ME

                    MOHINDER S. GULATI
                    Notary Public, State of New York
                    No. 31-4659357
                    Qualified in New York County
                    Commission Expires Nov. 30, 199_

                                        PGB          EAB

Page 23 of 24

## WIFE'S ATTORNEY'S CERTIFICATION

The undersigned hereby certifies that he is an attorney at
law, duly licensed to practice in the state of California, and he
has been engaged by ELLEN A. BOND (hereinafter referred to as
"Wife"), one of the parties to the foregoing Marital Settlement
Agreement; that he has advised and consulted with Wife with respect
to her rights and those of Husband and has fully explained to her
the legal significance of the Marital Settlement Agreement and the
effect which it has upon her rights. Wife, after being fully
advised by the undersigned, acknowledged to the undersigned that
she fully understood the terms of the Marital Settlement Agreement
and its legal effect, and she executed the Marital Settlement
Agreement freely and voluntarily. The undersigned has no reason to
believe that Wife did not understand the terms and effects of the
Marital Settlement Agreement or that she did not freely and
voluntarily execute the Agreement. No waiver of the attorney-client
privilege of confidentiality is intended by this certification.

DATED: 7-1-98                    HUFFMAN & KOSTAS

By: _____
    DAVID M. HUFFMAN
    Attorneys for Wife

Page 24 of 24

2020-02-21 12:06          Costco W 130 sign 3236611475 >> FAXCORE          P 38/38

02/21/2020 15:07:06



CLERK'S CERTIFICATE

The foregoing document, consisting of _____ page(s), is a full, true, and correct copy of the ☒original ☐copy on file in this office.

Clerk of the Superior Court

2 0 FEB 2020    By _____

Date          Deputy

Pam Stidham

## Annuity Death Benefit Claim Form



**JACKSON®**

NATIONAL LIFE INSURANCE COMPANY

Home Office: Lansing, Michigan
www.jackson.com

### Important Instructions for Prompt Settlement

• Use dark ink only to complete this claim form. Print or type.

• Claimant must sign, print name and date the claim form on page 7.

• Include a certified copy of the finalized death certificate for the deceased with manner of passing.

• If the claimant is a Trustee, please provide a complete copy of the trust agreement, including all amendments and the Trust Tax Identification Number.

• If the claimant is an Executor, Administrator, Guardian or other legal representative, please provide a certified copy of the court appointment.

• If the claimant is an Attorney-in-Fact on behalf of the beneficiary, include the Power of Attorney instrument.

• If any of the beneficiaries named in the Contract are deceased, please provide a copy of their death certificate.

• If the claimant is an ex-spouse, please provide a copy of the divorce decree and property settlement agreement.

• If the claimant is a non-resident alien, please provide the W-8BEN form and Individual Taxpayer Identification Number.

### DECEASED INFORMATION (please print)

| Deceased's Name (First) (Middle) (Last) | | | Other Name(s) by which Deceased was known |
|---|---|---|---|
| PHILIP | GREGORY | BOND | |

| Date of Birth (mm/dd/yyyy) | Date of Death (mm/dd/yyyy) | Marital Status of the Deceased |
|---|---|---|
| 02/15/1938 | 07/01/2016 | ☒ Married ☐ Divorced ☐ Widowed ☐ Single |

| Social Security Number of Deceased (IMPORTANT) | Contract Number(s) for which you are claiming benefits |
|---|---|
| ▮▮▮-2108 | 1. 0004865310   2. |

### CLAIMANT INFORMATION (please print)

| Claimant's Name (First) (Middle) (Last) | | | Claimant's Social Security Number |
|---|---|---|---|
| GREGORY | T. | BOND | ▮▮▮2725 |

| Name of Non-natural Entity Claimant (if applicable) | Tax Identification Number |
|---|---|
| | |

| Claimant's Physical Address (No P.O. Boxes) | City | State | ZIP Code |
|---|---|---|---|
| 29506 MAMMOTH LANE | CANYON COUNTRY | CA | 91387 |

| Claimant's Mailing Address | City | State | ZIP Code |
|---|---|---|---|
| 29506 MAMMOTH LANE | CANYON COUNTRY | CA | 91387 |

| Date of Birth (mm/dd/yyyy) | Relationship to the Deceased | Daytime Phone Number (including area code) |
|---|---|---|
| 09/14/1964 | SON | ▮▮▮ |

| Claimant's E-Mail Address | US Citizen? ☒ Yes ☐ No |
|---|---|
| ▮▮▮ | Currently Residing in US? ☒ Yes ☐ No |

**Do you wish to take the deceased's Required Minimum Distribution (RMD)?** ☐ Yes ☐ No

• If no dollar amount is indicated, the RMD will be calculated for you. $ _____

• Note: Please complete Notice of Withholding on page 3.

• This option may only be elected in conjunction with Options A, B, C, D or E.

Z1142A 03/18

2020-02-21 11:55                Costco W 130 sign 3236611475 >> FAXCORE                P 4/38

02/21/2020 15:07:08

**Please Select** One of the Following Options (A, B, C, D or E), Then Sign and Date the Form.

**A. Lump-Sum Distribution and 5 Year Deferral Options** — *if you select this option, you must also complete the* "Notice of Withholding" *section on page 3.*

### Choose one of the Payment Options below:

Jackson National Life Insurance Company® (Jackson®) will make payment of annuity contract proceeds due you in a lump-sum, or in increments determined by you within 5 years.

### 1. Lump-Sum

☒ Please send me a check for my proceeds.

☐ Please wire my proceeds. I acknowledge there will be a $20.00 wire fee and have attached a copy of a voided check.

### 2. 5-Year Deferral Option

☐ I elect to withdraw the Death Benefit within five years. I would like to withdraw $ [_____] immediately and understand that I must submit the Annuity Partial or Full Liquidation Request, form X3101, to withdraw the remainder of the benefit. **Please Note:** this option is not available for IRAs and other qualified plans if the deceased died after the RMD beginning date (generally April 1 after age 70½).

Note: In order for any withdrawal to be treated as a direct exchange, transfer or rollover, you must submit the transferring company's Letter of Acceptance and required paperwork. Do you wish to advise us that this withdrawal will be treated as a direct exchange, transfer or rollover? ☐ Yes

---

**B. Spousal Continuation Option** — *if you select this option, you must also complete Section F, "Beneficiary Designation."*

☐ As the spouse of the deceased, I elect to continue the Contract in my name. **Note:** If you choose this option you do not need to return the Contract to Jackson.

If the contract has the IncomeAccelerator **Lifetime Income Benefit (LIB)**, it will terminate automatically upon election of the Spousal Continuation Option unless you are a covered life under the LIB with joint option. If you are a covered life under the LIB with joint option, the LIB with joint option will remain in effect upon continuation of the Contract and may be terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIB provision. If you are covered under the LIB with joint option, you may set or change the activation date by submitting a completed Activation Form (X4391). **Please see Important Information on page 8 for more information regarding the ability to set, change or cancel the Activation Date.**

If the contract has the LifePay **Lifetime Income Rider (LIR)**, you may elect to terminate the LIR benefit upon election of the Spousal Continuation Option. If you elect to terminate the LIR, a pro rata LIR Charge will be assessed for the period since the previous Indexed Option Anniversary, applicable charges will be stopped thereafter and no benefit will be available. If no election is made on the continuation date, the LIR will remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision. If you are covered life under the joint benefit, the joint LIR remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision.

☐ I elect to continue the LIR.

☐ I elect to terminate LIR.

Z1142A 03/18

**C. Systematic Withdrawal Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 3 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5. If you select an Irrevocable Systematic Withdrawal (ISW) or Stretch IRA option, no indexed options will be available to you (if currently applicable), and interest will be credited at a rate based on the current and guaranteed interest rates Jackson credits on fixed annuity contracts it currently offers; that interest rate may be less than the rates Jackson credits to the Fixed or Fixed Indexed Annuity.*

I choose to take distributions over my life expectancy using the following option:

| | **IRA:** I choose to take distributions over my life expectancy **(STRETCH IRA)**. While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you were to die prior to receiving all payments, your beneficiary(ies) may continue any such distributions or take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

| | **Non-Qualified Annuity:** I choose to take distributions over my life expectancy (ISW). While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you die prior to receiving all payments, your beneficiary must take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

| | **IRA Spousal Stretch Deferral:** I elect to defer stretch payments at this time. I understand in the future I must contact the Service Center for future distributions.

**Please select a Mode:** | | Monthly | | Quarterly | | Semi-Annually | | Annually

Process the first payment as of (mm/dd/yyyy) [        ]. (Calendar days 29, 30, and 31 are not allowed.) If an initial payment date is not indicated, the first payment will begin 30 days after this form is received by the Claims Service Center.

---

**Notice of Withholding** — *If you have selected option A or C, or if you have requested to take the deceased's RMD, you must complete this section.*

---

**Note:** Taxes will be withheld if no election is made.

**Federal Tax Withholding** The taxable portion of the distribution made to you will be subject to 10% (20% for eligible rollover distributions*) federal income tax withholding unless you elect not to have withholding apply.

1. [X] **Do not withhold federal income tax from my distribution.** (If this box is checked, do not check box 2 or 3 below.) This option is not available for an eligible rollover distribution from 403(b) contracts. If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.

2. | | Withhold 10% (20% for eligible rollover distributions*) federal income tax from my distribution.

3. [ ] In addition to the instructions in No. 2 above, please withhold the following additional percentage: [        ] %.

**State Tax Withholding** (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

4. | | "Yes," please withhold the following percentage for state income taxes: [        ] %.

5. [X] **"No,"** do not withhold state income tax.

*An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the Owner. However, such eligible rollover distribution does not include: (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Owner or the joint lives (or joint life expectancies) of the Owner and the Owner's beneficiary, or for a specified period of ten (10) years or more; (2) any distribution required under Code Section 401(a)(9); (3) any hardship distribution; and (4) the portion of any distribution that is not included in gross income.



**D. Benefit Continuation Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

☐ I elect to continue the periodic benefit checks the Annuitant was receiving.

**E. Income Option Election** (Monthly Benefit Must Be $50 or More.) — *If you select one of these options, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

If an illustration is desired, please contact our office.

** ☐ **Income Option A — (Life Only)**

Equal payment will be made to the annuitant as long as he or she is living. Benefits cease at the death of the annuitant. There is no right to select lump-sum payments for the annuitant and/or owner.

** ☐ **Income Option B — (Life,** ⬚ **- Year Certain)**

A term of ten (10) or 20 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant as long as he or she is living.

DEATH BENEFIT: If the annuitant were to die prior to receiving the period-certain payments, any such unpaid payments shall be continued to the designated beneficiary. There is no right to select lump-sum payments for the annuitant and/or owner.

☐ **Income Option C — (** ⬚ **- Year Term Certain)**

A period of five through 60 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant for the specified period of years.

DEATH BENEFIT: If the annuitant were to die prior to having received all payments due under this Contract, payments shall be continued for the balance of the period to the beneficiary designated. There is no right to select lump-sum payments for the annuitant and/or owner.

**Please send proof of age; either a copy of your birth certificate or a copy of your driver's license (or other identification provided by the state). Benefits will commence upon receipt of this paperwork in good order.

**Frequency of benefit payments:** ☐ Monthly   ☐ Quarterly   ☐ Semi-Annually   ☐ Annually

**Z1142A 03/18**

2020-02-21 11:56          **Costco W 130 sign 3236611475 >> FAXCORE**         **P 7/38**
02/21/2020 15:07:06

**Direct Deposit** – *If you selected option C, D, or E, you may authorize direct deposit by completing this section.*

I hereby authorize Jackson to direct deposit into the checking or savings account identified below, until further notice, all contract payments due to the owner of the contract. If the contract is owned by a trust, I affirm that I am the current trustee of the trust and am authorized to make this request on behalf of the trust. This authorization will remain in effect until it is revoked in writing. I and/or the trust hereby release and agree to indemnify and hold Jackson harmless from any and all claims arising out of or in any way related to Jackson's actions in compliance with this authorization. I agree that Jackson will have no further liability with respect to any payments made in accordance with this authorization and may, at any time, discontinue my direct deposit and issue checks to me requiring my personal endorsement. I, for myself, my heirs, executors, administrators, and assigns, do hereby consent and agree that any sums of money deposited to my account after my death shall be refunded to Jackson for distribution to the person or persons, if any, entitled to those sums under the terms of the contract.

☐ Checking Account (tape pre-printed voided check below) *

☐ Savings Account (provide letter from bank on institution's letterhead; letter must be signed and dated by a bank representative) *

**\* Direct Deposit will not be established without receipt of a pre-printed voided check or letter from your bank.**
**Please note:** Contract payments will generate on the day they are due or the next business day and will be deposited into your account within 2-3 business days (receipt of funds may be delayed by a weekend or holiday). All payments from custodian owned contracts will be made payable to the Custodian for both direct deposits and checks.

**Do not staple. Do not attach a deposit slip or a starter check.**





Z1142A 03/18

**Notice of Withholding** — *If you have selected option D or E, then you must complete this section.*

Annuity payments from income options are treated as wages for the purpose of income tax withholding. An annuity payment is one that is included in your income for tax purposes and that you receive in installments at regular intervals over a period of more than one full year from the starting date of the particular investment. The intervals can be annually, semi-annually, quarterly, or monthly.

Unless you tell Jackson otherwise, tax must be withheld on annuity payments as if you are married and claiming three withholding allowances.

For annuity payments, your withholding certificate stays in effect until you change or revoke it. Jackson must notify you each year of your right to elect to have no tax withheld or to revoke your election.

*If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.*

**Complete the following applicable lines:**

*You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.*

[ ] I elect **not** to have state and federal income tax withheld from my pension or annuity.

[ ] I elect withholding from each periodic pension or annuity payment to be figured using the number of allowances and

marital status shown (you may also designate an amount in the box at the right). **Number of allowances:** [        ]

**Marital Status:** [ ] Single  [ ] Married  [ ] Married, but withholding at higher single rate.

[ ] I elect the following additional amount withheld from each pension or annuity payment. *Note: For annuity payments,*

*you cannot enter an amount here without entering the number (including zero) of allowances above.* $ [        ]

If your state of residence has state income tax, you may elect to have taxes withheld using the same allowances and marital status as used for federal withholding.

[ ] I elect to have state tax withheld. (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

**F. Beneficiary Designation** — *If you have selected option A, B, C, D or E, then you must complete this section.*

*Please name your beneficiary(ies). For additional beneficiaries, please attach additional name(s) and requested information on a separate sheet, signed and dated.*

| 1. [X] Primary | | | | /00 Percentage of Death Benefit | |
|---|---|---|---|---|---|
| Beneficiary's Name (First) | (Middle) | (Last) | Date of Birth (mm/dd/yyyy) | Social Security Number | |
| MARY | C. | BEND | 01/16/1955 | 0546 | |
| Non-Natural Entity Name | | | Tax Identification Number | Relationship to You | |
| | | | | | |
| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
| 29506 MAMMOTH LANE | | CANYON COUNTRY | CA | 91387 | ( |

Page 6 of 8       **Z1142A 03/18**

2020-02-21 11:56     Costco W 130 sign 3236611475 >> FAXCORE     P 9/38
**02/21/2020 15:07:06**

2. ☐ Primary     ☐ Contingent     ☐ Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| | | | | | |

| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
|---|---|---|---|---|---|
| | | | | | |

| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
|---|---|---|---|---|---|
| | | | | | |

3. ☐ Primary     ☐ Contingent     ☐ Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| | | | | | |

| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
|---|---|---|---|---|---|
| | | | | | |

| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
|---|---|---|---|---|---|
| | | | | | |

**Note:** All Primary Beneficiary percentages must be in whole percentage numbers that total 100%. All Contingent Beneficiary percentages must also be in whole percentage numbers that total 100%. If no beneficiary is elected, your Estate will be recorded.

## Signature(s)

The undersigned hereby makes claim to the undersigned's share of the death benefit proceeds of the above annuity Contract as beneficiary and agrees that the furnishing of this form or any of the forms supplemental thereto by the Company shall not constitute or be considered an admission by the Company that there was an annuity in force, nor shall it constitute or be considered a waiver of any of the Company's rights or defenses.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING.
**Under penalties of perjury, I certify that:**
1. The number shown on this form is my correct Taxpayer Identification Number.
2. I am not subject to backup withholding.
3. I am a U.S. citizen or other U.S. person (including a U.S. resident alien).
4. I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.

By signing below I acknowledge I have read all options available to me. **Please note: ALL ELECTIONS ARE IRREVOCABLE, YOU MAY WISH TO CONTACT A TAX ADVISOR.**

**New Jersey residents, please note:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

| Claimant's Signature | Date Signed (mm/dd/yyyy) | Claimant's Name (First) | (Middle) | (Last) |
|---|---|---|---|---|
| *[signature]* | 02/18/2020 | GREGORY | T. | BOND |

| Signature of Witness | Date Signed (mm/dd/yyyy) | Witness's Name (First) | (Middle) | (Last) |
|---|---|---|---|---|
| *[signature]* | 02/18/2020 | MARY | C. | BOND |



## Important Information – Please Read Carefully

- The entire death benefit must be paid within five (5) years of the date of death unless you elect to have the death benefit payable under an Income Option or the Systematic Withdrawal Option. The death benefit payable under an Income Option or the Systematic Withdrawal Option must be paid over your lifetime or for a period not extending beyond your life expectancy.

- For non-qualified funds, the first IRS-required withdrawal under the ISW and Income Option must occur within twelve months of the owner's death. For Lump-Sum Distributions, non-qualified funds must be completely withdrawn by the fifth anniversary of the date of death.

- For qualified funds, the first IRS-required withdrawal for the Stretch IRA and Income Option must occur by December 31st of the year following the owner's death. For lump-sum distributions qualified funds must be completely withdrawn by December 31 following the fifth anniversary of the date of death.

- If you wish to elect an Income Option or the Systematic Withdrawal Option you must do so within the 60-day period beginning with the date Jackson receives proof of death. **Please note:** with these options your beneficiary will not receive any enhanced death benefit protections.

- If a Continuation Option is selected for a JNL Target Select ® contract, the original allocation period will remain in effect. The Beneficiary will have the option to select a new allocation period upon renewal.

- **Please note:** the following states do not have state income tax. We are not allowed to withhold state tax for these states: Alaska, Florida, Nevada, New Hampshire, South Dakota, Tennessee, Texas, Washington and Wyoming. The following states allow you to elect out of state withholding: California, Delaware, Oregon and Vermont. The state of Georgia allows you to elect out of state withholding on benefit payments only.

- **Please note:** if you are a Michigan resident, we may be required to withhold state tax at the prevailing fixed percentage.

- If you elect to have federal withholding, we are required to withhold for state purposes at the prevailing fixed percentage of the federal rate for the following states: Arkansas, California, Delaware, Georgia, Iowa, Maine, Massachusetts, Mississippi, Nebraska, North Carolina, Oklahoma, Oregon, Vermont and Virginia.

- The 10% premature distribution penalty does not apply to distributions made to the beneficiary on or after the death of the original holder of the Contract.

- Remember that there are penalties for not paying enough tax during the year, either through withholding or estimated tax payments. New retirees, especially, should see IRS Publication 505, Tax Withholding and Estimated Tax, which can be obtained by contacting the IRS. Publication 505 explains the estimated tax requirements and penalties in detail. You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.

- **Please note:** if you continue a Contract with a LIB, you may set or change the Activation Date by completing the Activation Request Form (X4391). If an Activation Date has been set, you may change or cancel that date by notifying the Company at least 30 days prior to the selected Activation Date. If you do not notify the Company at least 30 days prior to the Activation Date, it cannot be changed or canceled.

| Mailing Address and Contact Information | |
|---|---|
| Jackson Claims Administration | |
| Regular Mail | P.O. Box 30503, Lansing, MI 48909-8003 |
| Overnight Mail | 1 Corporate Way, Lansing, MI 48951 |
| Customer Care | 888-585-4995 (M-Th: 8:00 a.m. to 7:00 p.m. ET and Fri: 8:00 a.m. to 6:00 p.m. ET) |
| Fax* | 517-706-5513 |
| Email | customercare@jackson.com |

\* A fax cover page is not needed. If you have additional instructions to submit please complete Letter of Instruction (form X4250) including owner and/or annuitant signature(s) as applicable.



Claims Administration

March 14, 2020

Gregory Bond
29506 N Mammoth Lane
Canyon Country, CA 91387

Deceased: Philip G Bond
Policy No.: 0004865310

Dear Gregory Bond:

We are sorry to hear about the death of Philip G Bond and wish to extend our condolences. Based on the information provided, we have established a claim for the following:

| Policy Number | Named Beneficiary | Preselected Benefit Option |
|---|---|---|
| 0004865310 | Ellen A Bond | |

Please be aware that it is very important that you provide us with the contact information for the beneficiary(ies) listed above. If this information is not received, it may delay our processing of the claim. In addition, unclaimed funds will be reported to the state as required by law.

Please be advised that any scheduled distributions will cease and any un-cashed payments, issued in the deceased's name, have been stopped.

In order to process the claim promptly, please return to us the following:

- Claim Form
- Final Certified Death Certificate

Once we receive this information, we will process the claim as quickly as possible. Please be advised, any documentation submitted to our office will not be returned.

The State of California Department of Insurance requires that our Company advise you that if you wish to take this matter up with the California Department of Insurance, the telephone numbers for the consumers hotline are 1/800-927-HELP or 213/897-8921. You may write to the California Department of Insurance, Claims Service Bureau at 300 South Spring Street, 11th Floor, Los Angeles, CA, 90013.

Jackson National Life Insurance Company
1 Corporate Way, Lansing, MI 48951
800/644-4565

0C7D38PH       AA     01     OC     CLM     010232126J                03/14/2020       CP8CORR       INPIJ

**Policy Number:** 0004865310

**March 14, 2020**



If you have any questions or need additional information, please contact our Service Center toll free at 888/565-4995.

Sincerely,

*Laura Hanson*

Laura Hanson
VP, Policy Owner Services

Enclosure: Claim Form



1 Corporate Way
Lansing, MI 48951

May 4, 2020

Ellen A. Ifshin
25 Parkview Ave Apt 3K
Bronxville NY 10708-2917

**Sent via Certified and First-Class Mail**

RE: Contract Number: 0004865310
     Annuitant: Philip G. Bond (deceased)
     Owner: Focus 2000

Dear Ellen A. Ifshin:

Please accept our sincerest condolences on the death of Philip Bond. We would like you to know that we are available for any questions you may have.

At his death, Philip Bond was the annuitant of an annuity issued by Jackson National Life Insurance Company ("Jackson"). A review of our records shows that you remain the recorded beneficiary of the annuity. As of May 4, 2020, the value of the annuity's death benefit proceeds is $15,174.16.

Jackson has received a claim from the annuity's contingent beneficiary. To proceed with our claim handling, we must know your intentions regarding the annuity.

Please tell us **by June 1, 2020**, whether you intend to claim the annuity's death benefit proceeds or whether you waive your claim to the annuity's death benefit proceeds. If you waive your claim to the annuity's death benefit proceeds, Jackson will pay the proceeds to the contingent beneficiary.

You may notify us of your intentions by either (1) calling our Service Center at 888/565-4995, or (2) responding to this letter by completing the below "ELECTION REGARDING CLAIM FOR PROCEEDS" and returning this letter to Jackson in the enclosed pre-addressed, postage-paid envelope **by May 29, 2020**. Please keep a copy of the letter with your election marked.

Note: if you do not respond to this letter or Jackson receives competing claims to the annuity's death benefit proceeds, Jackson may be unable to distribute the death benefit proceeds until that dispute is resolved. If you need extra time to make your election, promptly let us know by calling us at 888/565-4995.

If you have questions about your legal rights, or need legal advice, we recommend you immediately consult a licensed attorney.

Your service needs are very important to us. If you have additional questions or concerns, please contact our Service Center at 888/565-4995, Monday through Thursday, 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 6:00 p.m. (ET). You may also contact Jackson via email through "Contact Us" on our website at www.jackson.com.

Sincerely,

*Laura Hanson*

Laura Hanson, VP
Policy Owner Services

## ELECTION REGARDING CLAIM FOR PROCEEDS

<u>Please mark the appropriate box, sign and date, and return this letter to Jackson in the enclosed pre-addressed, postage-paid envelope by June 1, 2020.</u>

I, Ellen A. Ifshin:

☐ **CLAIM** that I am the proper beneficiary of Philip Bond's Jackson annuity and I intend to file a claim for the annuity's death benefit proceeds.

☐ **WAIVE** all claim to Philip Bond's Jackson annuity and consent to Jackson's payment of the annuity's death benefit proceeds to the annuity's contingent beneficiary.

_____
Signature

_____
Printed Name

_____
Date



May 4, 2020

▐▌▌▌▌▌▌▌▐▌▌▌▌▐▌▌▌▐▌▌▐▌▌▐▌▌▐▐▌▌▐▌▌▐▌▌▐▌▌▐▌▌
GREGORY T. BOND
29506 MAMMOTH LANE
CANYON COUNTRY CA 91387

**RE: Contract Number 0004865310**

**Annuitant: Philip G. Bond, Deceased**

To Whom It May Concern:

Thank you for submitting Philip Bond's divorce documents for our review.

As you know, Ellen Bond was the annuity's primary beneficiary at the time of Philip Bond's passing.  Our Legal Department has reviewed the divorce documents you submitted, and it is our opinion that Philip Bond's divorce from the primary beneficiary did not automatically revoke her designation as beneficiary of the annuity.  We ask that you notify us if you disagree with our opinion.

We believe that we have located the primary beneficiary using her name supplied in the divorce documents and we are reaching out to her to determine whether she intends to make claim to the annuity's  death benefit proceeds.  As of May 4, 2020, the value of the annuity's death benefit proceeds is $15,174.16. We have asked her to provide us with confirmation of her intent by June 1, 2020, and we will notify you after we receive that confirmation.

If Jackson receives competing claims, we may not be able to distribute the death benefit until that dispute is resolved.

If you have any additional questions or concerns, visit our website at www.jackson.com to contact Jackson via email or for additional resources. You may also contact our Service Center at 888/565-4995.

Sincerely,

*Laura Hanson*

Laura Hanson, VP
Policy Owner Services

*Contact us:*

  Visit www.jackson.com

  1-800/644-4565 • 24-hour automated service; Service Associates available Monday thru Friday

Jackson Service Center, 1 Corporate Way, Lansing, MI 48951

05/16/2020 09:05:23

Received 05/16/2020 09:05:23 Box DCC14044 057980 36

Your service needs are very important to us. If you have additional questions or concerns, please contact our Service Center at 888/565-4995, Monday through Thursday, 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 6:00 p.m. (ET). You may also contact Jackson via email through "Contact Us" on our website at www.jackson.com.

Sincerely,

*Laura Hanson*

Laura Hanson, VP
Policy Owner Services

## ELECTION REGARDING CLAIM FOR PROCEEDS

Please mark the appropriate box, sign and date, and return this letter to Jackson in the enclosed pre-addressed, postage-paid envelope by June 1, 2020.

I, Ellen A. Ifshin:

☒ **CLAIM** that I am the proper beneficiary of Philip Bond's Jackson annuity and I intend to file a claim for the annuity's death benefit proceeds.

☐ **WAIVE** all claim to Philip Bond's Jackson annuity and consent to Jackson's payment of the annuity's death benefit proceeds to the annuity's contingent beneficiary.

*Ellen A. Ifshin*
Signature

ELLEN A. IFSHIN
Printed Name

MAY 11, 2020
Date

To:     Jackson National Life Insurance (Via Fax and Return Mail)

Date:   May 12, 2020

Re:     Policy #0004865310, Philip G. Bond (Annuitant)

From: Gregory T. Bond
      29506 Mammoth Lane
      Canyon Country, CA 91387

My name is Gregory T Bond and I am writing to notify you that I disagree
with your letter of May 4, 2020 wherein you state that the divorce
documents do not automatically revoke Ellen Bond as the primary
beneficiary of the above listed annuity.

In the event Ellen Bond chooses to attempt to claim this annuity I am
specifically contesting that claim. Your letter states that you have given
Ellen Bond until June 1, 2020 to stipulate whether she is going to/not going
to make an effort to claim this annuity. I would appreciate being notified
if/when that happens and/or if/when that does not happen.

Thank you,

Gregory T. Bond

Attachment: Jackson National Letter of May 4, 2020

06/01/2020 07:55:19
Received 06/01/2020 07:55:19 Box DCC14062 058168 2

## Annuity Death Benefit Claim Form



**JACKSON®**

NATIONAL LIFE INSURANCE COMPANY
Home Office: Lansing, Michigan
www.jackson.com

### Important Instructions for Prompt Settlement

• Use dark ink only to complete this claim form. Print or type.

• Claimant must sign, print name and date the claim form on page 7.

• Include a certified copy of the finalized death certificate for the deceased with manner of passing.

• If the claimant is a Trustee, please provide a complete copy of the trust agreement, including all amendments and the Trust Tax Identification Number.

• If the claimant is an Executor, Administrator, Guardian or other legal representative, please provide a certified copy of the court appointment.

• If the claimant is an Attorney-in-Fact on behalf of the beneficiary, include the Power of Attorney instrument.

• If any of the beneficiaries named in the Contract are deceased, please provide a copy of their death certificate.

• If the claimant is an ex-spouse, please provide a copy of the divorce decree and property settlement agreement.

• If the claimant is a non-resident alien, please provide the W-8BEN form and Individual Taxpayer Identification Number.

### DECEASED INFORMATION (please print)

| Deceased's Name (First) | (Middle) | (Last) | Other Name(s) by which Deceased was known |
|---|---|---|---|
| PHILIP | GREGORY | BOND | |

| Date of Birth (mm/dd/yyyy) | Date of Death (mm/dd/yyyy) | Marital Status of the Deceased |
|---|---|---|
| 02/15/1938 | 07/01/2016 | ☒ Married ☐ Divorced ☐ Widowed ☐ Single |

Social Security Number of Deceased (IMPORTANT)

Contract Number(s) for which you are claiming benefits

1. 0004865310    2. 

### CLAIMANT INFORMATION (please print)

| Claimant's Name (First) | (Middle) | (Last) | Claimant's Social Security Number |
|---|---|---|---|
| ELLEN | ANN | LFSHIN | 5088 |

| Name of Non-natural Entity Claimant (if applicable) | Tax Identification Number |
|---|---|
| | |

| Claimant's Physical Address (No P.O. Boxes) | City | State | ZIP Code |
|---|---|---|---|
| 25 PARKVIEW AVE | BRONXVILLE | NY | 10708 |

| Claimant's Mailing Address | City | State | ZIP Code |
|---|---|---|---|
| APT 3K | | | |

| Date of Birth (mm/dd/yyyy) | Relationship to the Deceased | Daytime Phone Number (including area code) |
|---|---|---|
| 06/03/1942 | EX-WIFE | |

| Claimant's E-Mail Address | US Citizen? ☒ Yes ☐ No |
|---|---|
| | Currently Residing in US? ☒ Yes ☐ No |

**Do you wish to take the deceased's Required Minimum Distribution (RMD)?** ☒ Yes ☐ No

• If no dollar amount is indicated, the RMD will be calculated for you. $ 

• Note: Please complete Notice of Withholding on page 3.

• This option may only be elected in conjunction with Options A, B, C, D or E.

Z1142 03/18

06/01/2020 07:55:19

## Please Select One of the Following Options (A, B, C, D or E), Then Sign and Date the Form.

**A. Lump-Sum Distribution, Beneficiary Access Account and 5-Year Deferral Options —** *If you select this option, you must also complete the "Notice of Withholding" section on page 3.*

Choose one of the Payment Options Below: (If no settlement option is selected, Jackson National Life Insurance Company ® (Jackson®) will contact the beneficiary to seek an affirmative selection from the beneficiary.)

### 1. Lump-Sum

[X] Please send me a check for my proceeds.

[ ] Please wire my proceeds. I acknowledge there will be a $20.00 wire fee and have attached a copy of a voided check.

### 2. Beneficiary Access Account (BAA)

[ ] Please establish an interest bearing BAA in my name for my proceeds and send me a book of checks for access to my money.

### 3. 5-Year Deferral Option

[ ] I elect to withdraw the Death Benefit within five years. I would like to withdraw $ [            ] immediately and understand that I must submit the Annuity Partial or Full Liquidation Request, form X3101, to withdraw the remainder of the benefit. **Please Note:** this option is not available for IRAs and other qualified plans if the deceased died after the RMD beginning date (generally April 1 after age 70½.)

Jackson will make payment of annuity contract proceeds due you in a lump-sum. Except when contract proceeds are due corporations, partnerships, trusts, estates, minors, and beneficiaries resident in the state of New York, if the proceeds due you are $5,000 or greater, you may request (above) that Jackson establish a BAA in your name that permits you to write checks to withdraw your money from the BAA. Money in a BAA remains in a Jackson general account until withdrawal. Jackson will pay you interest on money in your BAA. Your BAA will not be FDIC-insured.

**Note:** In order for any withdrawal to be treated as a direct exchange, transfer or rollover, you must submit the transferring company's Letter of Acceptance and required paperwork. Do you wish to advise us that this withdrawal will be treated as a direct exchange, transfer or rollover? [ ] Yes

**B. Spousal Continuation Option —** *If you select this option, you must also complete Section F, "Beneficiary Designation.*

[ ] As the spouse of the deceased, I elect to continue the Contract in my name. **Note:** If you choose this option you do not need to return the Contract to Jackson.

If the contract has the IncomeAccelerator **Lifetime Income Benefit (LIB)**, it will terminate automatically upon election of the Spousal Continuation Option unless you are a covered life under the LIB with joint option. If you are a covered life under the LIB with joint option, the LIB with joint option will remain in effect upon continuation of the Contract and may be terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIB provision. If you are a covered life under the LIB with joint option, you may set or change the activation date by submitting a completed Activation Form (X4391). **Please see Important Information on page 8 for more information regarding the ability to set, change or cancel the Activation Date.**

If the contract has the LifePay **Lifetime Income Rider (LIR)**, you may elect to terminate the LIR benefit upon election of the Spousal Continuation Option. If you elect to terminate the LIR, a pro rata LIR Charge will be assessed for the period since the previous Indexed Option Anniversary, applicable charges will be stopped thereafter and no benefit will be available. If no election is made on the continuation date, the LIR will remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision. If you are a covered life under the joint benefit, the joint LIR remain in effect and may be subsequently terminated independently from the Contract to which it is attached only as allowed by the Termination of the LIR provision.

[ ] I elect to continue the LIR.

[ ] I elect to terminate LIR.

Z1142 03/18

06/01/2020 07:55:19

Received 06/01/2020 07:55:19 for DEC14962-055168 3

**C. Systematic Withdrawal Option** — *If you select this option, you must also complete the "Notice of Withholding" section on page 3 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5. If you select an Irrevocable Systematic Withdrawal (ISW) or Stretch IRA option, no indexed options will be available to you (if currently applicable), and interest will be credited at a rate based on the current and guaranteed interest rates Jackson credits on fixed annuity contracts it currently offers; that interest rate may be less than the rates Jackson credits to the Fixed or Fixed Indexed Annuity.*

I choose to take distributions over my life expectancy using the following option:

☐ **IRA:** I choose to take distributions over my life expectancy using the following option **(STRETCH IRA)**. While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you were to die prior to receiving all payments, your beneficiary(ies) may continue any such distributions or take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

☐ **Non-Qualified Annuity:** I choose to take distributions over my life expectancy (ISW). While you must take a minimum amount each year to satisfy IRS requirements, additional amounts may be taken at any time. If elected, you may name a beneficiary. If you die prior to receiving all payments, your beneficiary must take the current Contract Value as a lump-sum distribution. **(This option may not be available on all products.)**

☐ **IRA Spousal Stretch Deferral:** I elect to defer stretch payments at this time. I understand in the future I must contact the Service Center for future distributions.

**Please select a Mode:** ☐ Monthly ☐ Quarterly ☐ Semi-Annually ☐ Annually

Process the first payment as of (mm/dd/yyyy) [       ] . (Calendar days 29, 30, and 31 are not allowed.) If an

initial payment date is not indicated, the first payment will begin 30 days after this form is received by the Claims Service Center.

---

**Notice of Withholding** — *If you have selected option A or C, or if you have requested to take the deceased's RMD, you must complete this section.*

**Note:** Taxes will be withheld if no election is made.

**Federal Tax Withholding** The taxable portion of the distribution made to you will be subject to 10% (20% for eligible rollover distributions*) federal income tax withholding unless you elect not to have withholding apply.

1. ☐ **Do not withhold federal income tax from my distribution.** (If this box is checked, do not check box 2 or 3 below.) This option is not available for an eligible rollover distribution from 403(b) contracts. If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.

2. ☒ **Withhold 10% (20% for eligible rollover distributions*) federal income tax from my distribution.**

3. ☐ In addition to the instructions in No. 2 above, please withhold the following additional percentage: [       ] %.

**State Tax Withholding** (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

4. ☒ "Yes," please withhold the following percentage for state income taxes: [ 5 ] %.

5. ☐ "No," do not withhold state income tax.

*An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the Owner. However, such eligible rollover distribution does not include: (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Owner or the joint lives (or joint life expectancies) of the Owner and the Owner's beneficiary, or for a specified period of ten (10) years or more; (2) any distribution required under Code Section 401(a)(9); (3) any hardship distribution; and (4) the portion of any distribution that is not included in gross income.



Page 3 of 8

Z1142 03/18

**D. Benefit Continuation Option —** *If you select this option, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

☐ I elect to continue the periodic benefit checks the Annuitant was receiving.

**E. Income Option Election** (Monthly Benefit Must Be $50 or More.) — *If you select one of these options, you must also complete the "Notice of Withholding" section on page 6 and Section F, "Beneficiary Designation." To authorize direct deposit into your checking or savings account, please complete the "Direct Deposit" section on page 5.*

If an illustration is desired, please contact our office.

\*\* ☐ **Income Option A — (Life Only)**
Equal payment will be made to the annuitant as long as he or she is living. Benefits cease at the death of the annuitant. There is no right to select lump-sum payments for the annuitant and/or owner.

\*\* ☐ **Income Option B — (Life, [    ] - Year Certain)**
A term of ten (10) or 20 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant as long as he or she is living.

DEATH BENEFIT: If the annuitant were to die prior to receiving the period-certain payments, any such unpaid payments shall be continued to the designated beneficiary. There is no right to select lump-sum payments for the annuitant and/or owner.

☐ **Income Option C — ( [    ] - Year Term Certain)**
A period of five through 60 years is available. However, a period-certain may not extend beyond the life expectancy of the annuitant. Equal payments will be made to the annuitant for the specified period of years.

DEATH BENEFIT: If the annuitant were to die prior to having received all payments due under this Contract, payments shall be continued for the balance of the period to the beneficiary designated. There is no right to select lump-sum payments for the annuitant and/or owner.

\*\*Please send proof of age: either a copy of your birth certificate or a copy of your driver's license (or other identification provided by the state). Benefits will commence upon receipt of this paperwork in good order.

**Frequency of benefit payments:** ☐ Monthly   ☐ Quarterly   ☐ Semi-Annually   ☐ Annually

Z1142 03/18

06/01/2020 07:55:19
Received 06/01/2020 07:55:19 Box DCC14062 058168 4

## Notice of Withholding – *If you have selected option D or E, then you must complete this section.*

Annuity payments from income options are treated as wages for the purpose of income tax withholding. An annuity payment is one that is included in your income for tax purposes and that you receive in installments at regular intervals over a period of more than one full year from the starting date of the particular investment. The intervals can be annually, semi-annually, quarterly, or monthly.

Unless you tell Jackson otherwise, tax must be withheld on annuity payments as if you are married and claiming three withholding allowances.

For annuity payments, your withholding certificate stays in effect until you change or revoke it. Jackson must notify you each year of your right to elect to have no tax withheld or to revoke your election.

*If you elect not to have withholding apply to your withdrawals, or if you do not have enough withheld, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.*

### Complete the following applicable lines:

*You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.*

☐ I elect **not** to have state and federal income tax withheld from my pension or annuity.

☐ I elect withholding from each periodic pension or annuity payment to be figured using the number of allowances and

marital status shown (you may also designate an amount in the box at the right). **Number of allowances:** [     ]

**Marital Status:** ☐ Single ☐ Married ☐ Married, but withholding at higher single rate.

☐ I elect the following additional amount withheld from each pension or annuity payment. *Note: For annuity payments,*

*you cannot enter an amount here without entering the number (including zero) of allowances above.* $ [     ]

If your state of residence has state income tax, you may elect to have taxes withheld using the same allowances and marital status as used for federal withholding.

☒ I elect to have state tax withheld. (Depending on the laws in your state, state income tax withholding may be required. See "Important Information" section on page 8 for state withholding requirements.)

---

## F. Beneficiary Designation – *If you have selected option A, B, C, D or E, then you must complete this section.*

*Please name your beneficiary(ies). For additional beneficiaries, please attach additional name(s) and requested information on a separate sheet, signed and dated.*

| 1. ☐ Primary | | | | | 5% 100 Percentage of Death Benefit | 2723 |
|---|---|---|---|---|---|---|
| Beneficiary's Name (First) | (Middle) | (Last) | | | Date of Birth (mm/dd/yyyy) | Social Security Number |
| ELLEN DANIEL | ANN MARE | IESHIN TAUB | | | 06/03/1942 | 5088 |
| Non-Natural Entity Name | | | | | Tax Identification Number | Relationship to You |
| | | | | | | SON |
| Address (number, street) | | City | | State | ZIP Code | Phone Number (include area code) |
| 9 BOXWOOD PL | | RYE BROOK | | NY | 10573 | |

Z1142 03/18

06/01/2020 07:55:19

---

**Direct Deposit** – *If you selected option C, D, or E, you may authorize direct deposit by completing this section.*

I hereby authorize Jackson to direct deposit into the checking or savings account identified below, until further notice, all contract payments due to the owner of the contract. If the contract is owned by a trust, I affirm that I am the current trustee of the trust and am authorized to make this request on behalf of the trust. This authorization will remain in effect until it is revoked in writing. I and/or the trust hereby release and agree to indemnify and hold Jackson harmless from any and all claims arising out of or in any way related to Jackson's actions in compliance with this authorization. I agree that Jackson will have no further liability with respect to any payments made in accordance with this authorization and may, at any time, discontinue my direct deposit and issue checks to me requiring my personal endorsement. I, for myself, my heirs, executors, administrators, and assigns, do hereby consent and agree that any sums of money deposited to my account after my death shall be refunded to Jackson for distribution to the person or persons, if any, entitled to those sums under the terms of the contract.

☐ Checking Account (tape pre-printed voided check below) *

☐ Savings Account (provide letter from bank on institution's letterhead; letter must be signed and dated by a bank representative) *

**\* Direct Deposit will not be established without receipt of a pre-printed voided check or letter from your bank.**
**Please note:** Contract payments will generate on the day they are due or the next business day and will be deposited into your account within 2-3 business days (receipt of funds may be delayed by a weekend or holiday). All payments from custodian owned contracts will be made payable to the Custodian for both direct deposits and checks.

**Do not staple. Do not attach a deposit slip or a starter check.**

| |
|---|
| Account Holder's Name(s)<br>245 Main St.<br>Anywhere, USA 00000 |

Pay To The Order Of _____ $ [_____]

_____ Dollars

Your Financial Institution **-- VOID --**

Name
Street Address                                                        _____
City, State, ZIP                                                          1234

Your Transit Routing Number          Your Account Number          Your check number



**Z1142 03/18**

06/01/2020 07:55:19

Received 06/01/2020 07:55:19 Box DCC14062 058158 5 ☐ Contingent          50   Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| JONATHAN | SETH | TAUB | | 09/24/1968 | |
| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
| | | | | | SON |
| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
| 559 BRAESIDE | | HIGHLAND PARK | IL | 60035 | |

**3.** ☐ Primary          ☐ Contingent          ☐ Percentage of Death Benefit

| Beneficiary's Name (First) | (Middle) | (Last) | | Date of Birth (mm/dd/yyyy) | Social Security Number |
|---|---|---|---|---|---|
| | | | | | |
| Non-Natural Entity Name | | | | Tax Identification Number | Relationship to You |
| | | | | | |
| Address (number, street) | | City | State | ZIP Code | Phone Number (include area code) |
| | | | | | |

**Note:** All Primary Beneficiary percentages must be in whole percentage numbers that total 100%. All Contingent Beneficiary percentages must also be in whole percentage numbers that total 100%. If no beneficiary is elected, your Estate will be recorded.

## Signature(s)

The undersigned hereby makes claim to the undersigned's share of the death benefit proceeds of the above annuity Contract as beneficiary and agrees that the furnishing of this form or any of the forms supplemental thereto by the Company shall not constitute or be considered an admission by the Company that there was an annuity in force, nor shall it constitute or be considered a waiver of any of the Company's rights or defenses.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING.
**Under penalties of perjury, I certify that:**
**1. The number shown on this form is my correct Taxpayer Identification Number.**
**2. I am not subject to backup withholding.**
**3. I am a U.S. citizen or other U.S. person (including a U.S. resident alien).**
**4. I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.**

By signing below I acknowledge I have read all options available to me. **Please note: ALL ELECTIONS ARE IRREVOCABLE, YOU MAY WISH TO CONTACT A TAX ADVISOR.**

| Claimant's Signature | Date Signed (mm/dd/yyyy) | Claimant's Name (First) | (Middle) | (Last) |
|---|---|---|---|---|
| Ellen Ifshin | 05/15/2020 | ELLEN | ANN | IFSHIN |
| Signature of Witness | Date Signed (mm/dd/yyyy) | Witness's Name (First) | (Middle) | (Last) |
| | 05/15/2020 | DANIEL | MARC | TAUB |



**Z1142 03/18**

06/01/2020 07:55:19

## Important Information – Please Read Carefully

- The entire death benefit must be paid within five (5) years of the date of death unless you elect to have the death benefit payable under an Income Option or the Systematic Withdrawal Option. The death benefit payable under an Income Option or the Systematic Withdrawal Option must be paid over your lifetime or for a period not extending beyond your life expectancy.

- For non-qualified funds, the first IRS-required withdrawal under the ISW and Income Option must occur within twelve months of the owner's death. For Lump-Sum Distributions, non-qualified funds must be completely withdrawn by the fifth anniversary of the date of death.

- For qualified funds, the first IRS-required withdrawal for the Stretch IRA and Income Option must occur by December 31st of the year following the owner's death. For lump-sum distributions qualified funds must be completely withdrawn by December 31 following the fifth anniversary of the date of death.

- If you wish to elect an Income Option or the Systematic Withdrawal Option you must do so within the 60-day period beginning with the date Jackson receives proof of death. **Please note:** with these options your beneficiary will not receive any enhanced death benefit protections.

- If a Continuation Option is selected for a JNL Target Select° contract, the original allocation period will remain in effect. The Beneficiary will have the option to select a new allocation period upon renewal.

- **Please note:** the following states do not have state income tax. We are not allowed to withhold state tax for these states: Alaska, Florida, Nevada, New Hampshire, South Dakota, Tennessee, Texas, Washington and Wyoming. The following states allow you to elect out of state withholding: California, Delaware, Oregon and Vermont. The state of Georgia allows you to elect out of state withholding on benefit payments only.

- **Please note:** if you are a Michigan resident, we may be required to withhold state tax at the prevailing fixed percentage.

- If you elect to have federal withholding, we are required to withhold for state purposes at the prevailing fixed percentage of the federal rate for the following states: Arkansas, California, Delaware, Georgia, Iowa, Maine, Massachusetts, Mississippi, Nebraska, North Carolina, Oklahoma, Oregon, Vermont and Virginia.

- The 10% premature distribution penalty does not apply to distributions made to the beneficiary on or after the death of the original holder of the Contract.

- Remember that there are penalties for not paying enough tax during the year, either through withholding or estimated tax payments. New retirees, especially, should see IRS Publication 505, Tax Withholding and Estimated Tax, which can be obtained by contacting the IRS. Publication 505 explains the estimated tax requirements and penalties in detail. You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your payments.

- **Please note:** if you continue a Contract with a LIB, you may set or change the Activation Date by completing the Activation Request Form (X4391). If an Activation Date has been set, you may change or cancel that date by notifying the Company at least 30 days prior to the selected Activation Date. If you do not notify the Company at least 30 days prior to the Activation Date, it cannot be changed or canceled.

| Mailing Address and Contact Information | |
|---|---|
| Jackson Claims Administration | |
| Regular Mail | P.O. Box 30503, Lansing, MI 48909-8003 |
| Overnight Mail | 1 Corporate Way, Lansing, MI 48951 |
| Customer Care | 888-565-4995 (M-Th: 8:00 a.m. to 7:00 p.m. ET and Fri: 8:00 a.m. to 6:00 p.m. ET) |
| Fax* | 517-706-5513 |
| Email | customercare@jackson.com |

* A fax cover page is not needed. If you have additional instructions to submit please complete Letter of Instruction (form X4250) including owner and/or annuitant signature(s) as applicable.

Z1142 03/18

06/01/2020 07:55:19

WESTCHESTER
MY 105
29 MAY '20
PM 1 L



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

## BUSINESS REPLY MAIL
FIRST-CLASS MAIL    PERMIT NO. 600    LANSING MI

POSTAGE WILL BE PAID BY ADDRESSEE

JACKSON NATIONAL LIFE INSURANCE COMPANY
PO BOX 30503
LANSING MI  48909-9777





600 Third Avenue, 42nd Floor, New York, NY 10016 • (212) 684-0199

September 10, 2020

Frank T. Spano
212.413.2848
212.202.7593 Fax
fspano@polsinelli.com

**VIA ECF**
The Honorable Nelson S. Roman
United States District Court
Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

      Re:     *Jackson National Life Insurance Co. v. Ellen A. Ifshin, et al.*
              Case No.: 20 Civ. 06930-NSR

Dear Judge Roman:

    I write on behalf of Plaintiff Jackson National Life Insurance Company ("Jackson National"). Jackson National commenced this interpleader action and filed a motion for interpleader deposit on August 27, 2020 (ECF Doc. Nos. 1-6). The action was assigned to Your Honor on August 28, 2020. Due to technical deficiencies in the filing, the motion for interpleader deposit was re-filed on September 2, 2020 (ECF Doc. Nos. 13-14). The interpleader Defendants, Ellen A. Ifshin ("Ifshin") and Gregory T. Bond ("Bond") have been served with the Complaint and motion for interpleader deposit (ECF Doc. Nos. 15-17).

    By way of background, on January 3, 1989, Jackson National issued a Flexible Premium Deferred Annuity Policy, bearing Policy Number 0004865310 (the "Annuity") to Focus 2000 with Philip G. Bond, deceased being the annuitant ("Annuitant"). *See* Declaration of Theresa Thompson at ¶ 3 (ECF Doc. No. 13-2). On or around February 21, 2020, Jackson National was provided, among other things, a certificate of death of Annuitant, who died on July 1, 2016, as a resident of San Diego, California. *See id.* at ¶ 5. As of August 12, 2020, the value of the Annuity's death benefit proceeds is $15,297.56 (the "Proceeds"). *See id.* at ¶ 6. The Annuity identifies the primary beneficiary as Ifshin, Annuitant's ex-wife and the contingent beneficiary as Bond, Annuitant's son. *See id. at ¶ 7.*

    On February 21, 2020, Bond provided to Jackson National an executed claim form, along with a Marital Settlement Agreement between Annuitant and Ifshin. *See id.* at ¶ 8. On March 14, 2020, Jackson National sent correspondence to Bond informing him that Ifshin was the designated

polsinelli.com

Atlanta    Boston    Chicago    Dallas    Denver    Houston    Kansas City    Los Angeles    Miami    Nashville    New York
Phoenix    St. Louis    San Francisco    Seattle    Silicon Valley    Washington, D.C.    Wilmington
Polsinelli PC, Polsinelli LLP in California

74718834.1



September 10, 2020
Page 2

beneficiary of the Annuity. *See id.* at ¶ 9. On May 4, 2020, Jackson National sent correspondence to Ifshin advising her that she was the named beneficiary under the Annuity and asking her to return an executed claim form if she intended to claim the proceeds of the Annuity by June 1, 2020. *See id.* at ¶ 10.

On May 4, 2020, Jackson National notified Bond that Annuitant's divorce from Ifshin did not automatically revoke her designation as the beneficiary of the Annuity and asked Bond to notify Jackson National if he disagreed. *See id.* at ¶ 11.

On May 16, 2020, Jackson National received Ifshin's Election Regarding Claim Proceeds in which she claimed she was the proper beneficiary of the Annuity and intended to file a claim for the Annuity's death benefit proceeds. *See id.* at ¶ 12. On May 12, 2020, Bond sent a letter to Jackson National, stating that if Ifshin attempted to claim the Proceeds he would contest her claim. *See id.* at ¶ 13. On June 1, 2020, Jackson National received from Ifshin an Annuity Death Benefit Claim Form indicating that she elected to claim the Proceeds. *See id.* at ¶ 14.

Jackson National is unable to determine the validity of the conflicting and competing claims to the Proceeds of the Annuity and fears that payment of the Proceeds to any one claimant will subject it to additional liability to the other claimants seeking payment of the Proceeds under the Annuity. Jackson National has no interest in the Proceeds except to the extent such payment discharges any and all obligations Jackson National may owe to any party arising out of the Annuitant's death and the benefit payable as a consequence thereof under the Annuity. Accordingly, Jackson National filed this statutory interpleader action pursuant to 28 U.S.C. § 1335 as a disinterested stakeholder claiming no interest in the Proceeds of the Annuity.

As set forth in Jackson National's Memorandum of Law in Support of its Motion for Interpleader Deposit (ECF Doc. No. 13.1), in accordance with 28 U.S.C. § 1335 and Fed. R.Civ.P. 67(a), Jackson National requests an order from the Court allowing Jackson National to deposit the Proceeds into the Court's Disputed Ownership Fund, discharging it from further liability with respect to the Proceeds and the Annuity and dismissing it from this action. In addition, Jackson National requests that pursuant to 28 U.S.C. § 2361 the Court enter an Order restraining and enjoining Defendants from instituting or prosecuting any action in any state or United States Court against Jackson National or its agents and representatives with respect to the Annuity or the Proceeds. Finally, Jackson National requests an order awarding Jackson National its attorneys' fees and costs to be paid from the Proceeds. Jackson National is a disinterested party that was forced to bring the present suit after competing claims by the ex-wife and son of the Annuitant.



September 10, 2020
Page 3


       In accordance with Your Honor's rules, I request that the Court schedule a pre-motion conference, or, in the alternative, set a briefing schedule and hearing date for the motion.


                     Respectfully Submitted,

                     /s/ *Frank T. Spano*


                     Frank T. Spano


FTS:nkw

cc:    Ellen A. Ifshin
       Gregory T. Bond

| From: | Frank Spano |
|---|---|
| To: | Roman NYSD Chambers |
| Cc: | Greg Bond |
| Subject: | URGENT Case 7:20-cv-06930-NSR Jackson National Life Insurance Company v. Ifshin |
| Date: | Tuesday, November 10, 2020 8:09:05 AM |
| Attachments: | image003.png |

**CAUTION - EXTERNAL:**

Dear Judge Roman:

Please pardon the intrusion.  We  represent Plaintiff Jackson National Life Insurance Company ("Jackson National") in this interpleader action. On September 2, 2020, Jackson National filed a motion to (1) deposit the annuity policy death benefit proceeds at issue into the Court's disputed ownership fund, (2) discharge Jackson National from any further obligations under the policy, and (3) receive an award for its reasonable attorney's fees (ECF Doc. No. 13). On September 10, I wrote to your Honor to request a conference  (ECF Doc. No 18).   Since that time,  Defendant  Gregory Bond  has consented  to Jackson  National's motion, except for the request  for attorney's fees. Defendant Ellen Ifshin has not answered or appeared in the action. We are available at the Court's convenience to discuss the pending motion or  any further steps the Court deems appropriate to resolve the motion. I can be reached at the number indicated below

Respectfully submitted,

**Frank Spano**
*Shareholder*

fspano@polsinelli.com
**212.413.2848**
600 Third Avenue
New York, NY 10016





Polsinelli PC, Polsinelli LLP in California

polsinelli.com

**From:** NYSD_ECF_Pool@nysd.uscourts.gov <NYSD_ECF_Pool@nysd.uscourts.gov>
**Sent:** Thursday, September 10, 2020 10:58 AM
**To:** CourtMail@nysd.uscourts.gov
**Subject:** Activity in Case 7:20-cv-06930-NSR Jackson National Life Insurance Company v. Ifshin et al Motion for Conference

EXTERNAL EMAIL   nysd_ecf_pool@nysd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Southern District of New York

## Notice of Electronic Filing

The following transaction was entered by Spano, Frank on 9/10/2020 at 10:57 AM EDT and filed on 9/10/2020

| | |
|---|---|
| **Case Name:** | Jackson National Life Insurance Company v. Ifshin et al |
| **Case Number:** | 7:20-cv-06930-NSR |
| **Filer:** | Jackson National Life Insurance Company |
| **Document Number:** | 18 |

**Docket Text:**
**FIRST LETTER MOTION for Conference addressed to Judge Nelson Stephen Roman from Frank T. Spano dated September 10, 2020. Document filed by Jackson National Life Insurance Company..(Spano, Frank)**

**7:20-cv-06930-NSR Notice has been electronically mailed to:**

Frank Thomas Spano     fspano@polsinelli.com, nydocketing@polsinelli.com

**7:20-cv-06930-NSR Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=9/10/2020] [FileNumber=24576000-0] [7594063a69161974aa5aada7803d9c9b495b7191daf604f186f600295b40e625b9 2834f14a5fb8ee554e27b314c7ca7a26642ab5ae2937dbbbf9eb30a470de16]]

This electronic mail message contains CONFIDENTIAL information which is (a) ATTORNEY - CLIENT PRIVILEGED COMMUNICATION, WORK PRODUCT, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not an Addressee, or the person responsible for delivering this to an Addressee, you are

hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please reply to the sender and take the steps necessary to delete the message completely from your computer system.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.